JUDGE HOLWELL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**11 CV 6746**

-------------------------------------------------------------X

AUTOMOBILE CLUB OF NEW YORK,
INC. d/b/a AAA NEW YORK and AAA
NORTH JERSEY, INC.

\_\_\_\_\_Civ. \_\_\_\_\_

                  Plaintiffs,    :

    -against-    :

**COMPLAINT**

THE PORT AUTHORITY OF NEW YORK
AND NEW JERSEY,

                  Defendant.    :

-------------------------------------------------------------X

SEP 27 2011
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs, Automobile Club of New York, Inc. d/b/a AAA New York ("AAA New York") and AAA North Jersey, Inc. ("AAA North Jersey") ("AAA Clubs") for their complaint against defendant The Port Authority of New York and New Jersey ("Port Authority"), allege:

## JURISIDICTION AND VENUE

1.  This action for a declaratory judgment and permanent injunction and for such other and further relief as may be deemed necessary arises under the Constitution and laws of the United States, namely the Commerce Clause of the United States Constitution, and Federal-Aid Highway Act of 1987 (33U.S.C. §508) ("Highway Act"). This Court has jurisdiction under 28 U.S.C. §§ 1331 and 2201-02. Venue in the Southern District of New York is proper under 28 U.S.C. 1391 (b).

## NATURE OF THE ACTION

2.  Plaintiffs AAA Clubs seek a judgment declaring that the challenged toll increases on the Port Authority bridges and tunnels, effective September 18, 2011, are illegal, in

contravention of the Commerce Clause, the Highway Act and controlling decisional law which mandate that tolls on Port Authority bridges and tunnels be "just and reasonable". Plaintiffs AAA Clubs contend that the challenged toll increases which are earmarked to fund cost overruns in the Port Authority's speculative real estate development at the World Trade Center are illegal because the increases are not functionally related to the Port Authority's integrated, interdependent transportation network and should not have been included by the Port Authority in the base rate used by the Port Authority in setting the challenged toll increases.

## THE PARTIES

3.     AAA New York is a corporation organized under the Not-For-Profit Corporation Law of the State of New York having its principal place of business at 1415 Kellum Place, Garden City, New York.

4.     AAA North Jersey is a non-profit corporation organized under the laws of New Jersey with principal place of business at 418 Hamburg Turnpike, Wayne, New Jersey.

5.     The AAA Clubs are organized with the intention of promoting the interests and welfare of motor vehicle users: AAA New York has nearly 1.6 million members and AAA North Jersey has 400,000 members, many of whom make use of the facilities at issue in this action. AAA has more than 50 million members nationwide.

6.     The defendant Port Authority was created as a "body corporate and politic" by an Interstate Compact approved by Congress in 1921. The Port of New York District includes the bi-state area which lies within a 25 mile radius of the Statute of Liberty. The Port Authority owns and/or operates four interstate bridges, two interstate tunnels (the Lincoln and Holland Tunnels), the interstate Port Authority trans-Hudson Railroad (hereinafter PATH), two bus

terminals, two truck terminals, seven marine terminals, four airports, two heliports and the sixteen acre, World Trade Center development.

      7.     In its Strategic Plan for the period 2007-2016, the Port Authority summarizes its mission as follows:

> "In its most succinct form the mission of The Port Authority of NY & NJ is:
>
> 'To enhance the region's competitiveness and prosperity by providing transportation services that efficiently move people and goods within the region and facilitate access to the nation and the world.'"

## HISTORY OF THE PORT AUTHORITY
## BRIDGES AND TUNNELS

      8.     On March 2, 1925 Congress consented to the Port Authority's construction of four interstate bridges, the Outerbridge Crossing, the Goethals, the George Washington and the Bayonne Bridges.  In each case Congress required as a condition of its consent that the Construction and operation of the bridges be "in accordance with the provisions of" the General Bridge Act of 1906 (hereinafter "Bridge Act") which required, inter alia, that tolls charged for bridges and tunnels regulated by the Bridge Act be "just and reasonable".

      9.     The Holland Tunnel was constructed under a 1919 compact (41 Stat. 158), and its operation and control was vested in the Port Authority by virtue of the Bridge and Tunnel Unification Act of 1931 (N.Y. McKinney's Unconsolidated Laws §§ 6502, 6510) (hereinafter "BTUA").  Upon information and belief, as of 2009 the Holland Tunnel has annual eastbound traffic volume of 16,609,000.

      10.    The BTUA also authorized the construction of a new midtown Hudson Tunnel (later named the Lincoln Tunnel) and placed its operation and control within the auspices of the

3

Port Authority (N.Y. McKinney's Unconsolidated Laws §§ 6502, 6510). Upon information and belief, as of 2009 the Lincoln Tunnel has annual eastbound traffic volume of 20,248,000.

