UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x
                                   :

AUTOMOBILE CLUB OF NEW YORK, INC.    :
d/b/a AAA NEW YORK and NORTH JERSEY,   :
INC.,                                    :

                        Plaintiff,    :        11 Civ. 6746 (RJH)
                                    :

      -against-             :       **MEMORANDUM**
                                  :       **OPINION AND ORDER**

THE PORT AUTHORITY OF NEW YORK    :
AND NEW JERSEY                 :
                                  :

                      Defendant.    :
                                  :
--------------------------------------------------------------x

Richard J. Holwell, District Judge:

      Before the Court is an application by plaintiffs AAA New York and AAA North Jersey (together, "AAA") for a preliminary injunction against defendant the Port Authority of New York and New Jersey ("Port Authority"). AAA seeks to enjoin the Port Authority from collecting certain tolls on its bridges and tunnels, claiming that its September 2011 toll increases are in violation of both the Commerce Clause and the Surface Transportation and Uniform Relocation Assistance Act of 1987 (the "Highway Act"), 33 U.S.C. § 508 (1987).

      Also before the Court is a November 4, 2011 motion by the Port Authority for judgment under Fed. R. Civ. P. 12(c) for failure to state a claim under the Commerce Clause or 33 U.S.C. § 508. (ECF Docket No. **11**). The Court heard oral argument from both parties on December 8, 2011, but reserved ruling on the application and motion. The court now denies AAA's application, for the reasons stated below. Further, the Court converts the Port Authority's motion into a Motion for Summary Judgment, but reserves ruling pending discovery.

1

## BACKGROUND

The following facts are drawn from AAA's Complaint and the Port Authority's Opposition Memorandum and are uncontested, unless otherwise noted.

AAA New York and AAA North Jersey are non-profit corporations which purport to represent the interests of nearly two million member drivers. The Port Authority is a bi-state governmental agency, created by an interstate compact between the States of New York and New Jersey and approved by Congress in 1921. The Port Authority operates a variety of facilities in the greater New York City area, including: four interstate bridges, two interstate tunnels, the interstate Port Authority Trans-Hudson railroad ("PATH"), three bus terminals, two truck terminals, seven marine terminals, four airports, two heliports, and the sixteen-acre World Trade Center site. The four interstate bridges are the Outerbridge Crossing, the Goethals Bridge, the Bayonne Bridge, and the George Washington Bridge; each crosses the Hudson River, which separates New York from New Jersey. Congress consented to the construction of all four bridges on March 2, 1925, on the express condition that construction and operation of the bridges be in accordance with the provisions of the federal General Bridge Act of 1906 (now codified at 33 U.S.C. §§ 491-98).

The Port Authority is authorized to collect tolls at its bridge and tunnel facilities. *See* McKinney's N.Y. Unconsol. Law § 6501 *et seq*.; N.J.S.A. 32:1-118 *et seq*. In a press release of August 5, 2011, the Port Authority proposed toll increases on its tunnels and bridges, and a fare increase for PATH. On August 19, 2011, the Port Authority Board of Commissioners held a meeting to approve a modified toll increase schedule. At that meeting, Michael Fabiano, Chief Financial Officer for the Port Authority, identified mounting financial pressures on the Port Authority, including: the economic recession, increased security costs since the attacks of

September 11, 2001, a 11 billion dollar investment to rebuild the World Trade Center site, and a need to overhaul aging facilities, including the Bayonne, Goethals, and George Washington Bridges. (November 4, 2011 Affidavit of Michael Fabiano ("Fabiano Aff.") Ex. F ("August 19, 2011 Board Meeting Minutes") at 5-10.) The Board of Commissioners subsequently approved the toll and fare increases, and the meeting minutes were forwarded to the Governors of New York and New Jersey for review. A ten-business-day gubernatorial period expired without a veto by either Governor, so the increases went into effect on September 18, 2011.

