UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

AUTOMOBILE CLUB OF NEW YORK,           :
INC., d/b/a "AAA New York"
and "AAA North Jersey, Inc."           :

                    Plaintiffs,  :    11 Civ. 6746 (RKE)(HBP)

    -against-                          :    OPINION
                                            AND ORDER
THE PORT AUTHORITY OF                  :
NEW YORK AND NEW JERSEY

                                       :
                    Defendant.
                                       :
----------------------------------X


          PITMAN, United States Magistrate Judge:


I.  Introduction


          By notice of motion dated July 3, 2012 (Docket Item

57), plaintiffs Automobile Club of New York, Inc., doing business

as "AAA New York" and "AAA North Jersey" (collectively, "AAA"),

move for an Order to expand discovery beyond the scope of my

order of May 7, 2012 (Docket Item 34).  For the reasons set forth

below, plaintiffs' motion is (1) denied without prejudice to

renewal to the extent that it seeks to expand the scope of

discovery, and (2) denied to the extent that it seeks guidance as

to future depositions.

II.   Facts

   A.   Plaintiffs' Underlying Allegations

      The facts and allegations in this case are fully set
forth in the decision of the Honorable Richard J. Holwell, United
States District Judge (retired), addressing plaintiffs' motion
for a preliminary injunction and defendant's cross-motion to
dismiss, Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.,
842 F. Supp. 2d 672 (S.D.N.Y. 2012), and can be briefly
summarized.

      Plaintiffs contend that certain toll increases within
the Port Authority's Integrated Transportation Network ("ITN"),[1]
which took effect on September 18, 2011, were enacted for im-
proper purposes, specifically, to fund real estate development at
the World Trade Center, rather than being enacted to cover ITN
capital needs, and violate the Commerce Clause of the United
States Constitution and the Surface Transportation and Uniform

_____

      [1] The Interstate Transportation Network is comprised of
"four bridges, the George Washington Bridge (including a bus
station), the Bayonne Bridge, the Goethals Bridge, and the
Outerbridge Crossing; two tunnels, the Lincoln Tunnel and the
Holland Tunnel; the bus terminal at 40th Street and 8th Avenue in
Manhattan; the Port Authority Bus Programs; and the PATH railroad
system." Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.,
887 F.2d 417, 418 (2d Cir. 1989).

Relocation Assistance Act of 1987 (the "Highway Act"), 33 U.S.C. § 508 (1987) (Complaint, filed Sept. 23, 2011 ("Compl.")(Docket Item 1) ¶¶ 1, 34-45). Plaintiffs argue that under Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth., 567 F.3d 79, 86 (2d Cir. 2009), such toll increases violate the dormant Commerce Clause because they do not bear a "functional relationship" to the ITN, and, thus, do not represent a "fair approximation" of the use of ITN facilities and are "excessive in relation to the benefits conferred" on toll payers (Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction, dated September 26, 2011 (Docket Item 32)("Pls.' P.I.  Mem."), at 10). Accordingly, plaintiffs contend that the tolls are not "just and reasonable" under the Highway Act, and are, therefore, illegal, because they were enacted to fund projects that are not part of the ITN (Pls.' P.I. Mem. at 6-7, citing Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J., 887 F.2d 417 (2d Cir. 1989)). Plaintiffs sought a preliminary injunction, and continue to seek declaratory as well as injunctive relief (Compl. ¶¶ 46-51).

B.    Procedural History

Plaintiffs commenced this action on September 27, 2011, and on that same date sought a preliminary injunction to reverse the toll increases. Defendant filed its answer on October 18,

3

2011, and moved for judgment on the pleadings pursuant to
Fed.R.Civ.P. 12(c) on November 4, 2011.  On December 8, 2011,
Judge Holwell heard oral argument on plaintiffs' motion for a
preliminary injunction and defendant's motion to dismiss.

Judge Holwell denied plaintiffs' motion for a prelimi-
nary injunction on February 6, 2012 and converted defendant's
motion to dismiss into a motion for summary judgment, pending
further discovery.  See Auto. Club of N.Y., Inc. v. Port Auth. of
N.Y. & N.J., supra, 842 F. Supp. 2d at 681.  On the same date,
the matter was referred to me to supervise discovery in connec-
tion with defendant's motion for summary judgment (Docket Item
33).