11.    The BTUA, which was adopted in both New York and New Jersey (N.Y. McKinney's Unconsolidated Laws § 6501-25; New Jersey Statutes Annotated 32:1-83.1, 32:1-118 et seq.), provides in pertinent part, as follows:

> "that the vehicular traffic moving across the interstate waters within the port of New York district . . . constitutes a general movement of traffic which follows the most accessible and practicable routes, and that the users of each bridge or tunnel over or under the said waters benefit by the existence of every other bridge or tunnel since all such bridges and tunnels as a group facilitate the movement of such traffic and relieve congestion at each of the several bridges and tunnels. Accordingly, the two said states . . . hereby agree that the construction, maintenance, operation and control of all such bridges and tunnels, heretofore or hereafter authorized by the two said states, shall be unified [under the PA] to the end that the tolls and other revenues therefrom shall be applied so far as practicable to the costs of the construction, maintenance and operation of said bridges and tunnels as a group and economics in operation effected, it being the policy of the two said states that such bridges and tunnels shall as a group be in all respects self-sustaining." (NY McKinney's Unconsolidated Laws § 6501).

12.    In 1931, the states of New York and New Jersey also enacted legislation which prohibited  competition with Port Authority bridges and tunnels. Since 1931 this non-compete covenant has provided (N.Y.L. 1931 c.47 § 12; N.J.L. 1931, c.4 §12):

> "The two said States covenant and agree with each other and the holders of any bonds . . . that the two said States will not, so long as any of such bonds or other obligations remain outstanding and unpaid, authorize the construction of any vehicular bridges or tunnels over or under interstate waters as herein defined within the said Port of New York District, by any person or body other than the Port Authority, in competition with those whose tolls or other revenues are pledged as aforesaid."

13.     The prohibition against competition with Port Authority vehicular bridges and tunnels covers approximately 50 miles of interstate waterways and this constitutes a monopoly of all the vehicular crossings on the navigable waterways between New Jersey and New York.

14.     In 1946, the Port Authority was authorized to construct a motor bus terminal which was located on West 40th Street and 8th Avenue, New York, New York. (N.Y. McKinney's Unconsolidated Laws §§ 6701-06).

15.     In 1956, the Port Authority was authorized to construct another bus terminal in Washington Heights, New York "as an addition and improvement to . . . the George Washington Bridge." (N.Y. McKinney's Unconsolidated Laws § 6505).

16.     The PATH rail system, an interstate railroad operating between points in New Jersey and downtown and midtown New York City was placed under the auspices of the Port Authority in 1961. (N.Y. McKinney's Unconsolidated Laws §§6601-18).

17.     Upon information and belief, initial plans for construction of the World Trade Center complex were made public in or about 1961.  Heralded as an economic and urban development project, the Port Authority in the mid-sixties, began the acquisition of the real property and commenced construction of what ultimately became seven buildings on a sixteen acre site.  Upon information and belief, the Port Authority plans to build five new skyscrapers to replace those damaged or destroyed on September 11, 2001.

18.     Upon information and belief, over the years the Port Authority has profited greatly from its bridge and tunnel monopoly to the extent that it has recovered all of its construction and improvement costs, and the operation of the bridges and tunnels currently produce annual surplus revenues of nearly $500 million.

5

## PORT AUTHORITY TOLL INCREASES

19.     On April 10, 1975, the Port Authority Board of Commissioners approved a toll schedule which, effective May 5, 1975, raised the bridge tolls by 50 percent.  Passenger car tolls were raised from $1.00 roundtrip to $1.50 roundtrip.

20.     On January 1, 1984, the Port Authority again raised the tolls for passenger cars utilizing its bridges and tunnels by an additional 33% from $1.50 to $2.00.

21.     In response to the 1984 toll increase, plaintiffs AAA Clubs filed a complaint with the Federal Highway Administration ("F.H.W.A."), the agency then authorized by the Bridge Act to hear complaints and conduct inquiries to determine whether tolls charged for bridges and tunnels regulated by the Act were "just and reasonable" (33 U.S.C. § 504).

22.     In the complaint, AAA Clubs asserted, inter alia, that the proposed 1984 toll increase was unjust and unreasonable in that the revenues collected from the toll increase were to be utilized to fund projects unrelated to the construction, operation or maintenance of the Port Authority's bridges and tunnels.

23.     On or about June 19, 1985, F.H.W.A. issued an order which, while allowing the Port Authority's toll increases to stand, found, as a matter of law, that the reasonableness of the tolls was to be determined solely from the Port Authority's rate of return on its capital investment in the bridges, tunnels and terminals and that calculations of the rate base should not include the deficit operations of the PATH rail system.