 On September 27, 2011, AAA brought an action in this Court, seeking *inter alia* a declaratory judgment that the toll increases are illegal. AAA alleges that the toll increases are being used to fund real estate development at the World Trade Center site. (Compl. ¶ 42.) AAA submits that the increases are therefore "unreasonable" under the dormant Commerce Clause, both because the tolls are not "based on a fair approximation of . . . use" of the bridges and tunnels, and because the tolls are "excessive in relation to the benefits conferred" on the users. (Sep. 26, 2011 Mem. of Law in Supp of Pl.'s Mot. for Prelim. Inj. ("PI Mem.") at 10) (citing *Bridgeport and Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, 567 F.3d 79, 86 (2d Cir. 2009) ("*Bridgeport II*")). AAA further submits that funding the World Trade Center site renders the tolls increases neither "just" nor "reasonable" under the Highway Act, because portions of the tolls will support uses that are not part of the Port Authority's "integrated, interdependent transportation system." (*Id.* at 6) (citing *Automobile Club of New York, Inc. v. Port Authority of New York and New Jersey*, 887 F.2d 417, 423 (2d Cir. 1989) ("*Automobile Club*").

On that same date, AAA applied for a preliminary injunction to reverse the toll increases. In addition to arguing that its complaint was likely to succeed on the merits, AAA alleged that the continued collection of the increased tolls would cause irreparable harm to the motoring

public, with "no practical way of refunding . . . the cost of the toll increases once they have been determined to be improper." (*Id.* at 4-5).

In opposition to AAA's application, the Port Authority provided preliminary capital plan and cash-flow analyses for its Integrated Transportation Network[1] ("ITN"). (Fabiano Aff. Exs. A ("Preliminary Capital Plan"), D ("Summary of Cash Flows - 2011– 2020 Projected Data - Cash Basis"), E ("Summary of Cash Flows - 2011– 2020 Projected Data – 50% Cash / 50% Debt Basis").) These analyses show that the ITN had negative cash flow for the past four years, and that the Port Authority expects the ITN to have negative cash flow for the next ten years, even with increased tolls. The Port Authority also provided a comparison between its average toll and the average toll for major crossings operated by the Metropolitan Transportation Authority ("MTA"), New York City's other regional toll bridge and tunnel operator; this showed that even with the toll increases, the Port Authority tolls are the same or lower than the round-trip tolls for the MTA facilities. (November 4, 2011 Affidavit of Mark Muriello, Exs. A, B.) Based on these affidavits, the Port Authority argued that AAA was unlikely to succeed on the merits, and therefore that no injunction should issue. (Nov. 4, 2011 Mem. of Law in Opp'n to Pl.'s Appl. For a Prelim. Inj. And in Supp. of Def.'s Mot. to Dismiss ("Opp'n Mem.") at 8.) The Port Authority also argued that AAA failed to show irreparable harm, because "78.9% of drivers traveling the affected bridges and tunnels use E-Z Pass[2] and could have their accounts credited," while the remaining cash users "could receive a discount on the cash tolls as reimbursement." (*Id.*)

---

[1] The ITN includes the four interstate bridges, the two interstate tunnels, the three bus terminals, and PATH. *See Automobile Club of New York, Inc. v. Port Authority of New York and New Jersey*, 887 F.2d 417, 418 (2d Cir. 1989).

[2] E-Z Pass is a system which allows vehicles equipped with a transponder to pass through toll plazas without having to stop and pay. Upon driving through a toll plaza, the transponder signals the car's identity to a facility which automatically charges the toll to the driver's account. Drivers generally purchase the transponder with a credit card which is then assigned to the account, from which future tolls are deducted. *See Doran v. Massachusetts Turnpike*

4

With its opposition filing, the Port Authority also moved for judgment on the pleadings, asking that AAA's complaint be dismissed for failure to state a claim under the Commerce Clause or the Highway Act, and for lack of a private right of action under the Highway Act. (*Id.* at 18.)