On May 4, 2012, I held a conference in this matter
during which various discovery disputes were discussed.  In
considering whether plaintiffs should be entitled to discovery
regarding ITN funds allegedly diverted to the World Trade Center,
and in consideration of the breadth of discovery contemplated by
Judge Holwell in his February 6, 2012 opinion, I determined that
the appropriate scope of discovery, with respect to financial
matters, was "Interstate Transportation Network revenues and
expenses for the years 2007 forward" (Order, dated May 7, 2012
("May 7 Order") (Docket Item 41)).  I explained the ruling as
follows:

4

> I think right now the relevant inquiry is income from
> the tolls, 2007 forward, and the actual expenses of the
> ITN and the projected expenses of the ITN.  If the toll
> revenue is equal to or less than the ITN expenses and
> by ITN expenses I'm referring to all the categories of
> expenses that [defendant's counsel] described -- capi-
> tal, operating, debt service -- it really doesn't
> matter how the World Trade Center site development is
> being funded.  If, on the other hand, the tolls exceed
> the ITN expenses, then maybe we have a different situa-
> tion.

(Transcript of Proceedings held on May 4, 2012 ("May 4 Tr.")

annexed as Exhibit C to Declaration of Kevin P. Mulry in Support

of Motion to Compel Discovery, dated Jul. 3, 2012 (Docket Item

58)("Mulry Decl."), at 49).

Recognizing, however, that limited discovery had taken

place prior to the May 4 conference, I informed plaintiffs that I

was willing to "revisit the issue" if additional discovery

revealed "other issues or shows that some more expansive discov-

ery is appropriate" (May 4 Tr. at 49).  As I noted at a later

conference:

> The last area here is AAA's intention to make a motion
> to compel with respect to disputed areas of discovery.
> Basically to revisit the May 7 order. [Plaintiffs'
> counsel], if you want to make a motion arguing that
> broader discovery is appropriate, I'm happy to consider
> such a motion.  I would only ask that . . . the motion
> . . . is going to be based new or different arguments
> than were made in May.  If it's just a rehash of what
> was said in May, it's going to get the same result.

(Transcript of Proceedings held on June 19, 2003 (Docket Item

53), at 49-50).

On July 3, 2012, plaintiffs filed the present motion, seeking to revisit the May 7 Order and expand the scope of discovery.  On August 3, 2012, defendant filed its opposition, and on August 15, 2012, plaintiffs filed their reply.  Defendant submitted a letter in further opposition to plaintiffs' motion on August 28, 2012, and plaintiffs submitted a letter in further support of their motion on August 31, 2012.

C.   The Present Dispute

Plaintiffs argue that discovery should be expanded beyond the boundaries of the May 7 Order to include the account-ing of ITN revenues within the Port Authority's Consolidated Bond Reserve Fund and General Reserve Fund (collectively, the "Reserve Funds") because discovery has revealed that the Port Authority "has no documents concerning any segregation or accounting of the ITN revenues that have been deposited into the [Reserve Funds]" (Memorandum of Law in Support of Plaintiffs' Motion to Compel Discovery, dated July 3, 2012 (Docket Item 59)("Pls.' Mem."), at 4).  Plaintiffs contend that such discovery, which would include "ITN transfers in and ITN transfers out" of the Reserve Funds, should date back to 2001, to get a "true picture" of the Port Authority's capital needs, and also include "discovery of the

uses of the Reserve Funds for the funding of World Trade Center" (Pls.' Mem. at 9-10).

Plaintiffs also assert that the May 7 Order should not be interpreted so as to preclude discovery as to any issues "that were addressed in the affidavits submitted to the Court on the preliminary injunction application and the Port Authority's motion to dismiss, which the Court subsequently treated as a motion for summary judgment" (Pls.' Mem. at 6).  Finally, plaintiffs request that "the Court order that the scope of discovery at depositions is not limited to the issues in the May 7 Order," because "[i]n order to make a presentation to the court with respect to the relevance of additional areas of discovery, plaintiffs must be able to ask questions of Port Authority witnesses with respect to areas of inquiry that could lead to further discovery" (Pls' Mem. at 11).

Defendant, characterizing plaintiffs' motion as simply a motion for reconsideration of the May 7 Order, argues that, contrary to my instructions at the May 4 and June 19 conferences, "AAA fails to offer any new arguments -- legal or factual -- in support of its request for this dramatically expanded scope of discovery" (Defendant Port Authority's Memorandum in Opposition to Plaintiffs' Motion to Compel Discovery, dated Aug. 3, 2012 (Docket Item 62)("Def. Mem."), at 7).  Without any new arguments

7

or facts, claims defendant, there is no justification for discov-
ery as to the ITN revenues within the Reserve Funds, World Trade
Center funding, or a expansion of discovery to date back to 2001
(Def. Mem. 8-9).