24.     On March 12, 1987, the Port Authority announced another toll increase.  Effective April 12, 1987, the tolls on all Port Authority bridges and tunnels were increased by 50 percent from $2.00 to $3.00 for passenger cars.

25.     On March 18, 1987, AAA Clubs, in response to the proposed toll increase, filed a

complaint with the F.H.W.A. asserting that the Port Authority's proposed toll increase violated the "just and reasonable" standard enunciated in the Bridge Act and was in direct contravention of the order issued by the F.H.W.A. on June 19, 1985, since the rate base utilized by the Port Authority included the financial impact of the PATH rail system and the proposed Hudson Ferry service.

26.     On April 2, 1987, Congress enacted the Highway Act, repealing those provisions of the Bridge Act which gave to the F.H.W.A. regulatory authority over the tolls charged on the Port Authority's bridges and tunnels.

27.     On or about April 9, 1987, the F.H.W.A. advised AAA New York and other motor clubs that, as a result of the Highway Act, the F.H.W.A. no longer had jurisdiction over complaints pertaining to toll increases on the Port Authority's bridges and tunnels.

28.     In or about April 1987, AAA New York and other motor clubs commenced an action in this Court challenging the 1987 toll increase because it violated the Highway Act which expressly provides that:

> "Tolls for passage or transit over any bridge constructed under the authority of the Act of March 23, 1906 (34 Stat. 84; 33 U.S.C. 491-498), commonly known as the Bridge Act of 1906 . . . shall be just and reasonable."

29.     Establishing the legal standard for the case at bar, this court held that the Port Authority's bridges, tunnels, bus terminals, bus programs and the Port Authority Trans-Hudson ("PATH") Railroad form an "integrated, interdependent transportation system" and that accordingly the challenged 1987 Port Authority toll increases which included PATH in the base rate were just and reasonable.   This court's decision was affirmed by the Court of Appeals for the Second Circuit.

7

30.     The Port Authority raised its tolls in 2001.  The details of the capital plan and the proposed uses of the increased toll revenue were reviewed.  While AAA New York did not support the 2001 toll increase, it appeared that it was being used principally to fund transportation improvements.   The AAA New York filed no legal objections thereto.

31.     In 2008, the Port Authority raised tolls again, principally to pay for a new rail tunnel, PATH improvements and security enhancements. A review of the 2008 toll increase and minutes of the two  meetings of the Port Authority Board of Commissioners leading up to the increase are particularly instructive.

32.     At a meeting held on November 17, 2007 the Port Authority Board of Commissioners reported that: "Consistent with the efforts of the Board to promote transparency and public accountability in the manner in which the Port Authority conducts the public's business, it was recommended that the Board direct the Executive Director initiate  an open process including public hearings, to solicit public comment regarding proposed changes in tolls schedules for the Port Authority's vehicular crossings and to report to the Board  on the results of that process."

33.     The Minutes continue to discuss at length, the need for the toll increase to fund the specific projects in the  Port Authority's $29.5 billion  capital plan which "incorporates a broad, region-wide approach to providing coordinated investment priorities in a modern, efficient, and affordable  transportation network for the region".  Continuing the discussion the minutes state that: "…an upward  adjustment of the tolls is needed to maintain and improve the Port Authority's Interstate Transportation Network (Network), which is not financially self-sustaining, and to limit the financial support to the Network from Port Authority airports and other sources" and specifically referred  to the fact that "(t)he Network's net loss from operation

8

for 2008, excluding grants and contributions, is projected to be $178 million..." and that the
"loss is expected to grow to $224 million in 2009 and $272 million in 2010."

## THE UNLAWFUL 2011 PORT
## AUTHORITY TOLL INCREASE

34.     On August 5, 2011 defendant Port Authority announced toll increases on its
bridge and tunnel facilities of $4 for E-ZPass holders and $7 for cash users, to fund a proposed
$33 billion ten-year capital plan which has never been released to the public. The Port Authority
has revealed in a public statement that $11 billion of the toll increase will be used to rebuild the
World Trade Center and fund significant cost overruns which the Port Authority has encountered
because of delays in construction.

35.     Significantly, the Port Authority disclosed that only $3.5 billion of the proposed
$33 billion capital plan would be dedicated to road and bridge repairs, including replacement of
the suspension cables on the George Washington Bridge ($1 billion); replacement of the Lincoln
Tunnel Helix ($1.5 billion); and raising of the Bayonne Bridge ($1 billion) .