In its reply papers, and again at the December 8, 2011 oral argument, AAA alleged that past public statements by Port Authority officials undermine the validity and completeness of the Port Authority's capital plan and cash flow analyses. AAA did not provide any financial documentation directly contradicting the Port Authority's analyses, but argued that it was "difficult to reconcile" them with publicly available financial documents. (November 18, 2011 Affidavit of Robert Walters at 2.) In its reply papers, AAA also proposed three lesser injunctions. (*See* Nov. 18, 2011 Reply Mem. of Law in Supp. of P.'s Mot. for a Prelim. Inj. And in Opp'n to Def.'s Mot. to Dismiss ("AAA Reply Mem.") at 5.) One would prohibit the Port Authority from collecting increased tolls until the Port Authority Commissioners review the analyses provided to the Court; a second would partially reduce the toll increases; and a third would enjoin the Port Authority from spending toll increase funds outside of the ITN. The Port Authority then challenged the belatedness of AAA's request for alternative relief, and repeated its arguments in support of dismissal. (*See* Reply Mem. of Law In Further Supp. of Def.'s Mot. to Dismiss ("PA Reply Mem.").)

---

*Authority*, 348 F.3d 315, 317 & n.1 (1st Cir. 2003) (discussing the Massachusetts "FAST LANE" system, and noting that E-Z Pass is New York's "interoperable . . . equivalent electronic toll payment system").

**DISCUSSION**

**I. AAA's Application for Preliminary Injunction**

      A preliminary injunction is " 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *Sussman v. Crawford*, 488 F.3d 136, 140 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). In general, a district court may grant a preliminary injunction only where the moving party establishes: (i) that it is likely to suffer irreparable injury if the injunction is not granted, and (ii) either (a) a likelihood of success on the merits of its claim, or (b) the existence of serious questions going to the merits of its claim and a balance of the hardships tipping decidedly in its favor. *Beal v. Stern*, 184 F.3d 117, 122 (2d Cir. 1999) (citations and internal quotation marks omitted). When, however, the moving party seeks to affect governmental action taken in the public interest pursuant to a statutory or regulatory scheme, an injunction can be granted only if the moving party "meets the more rigorous likelihood-of-success standard" and establishes a "clear or substantial likelihood of success on the merits." *Sussman*, 488 F.3d at 139 (quoting *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000); *Tunick v. Safir*, 209 F.3d 67, 70 (2d Cir. 2000)).

      **A. Irreparable Injury**

      A showing of irreparable harm is "essential to the issuance of a preliminary injunction." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995). Irreparable harm must be "imminent" and "not remote or speculative." *Id.* (citing *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)). The harm to the movant must be one "that cannot be remedied by an award of monetary damages." *Id.* (citing *Tucker*, 888 F.2d at 975).

6

In this case, the Port Authority has persuasively argued that any harm alleged by AAA can be adequately remedied through a monetary refund. According to the Port Authority's filings, 78.9% of drivers traveling the affected bridges and tunnels use E-Z Pass. Since E-Z Pass presumably maintains an electronic record of toll charges, drivers could have their E-Z Pass accounts or associated credit cards refunded if this Court were to reverse the tolls. AAA has not demonstrated how such a refund fails to remedy the alleged damage as to these drivers, and its cursory statement that the Port Authority "does not explain how any refund could be accomplished practically" (AAA Reply Mem. at 9) improperly places AAA's burden as movant on the Port Authority. While the Port Authority's proposal to offer a discount to the remaining 21.1% of cash-paying drivers would not be perfect – as to, for example, cash drivers who never return to New York, or E-Z Pass drivers who might "double dip" by subsequently utilizing the discounted cash lanes – AAA has not shown that a substantial number of drivers would go unreimbursed.