Defendant further contends that the May 7 Order, by its
terms, limits discovery to "the information underlying the Port
Authority's financial analyses," regarding ITN revenues and
expenses from 2007 forward, and does encompass discovery as to
areas such as, inter alia, "[r]easons for the 2011 bridge and
tunnel toll increase," "[p]resentation of the reasons for the
bridge and tunnel toll increase," and "[c]ommunications and
information provided to the Board of Commissioners" relating to
the toll increases (Def. Mem. at 11).  Such information, accord-
ing to defendant, was found by Judge Holwell to be "unpersuasive
and irrelevant to the determination of the issues raised by AAA's
complaint" (Def. Mem at 9).

Plaintiffs argue in response that "ITN revenues and
expenses," as those terms are used in the May 7 Order, should be
interpreted to include application of ITN revenues within the
Reserve Funds (Reply Memorandum of Law in Support of Plaintiffs'
Motion to Compel Discovery, dated Aug. 15, 2012 (Docket Item 61)
("Pls.' Reply"), at 6-7).  Plaintiffs further argue that defen-
dant should not be permitted to object to areas of discovery,

such as "documents concerning the reasons for the toll increase," the discoverability of which plaintiffs believe to have been unchanged by the May 7 Order (Pls.' Reply at 7).  Plaintiffs cite to conferences held after the May 7 Order was in place, including a conference on May 25, in which there was extensive discussion about production of documents relating to the reasons for the toll increase, without any apparent objection from defendant (Pls.' Reply at 7-8).

In a letter submitted in further opposition of plaintiffs' motion, defendant takes the position that since the plaintiffs' underlying claims are based on objective analyses, discovery "relating to the subjective intent of Port Authority decision makers" should be prohibited pursuant to the May 7 Order, and cite several cases in support of this proposition (Defendant's Letter in Opposition to Plaintiffs' Motion to Compel Discovery, dated Aug. 27, 2012 ("Def. Letter"), at 3).  Defendant adds that such discovery would have the effect of "infringing upon the Port Authority's deliberative process and chilling decision-makers in having the frank exchanges ordinarily protected from disclosure" (Def. Letter at 3, citing N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975); Tigue v. U.S. Dep't of Justice, 312 F.3d 70, 74 (2d Cir. 2002)).

In a letter submitted in further support of their motion, plaintiffs assert that they are not seeking discovery as to the "subjective intent" of Port Authority Commissioners, but rather the "reasons for the toll increases, including the reasons presented to the Commissioners and the reasons why the Commissioners ultimately approved the toll increases" (Plaintiffs' Letter in Support of Motion to Compel Discovery, dated Aug. 31, 2012 ("Pls.' Letter"), at 1).  They claim that such discovery has already been permitted by a ruling at a conference held on May 25, 2012, and that in any event, such discovery is relevant to the question of whether the toll increases were "just and reasonable" (Pls' Letter at 1-2).  Plaintiffs further disagree with defendant's interpretation of one of the cases it cites in its letter, State of Delaware Dep't of Natural Res. & Envtl. Control v. U.S. Army Corp of Engineers, 722 F. Supp. 2d 535 (D. Del. 2010), and argue that "the reasons that the decision-makers had" in that case were "clearly relevant, and were included in the administrative record" (Pls.' Letter at 2).  As to deliberative process privilege, plaintiffs represent that they will "address any claims of privilege in the event that they are asserted by the Port Authority" (Pls.' Letter at 3).

III.  Analysis

    A.   Motion to Compel

        Rule 37 of the Federal Rules of Civil Procedure pro-
vides that a party may move to compel a discovery response when
an opposing party fails to comply with a discovery request.
Fed.R.Civ.P 34(a)(3)(B).  Such a motion must identify responses
to requests believed to be inadequate, and provide explanation as
to why those responses are inadequate.  Lawrence v. Artuz, 00
Civ. 0721 (JSM)(HBP), 2001 WL 185039 at *1 (S.D.N.Y. Feb. 26,
2001) (Pitman, M.J.); LaBounty v. Coombe, 95 Civ. 2617
(DLC)(AJP), 1996 WL 30291 at *2 (S.D.N.Y. Jan. 24, 1996) (Peck,
M.J.).  Here, though plaintiffs' motion is titled a "Motion to
Compel Discovery," it makes little attempt to identify specific,
allegedly problematic discovery responses by defendant, instead
focusing on broader discovery issues.  Plaintiffs include their
document requests and interrogatories with their motion, along
with defendant's responses (Mulry Decl., Exhibits D-H), but
scarcely reference any specific responses in their memoranda of
law.  In fact, there are only two instances in plaintiffs'
memoranda of law that refer to specific discovery responses by
defendant, and in neither instance do plaintiffs make any compel-

11

ling argument as to why such responses justify an expansion of the parameters of discovery.