36.     Upon information and belief, on August 18, 2011 the Governors of New York and
New Jersey wrote to the Port Authority Chairman and Vice-Chairman calling the proposed toll
hike "unacceptable" and proposed an increase of $1.50 in September 2011 and 75 cents per
year every year thereafter from 2012-2015 for E-ZPass, adding a $2 penalty on top of the
increased toll for cash toll payers.

37.     Upon information and belief, on August 19, 2011 the Port Authority Board of
Commissioners met and announced their approval of a revised $25.1 billion ten-year capital plan
and revised toll increases as proposed by the two Governors in their letter of August 18, 2011.

38.     On September 18, 2011 the new tolls with the challenged increases went into

effect on the Port Authority bridges and tunnels and have been collected since that time.

39.     The Executive Director of the Port Authority has stated that the reconstruction of the World Trade Center will cost $3 billion more than expected.

40.     Upon information and belief, the Port Authority's integrated interdependent transportation network produces annual revenue of $1,141,412,000 against operating expenses of $657,412,000.

41.     Upon information and belief, the current projected annual surplus of approximately $484,353,000 million is sufficient to pay for projects functionally related to the Port Authority's integrated, interdependent transportation network.

42.     The revenues resulting from the 2011 toll increase are to be used by the Port Authority to unlawfully provide funding for the reconstruction of the World Trade Center which is totally unrelated to the Port Authority's integrated, interdependent transportation network.

43.     Based on the foregoing, the challenged September 18, 2011 increase is both unjust and unreasonable as it is being implemented for the purpose of funding a project unrelated to the Port Authority's integrated, interdependent transportation system.

44.     Any determination as to the reasonableness of the Port Authority's rate of return must exclude the World Trade Center from the rate base.  The Port Authority's inclusion of the World Trade Center in its rate base improperly distorts its rate of return, creating the illusion that a toll increase is justified when in fact the Port Authority's integrated, interdependent transportation system is providing a significant surplus.

45.     In addition, in utilizing a rate base which includes facilities other than its integrated, interdependent transportation system, the Port Authority forces bridge and tunnel users to fund cost overruns and subsidize the speculative and unprofitable reconstruction and

operation of the World Trade Center from which toll payers receive no benefit. Such conduct is violative of the Highway Act and the Commerce Clause.

**FIRST CLAIM FOR RELIEF**
**DECLARATORY JUDGMENT**

46.     Plaintiffs repeat and reallege the allegations contained in paragraph 1 through 45 of the Complaint as if fully set forth herein.

47.     An actually controversy exits between plaintiffs and defendant Port Authority which is within the jurisdiction of this court and justifiable in character.

48.     By reason of the foregoing, defendant Port Authority is in violation of the Highway Act and the Commerce Clause of the United States Constitution.

**SECOND CLAIM FOR RELIEF**
**INJUNCTIVE RELIEF**

49.     Plaintiffs repeat and reallege the allegations contained in paragraph 1 through 48 of the Complaint as if fully set forth herein.

50.     By reason of the foregoing, defendant Port Authority is in violation of the Highway Act and the Commerce Clause of the United States Constitution.

51.     Unless defendant Port Authority is preliminarily and permanently enjoined from the acts and conduct set forth herein, plaintiffs and all other users of the Port Authority's bridges and tunnels will suffer continuing and irreparable harm for which there is no adequate remedy at law in that the toll payors have no remedy to recover money paid for illegal tolls.

WHEREFORE, plaintiffs demand judgment:

(1)     With respect to the First Claim for Relief:

    (a)  Declaring that defendant Port Authority's toll increase, effective September 18, 2011 is illegal and void; and

    (2)  With respect to the Second Claim for Relief:

    (a)  Preliminarily enjoining the defendant Port Authority from collecting funds pursuant to the toll increase, effective September 18, 2011, pending a determination of this case and directing defendant Port Authority to reinstate the tolls in effect prior to September 18, 2011.

    (b)  Permanently enjoining defendant Port Authority from setting and collecting unjust and unreasonable tolls which include the cost of reconstructing the World Trade Center.

    (c)  Permanently enjoining defendant Port Authority from computing a rate of return on capital investments made for the purpose of determining the reasonableness of toll increases which utilizes a rate base that includes the World Trade Center which is not part of the Port Authority's integrated, interdependent transportation system; and

    (3)  For such other further relief as the court may deem just and proper.

Dated: New York, New York
   September 26, 2011

          FARRELL FRITZ, P.C.

          By: *Michael F. Fitzgerald*
          Michael F. Fitzgerald (MF2954)

          *Attorneys for Plaintiff Automobile*
          *Club of New York, Inc d/b/a AAA*
          *New York and AAA North Jersey,*
          *Inc.*
          370 Lexington Avenue, Suite 800
          New York, New York 10017
          212-687-1230