In view of the relief proposed by the Port Authority, AAA's claims of impracticality are too weak to support a finding of irreparable injury, as required for its initial request for preliminary relief, or for its three later proposals.[3] *See Bridgeport, Port Jefferson Steamboat Co. v. Bridgeport Port Authority*, No. Civ.A. 3:03CV599CFD, 2004 WL 840140, at *3 (D.Conn. Apr. 15, 2004) ("*Bridgeport I*") (denying motion for preliminary injunction enjoining Bridgeport Port Authority from collecting a ticket surcharge on ferry passengers, and noting that "[a]s to whether all the passengers could be located to receive their portion of any repayment, the plaintiffs have not shown that it would be unlikely or that another method of relief is

---

[3] Likewise, the harm that amici Congressman Michael Grimm and Assemblywoman Nicole Malliotakis fear may befall the Staten Island manufacturing sector if the tolls are left in place is too remote and speculative to support AAA's motion. (*See* October 4, 2011 Mot. for Leave to file Amicus Curiae Brief.)

unavailable."). But the Court need not further address the fine points of the Port Authority's refund proposal, because AAA's showing of a likelihood of success on the merits falls far short of the threshold for a preliminary injunction, whether under the Commerce Clause or the Highway Act.

### B. Likelihood of Success on the Merits

### 1. Commerce Clause

The Commerce Clause provides Congress with the power to "regulate Commerce with foreign Nations, and among the several States . . . ." U.S. Const. art. I, § 8, cl. 3. This allocation of power was "designed in part to prevent trade barriers that had undermined efforts of the fledgling States to form a cohesive whole following their victory in the Revolution." *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 90 (2d Cir. 2009) (quoting *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 807 (1976)). From this federal grant of regulatory power flows the negative or dormant implication that the Commerce Clause "prohibits state taxation or regulation that discriminates against or unduly burdens interstate commerce and thereby impedes free private trade in the national marketplace." *Selevan*, 584 F.3d at 90 (quoting *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997)).

The Port Authority concedes the applicability of the Supreme Court's three-prong test, set forth in *Northwest Airlines, Inc. v. County of Kent*, 510 U.S. 355 (1994), to determine the reasonableness of fees for the use of state-provided facilities by those engaged in interstate commerce. Under this test, a fee is reasonable, and thus constitutionally permissible, "if it (1) is based on some fair approximation of use of the facilities, (2) is not excessive in relation to the benefits conferred, and (3) does not discriminate against interstate commerce." *Id.* at 369 (citing *Evansville-Vendenburgh Airport Authority District v. Delta Airlines, Inc.*, 405 U.S. 707 (1972)).

AAA alleges only that the fees violate prongs (1) and (2), and do not otherwise discriminate against interstate commerce. (PI Mem. at 8-10.)

AAA relies on *Bridgeport II*, which declared unconstitutional a user fee imposed on ferry passengers between Bridgeport, Connecticut and Port Jefferson, New York. While part of the fee appropriately subsidized operation of the ferry itself, another part subsidized services with no actual or potential benefit for the ferry passengers, like efforts to establish an additional high speed ferry from Bridgeport, Connecticut to New York City (far from Port Jefferson). *Bridgeport II*, 567 F.3d at 87. The Second Circuit confirmed the district court's finding that this part of the fee failed both the "excessive" and "fair approximation" prongs of *Northwest Airlines*. *Id.* A third part of the fee subsidized operations like a pump-out service for pleasure boats. *Id.* The Second Circuit held that even if this part of the fee indirectly benefitted ferry passengers by reducing pollution, and was therefore not "excessive," the fee still failed the "fair approximation" test because these services were not being proportionally or even partially billed to the services' direct beneficiaries, like the pleasure boat operators themselves. *Id. at 88.*