In the first instance, plaintiffs point to several of defendant's discovery responses as evidence of the inadequacy of their accounting practices:

> In its responses to discovery in this case, for exam-
> ple, the Port Authority states that it has no documents
> concerning any segregation or accounting of the ITN
> revenues that have been deposited into the Consolidated
> Bond Reserve Fund or the General Reserve Fund. See
> Mulry Decl., Exh. E, Port Authority Responses to AAA
> Document Request nos. 26, 27, 33, 34.

(Pls.' Mem. at 4). Plaintiffs, however, do not offer any evidence that these responses are deficient, or any argument that additional responsive documents exist and are being improperly withheld.

In the second instance, in their reply, plaintiffs refer to certain discovery responses as examples of defendant's apparent acquiescence to an area of discovery now in dispute:

> In parts of its opposition, the Port Authority
> appears to be objecting to areas of discovery to which
> it had not previously objected, and to which AAA did
> not believe there was any dispute . . .
>
> Tellingly, in its responses to the AAA discovery
> requests, served after the May 7 Order, the Port Au-
> thority did not object to these requests on the grounds
> of relevance, and specifically did not object on the
> ground that they went beyond the scope of the May 7
> Order. See Mulry Decl., Ex. E (responses to requests
> nos. 3, 4, 5, 6, 41, 42, 43, 44, 45).

12

(Pls.' Reply. at 7).  Once again, plaintiffs do not appear to be arguing that these specific responses by defendant are deficient in any respect.  Plaintiffs are only asserting that defendant should not be able to make future relevance objections to areas of discovery to which they appear to have previously assented, as evidenced by the responses they reference.

Rather than identifying specific deficient responses by defendant, plaintiffs' motion is comprised mainly of broad, conceptual arguments relating to the current scope of discovery, many of which were raised and addressed at the conference on May 4.  While I agreed at prior conferences to entertain a motion by plaintiffs to expand the scope of discovery, such a motion must be supported with references to specific responses, demonstrating the inadequacy of the current parameters of discovery, and preferably including citations to pertinent legal authority or newly discovered facts.  Such specificity is especially warranted here, given the potential application of the deliberative process privilege to some of the discovery plaintiffs seek from defen-dant.  Thus, while there may still be an opportunity to revisit the scope of the May 7 Order as discovery develops further, plaintiffs have not demonstrated a need to do so at this time.

In addition, the Federal Rules of Civil Procedure require that counsel meet and confer concerning discovery dis-

13

putes before seeking judicial intervention.  Fed.R.Civ.P.
37(a)(1) ("The motion [to compel disclosure] must include a
certification that the movant has in good faith conferred or
attempted to confer with the party not making the disclosure in
an effort to secure the disclosure without court action.").
While the parties' joint letter of June 15, 2012 indicates that
there was some discussion regarding the general scope of discov-
ery going forward, there is no indication that any attempts were
made to resolve any <u>specific</u> discovery disputes as they relate to
particular demands or responses (Mulry Decl., Exhibit B, at 8-9).
This deficiency alone is a sufficient ground for denying the
motion.  <u>See</u> <u>Carling v. Peters</u>, 10 Civ. 4573 (PAE)(HBP), 2012 WL
1438261 at *2 (S.D.N.Y. Apr. 24, 2012) (Pitman, M.J.); <u>Pro Bono</u>
<u>Inv., Inc. v. Gerry</u>, 03 Civ. 4347 (JGK), 2005 WL 2429767 at *1
(S.D.N.Y. Sept. 30, 2005)(Koeltl, D.J.); <u>Prescient Partners, L.P.</u>
<u>v. Fieldcrest Cannon, Inc.</u>, 96 Civ. 7590 (DAB)(JCF), 1998 WL
67672 at *3 (S.D.N.Y. Feb. 18, 1998) ("[T]he failure to meet and
confer mandates denial of a motion to compel.").