Analogizing from *Bridgeport II*, AAA insists that "toll increases may not be used for the World Trade Center, which does not bear a functional relationship to the facilities used by the toll payers and therefore could not represent a fair approximation of the use of those facilities and would be excessive in relation to the benefit conferred." (AAA Reply Mem. at 13.) The Port Authority, however, has provided financial analyses strongly suggesting that no toll increases are, or will be, used for the World Trade Center. AAA does not deny that toll increases may be used for the ITN without violating its identified Commerce Clause requirements. (*See id.*)

Although AAA was given the opportunity by this Court in connection with its motion to take discovery and present an alternative financial picture for the Port Authority, AAA has failed

to do so. Even at oral argument, AAA continued to rely on a few comments made in Port Authority press statements and at the August 19, 2011 Board of Commissioners meeting to counter the statements presented by the Port Authority in its affidavits. While the comments identified by AAA mention the World Trade Center site and its escalating costs, they frequently also mention repairs within the ITN, and nowhere state affirmatively that the toll increases will subsidize non-ITN activity. Likewise, although AAA provides the Court with the Port Authority's financial statements for 2010, AAA fails to show how these past statement contradict the Port Authorities financial figures for the coming years. Instead, AAA chooses to focus its allegations on potential misrepresentations to the Board of Commissioners and to the press. Even if such misrepresentations occurred, their content falls far short of refuting the detailed financial picture provided by the Port Authority, which suggests that the toll increases fund only ITN structures in a functional relationship with the bridge users.

For these reasons, AAA has failed to demonstrate a likelihood of success on the merits on its Commerce Clause claim, let alone a clear or substantial likelihood of success.

### 2. Highway Act

The parties disagree on whether AAA has a private right of action under 33 U.S.C. § 508. AAA asks the Court not to follow the Third Circuit Court of Appeals' decision in *American Trucking Association v. Delaware River Joint Toll Bridge Commission*, 458 F.3d 291, 304 (3d Cir. 2006) ("*American Trucking*"), which found no private right of action under Section 508 for truck drivers challenging the reasonableness of tolls on bi-state bridges operated by the Commission. (PI Mem. at 8.) Instead, AAA points to *Automobile Club*, where the Second Circuit held that it was "just and reasonable" under Section 508 for the Port Authority to direct bridge and tunnel tolls to other portions of its ITN. AAA argues that this case "impliedly recognized a

private right of action under section 508" when it entertained AAA's challenge to the Port Authority's tolls over twenty years ago.[4] (PI Mem. at 7.) Not surprisingly, defendant sides with the Third Circuit and a more recent decision in this circuit, arguing that the Highway Act need not be read to create a private right of action. (Opp'n Mem. at 10) (citing *American Trucking*, 458 F.3d at 297 and *Molinari v. New York Triborough Bridge and Tunnel Authority*, 838 F.Supp. 718, 724 (E.D.N.Y. 1993) ("*Molinari*")).

While the Court finds points of disagreement with both the *American Trucking* and *Molinari* analyses,[5] it does not need to reach the question of whether AAA has a private right of

---

[4] As a matter of logic, AAA is certainly correct. However, it is also clear that neither the district nor circuit court opinions in *Automobile Club* directly addresses the issue.

[5] *American Trucking* focused on legislative history and relied on the four factor test in *Cort v. Ash*, 422 U.S. 66 (1975) to find no private right of action under Section 508. 458 F.3d at 304. But more recent cases in this circuit and at the Supreme Court have emphasized that the "text and structure" of a statute are the primary indicators of a private right of action. *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001); *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. December 1, 2011); *see also Lindsay v. Ass'n of Prof'l Flight Attendants*, 581 F.3d 47, 52 n.3 (2d Cir. 2009) (noting that the four-factored test in *Cort v. Ash* is subordinate to an analysis of the statutory text). The text of the Highway Act made two main changes to the laws regarding interstate bridges and bridges over navigable waters. First, it eliminated administrative review of tolls on these bridges by repealing sections of the General Bridge Acts of 1906 and 1946. Second, it added 33 U.S.C. § 508, mandating that tolls on these bridges "shall be just and reasonable." *See Molinari*, 838 F.Supp. at 722-23.