          Accordingly, because plaintiffs' have failed to provide
a sufficient factual or legal basis for modifying my May 7 Order,
their motion to compel discovery is denied without prejudice to
renewal.  Any renewed application should consider the factors
discussed in this opinion.

14

B.    <u>Deposition Issues</u>

Plaintiffs also devote considerable attention in their motion to potential issues that may arise at depositions (Pl. Mem. 10-11 ("Plaintiffs respectfully request that the Court order that the scope of discovery at depositions is not limited to the issues in the May 7 Order."); Pl. Resp. 9-10 ("However, Port Authority counsel has indicated that they would object at depositions to any questioning that goes beyond the May 7 Order.")). However, without an actual dispute before me, any attempt to make a preliminarily ruling on such a matter would be in the nature of an advisory opinion.  Thus, to the extent that plaintiffs' motion seeks a ruling as to the permissible scope of questions at future depositions, it is denied.  If a dispute arises at a deposition, counsel can call my chambers for a ruling.  My telephone number is (212) 805-6105.

C.    <u>Clarification</u>

Although plaintiffs have not presented adequate grounds to expand the scope of discovery beyond my May 7 Order, based on the position taken by the defendant in its opposition papers, in which it now appears to be objecting to all discovery into the

15

reasons for the toll increases,[2] it is appropriate to provide clarification as to the May 7 Order's intended scope.  The May 7 Order was issued in connection with a discussion of the scope of discoverable financial information, and must be read in that context.  It was not intended to preclude discovery concerning the reasons for the toll increases.  As the plaintiffs correctly observe, there was extensive discussion at the May 25 conference about that very topic, and tellingly, the defendant did not raise any objections that the plaintiffs were seeking information outside the scope of the May 7 Order at that time (Transcript of Proceedings dated May 25, 2012 ("May 25 Tr.")(Docket Item 42), at 24-34).  Indeed, at that conference, after a discussion about the responsiveness of a particular document, I made the following observation:

> [I]f there are other documents like this which on their face talk about the causes for the toll increase or talk about the reasons for the toll increase, which this document does on its face . . . they should be produced.

---

[2] See, e.g., Pls.' Letter at 1 n.1:

> Prior to the issuance of the May 7 Order, AAA sought documents relating to the reasons for the toll increase in its document requests, but the Port Authority objected to all requests that went beyond the scope of the May 7 Order.

16

(May 25 Tr. at 33-34).  I further note that such discovery is well within the scope contemplated by Judge Holwell in his February 6, 2012 opinion:

> AAA's claim that the Port Authority's toll increases are earmarked for expenditures which do not reflect a 'fair approximation of use' or are 'excessive' in relation to the benefit conferred may be bolstered through discovery of financial documents or correspondence not yet provided for public review.

Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J., supra, 842 F. Supp. 2d at 681.  Certainly, by including "correspondence," within the class of potentially discoverable information, Judge Holwell envisioned that discovery might encompass more than raw financial data.

Thus, subject to the deliberative process privilege and any other objections defendant might raise, the May 7 Order does not preclude discovery concerning the reasons for the toll increases.  To the extent that defendant has objected to discovery requests or withheld information based on a mistaken interpretation of the scope of the May 7 Order, it is ordered to produce such information no later than October 22, 2012.

IV.  Conclusion

       Accordingly, for all the foregoing reasons, plaintiffs' motion is (1) denied without prejudice to renewal to the extent that it seeks to expand the scope of discovery, and (2) denied to the extent that it seeks guidance as to future depositions.

Dated:  New York, New York
        October 9, 2012

                          SO ORDERED

                          HENRY PITMAN
                          United States Magistrate Judge

Copies transmitted to:

Kevin P. Mulry, Esq.
Farrell Fritz, P.C.
1320 Reckson Plaza
Uniondale, New York 11556

Michael F. Fitzgerald, Esq.
Farrell Fritz, PC
Suite 800
370 Lexington Ave
New York, New York  10017

Randy M. Mastro, Esq.
Alexander H. Southwell, Esq.
Nancy Hard, Esq.
Gibson, Dunn, & Crutcher LLP
200 Park Avenue
New York, New York  10166

18

Debra Wong Yang, Esq.
Gibson, Dunn, & Crutcher LLP
333 South Grand Avenue
Los Angeles, California  90071

Kathleen Gill Miller, Esq.
Arnold D. Kolikoff, Esq.
Carlene V. McIntyre, Esq.
David R. Kromm, Esq.
The Port Authority of
     New York and New Jersey
14th Floor
225 Park Avenue South
New York, New York  10003