The statutory construction in *American Trucking* leaves no means for enforcement of this deliberate latter addition, making the words "just and reasonable" mere surplusage and conflicting with the text and structure of the rest of the act. "[C]ourts should avoid statutory interpretations that render provisions superfluous . . . ." *State Street Bank and Trust Co. v. Salovaara*, 326 F.3d 130, 139 (2d Cir. 2003); *see also Williams v. Taylor*, 529 U.S. 362, 404 (2000) (describing the rule against surplusage as a "cardinal principle of statutory construction"). The *American Trucking* court's suggestion that "the state political process could be the venue that Congress had in mind for the airing of toll grievances" is a bit of a dodge, as one state's legislature cannot unilaterally modify tolls on a bi-state bridge without impinging on the rights of the other state's citizens in violation of the Commerce Clause. *See Covington & C. Bridge Co. v. Commonwealth of Kentucky*, 154 U.S. 204, 222 (1894). And, if the *American Trucking* court's reliance on legislative history was even appropriate, it waved away Committee reports from two earlier (but unpassed) versions of the Highway Act containing similar "just and reasonable" language, reports which stated that "the Committee has created a basis for which a user may commence suit in Federal court" upon belief "that actions of a toll authority are not just and reasonable." *American Trucking Association*, 458 F.3d at 301.

The Third Circuit noted with favor Judge Korman's observation in *Molinari* that "the Supreme Court long ago refused to find a private right of action in statutory language indistinguishable from that used in § 508." *American Trucking Association*, 458 F.3d at 304 (citing *Molinari*, 838 F.Supp. at 724). But the cases cited in *Molinari* as containing similar "just and reasonable" requirements, *T.I.M.E. Inc. v. United States*, 359 U.S. 464 (1959) and *Montana Dakota Utilities Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246 (1951), are readily distinguishable as addressing statutes which included comprehensive regulatory enforcement mechanisms. *See T.I.M.E.*, 359 U.S. at

action under Section 508's "just and reasonable" standard. That standard appears to this Court to be closely aligned with the reasonableness test set forth at *Northwest Airlines*. And regardless of any subtle distinctions, the Second Circuit clearly recognized in *Automobile Club* that the Highway Act permits the Port Authority to raise tolls to subsidize ITN services. 887 F.2d at 423. That case affirmed that the Port Authority could increase bridge and tunnel tolls to fund its mass transit PATH system, because PATH "benefits those who normally use the Port Authority's bridges and tunnels" by absorbing passengers who would otherwise "severely disrupt traffic" on the same. *Id.* Because PATH bore a "functional relationship" to the bridges and tunnels, the Second Circuit affirmed the district court's finding that the Port Authority's bridges, tunnels, bus terminal, bus programs and PATH together form an "integrated, interdependent transportation system," and thus that it was reasonable to include costs for these services in the "rate base" of the bridge and tunnel tolls. *Id.* at 418, 425.

As discussed *supra*, AAA has failed to show a "clear or substantial" likelihood of success on its assertions that bridge toll revenue is being directed outside the ITN. AAA alleges that the Port Authority is spending toll revenue on the World Trade Center, (AAA Reply Mem. at 12), but has offered insufficient evidence to counter the Port Authority's financial analyses. Thus

---

469 ("language of this sort in a statute *which entrusts rate regulation to an administrative agency* in itself creates only a 'criterion for administrative application in determining a lawful rate' rather than a 'justiciable legal right'") (quoting *Montana Dakota*, 341 U.S. at 251) (emphasis added). A better parallel might be drawn to *Wilder v. Virginia Hospital Association*, 496 U.S. 498 (1990), which found that Congress "left no doubt of its intent for private enforcement" when it required States to pay an entitlement to Medicare providers that was reasonable and adequate, "with no sufficient administrative means of enforcing the requirement against States that failed to comply." *Gonzaga University v. Doe*, 536 U.S. 273, 280-81 (2002).

In sum, while this Court need not distinguish *American Trucking* or *Molinari* to reach its holding because a similar remedy exists under the dormant Commerce Clause, it notes that neither opinion squarely addresses the fact that the Highway Act purposefully inserted a statutory requirement while removing all administrative mechanisms for its enforcement. The Supreme Court has found that such absence of administrative procedure is a "significant" indication of Congress's intent to create a private right of action. *Gonzaga*, 536 U.S. at 280.

even if *arguendo* AAA has a right of action under Section 508, it has not shown that its claims are likely to succeed in view of *Automobile Club*. For this reason, AAA is no more entitled to a preliminary injunction under the Highway Act than it is under the Commerce Clause.

## II. The Port Authority's Motion for Judgment on the Pleadings

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir. 2001). On a motion to dismiss under Fed. R. Civ. P. 12(b)(6) the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *In re DDAVP Direct Purchaser Antitrust Litigation,* 585 F.3d 677, 692 (2d Cir. 2009). The complaint, however, must allege "enough facts to state a claim to relief that is plausible on its face." *Starr v. Sony BMG Music Entertainment,* 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).

If, on a motion to dismiss, a district court is presented with materials outside the pleadings, it can either "exclude[ ] the extrinsic documents" or "convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by [Fed. R. Civ. P.] 56." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 154 (2d Cir. 2002); *see* Fed. R. Civ. P. 12(b). "Federal courts have 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings' offered in conjunction with a Rule 12(b)(6) motion, and thus complete

13

discretion in determining whether to convert the motion to one for summary judgment; 'this discretion generally will be exercised on the basis of the district court's determination of whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action.' " *Carione v. United States,* 368 F.Supp.2d 186, 191 (E.D.N.Y. 2005) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, Civil § 1366 (3d ed. 2004)); *see also Liberty Mutual Insurance Co. v. N. Picco & Sons Contracting Co., Inc.,* No. 05 Civ. 217 (SCR), 2008 WL 190310, at *3 (S.D.N.Y.  Jan. 18, 2008) ("It is within the discretion of this Court to convert a motion filed under Rule 12(b)(6) into a motion seeking summary judgment . . . .").

The Port Authority clearly relies on its factual admissions in challenging the plausibility of AAA's pleadings under the Commerce Clause. (*See* Opp'n Mem. at 19) ("Here, Plaintiffs have relied solely on press releases and their extraction of net revenues from the Port Authority's 2010 operating budget to state their case . . . The Port Authority's Preliminary Capital Plan for the ITN for 2011-2020 and its cash flow analyses for the same period show the Plaintiffs have based their claims on incomplete data from which they drew unsound conclusions."). AAA was provided these financial analyses only upon the Port Authority's motion. The Court understands that these analyses were not previously available to the public, or to AAA through discovery. While the Court offered AAA an opportunity for early discovery in connection with its application for a preliminary injunction, no such offer was extended in connection with the Port Authority's motion. AAA's claim that the Port Authority's toll increases are earmarked for expenditures which do not reflect a "fair approximation of use" or are "excessive" in relation to the benefit conferred may be bolstered through discovery of financial documents or correspondence not yet provided for public review.

14

Accordingly, the Court will convert the Port Authority's motion to one for summary judgment, and provide the parties with the opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Fed. R. Civ. P. 56.

## CONCLUSION

For the forgoing reasons, AAA's application for a preliminary injunction is DENIED. The Port Authority's motion (ECF Docket No. 11) is converted to a motion for summary judgment. The court reserves ruling on the motion, and will refer the case to the Magistrate Judge to supervise discovery in connection with the motion.

SO ORDERED.

Dated: New York, New York

Feb. 6        , 2012

Richard J. Holwell
United States District Judge