UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                               :

AUTOMOBILE CLUB OF NEW YORK,    :
INC. d/b/a AAA NEW YORK and AAA
NORTH JERSEY, INC.,                     :

                 Plaintiffs,      :

   -against-                  :     No. 11 Civ. 6746 (RKE) (HBP)

THE PORT AUTHORITY OF NEW YORK  :
AND NEW JERSEY,
                                 :

               Defendant.     :

-------------------------------------------------------x

# PORT AUTHORITY CHAIRMAN DAVID SAMSON'S AND COMMISSIONER JEFFREY H. LYNFORD'S MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

GIBSON, DUNN & CRUTCHER LLP
RANDY M. MASTRO
DEBRA WONG YANG
ALEXANDER H. SOUTHWELL
NANCY HART
200 Park Avenue
New York, NY  10166-0193
Telephone:    212.351.4000
Facsimile:     212.351.4035

*Attorneys for Port Authority Chairman David Samson and Commissioner Jeffrey Lynford*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND AND PROCEDURAL HISTORY ................................. 4

    A.    Chairman Samson and Commissioner Lynford ......................... 4

    B.    Procedural History ................................................................... 4

ARGUMENT ....................................................................................... 7

    A.    AAA's Subpoenas Impose An Impermissible Undue Burden on the Commissioners under the Applicable Standard ....................... 7

    B.    AAA Has Utterly Failed To Establish That The Depositions of These High-Ranking Government Officials Are In Any Way Necessary or Appropriate ............. 8

    C.    AAA's Subpoenas Do Not And Cannot Demonstrate That AAA Seeks Non-Privileged, Non-Duplicative Information Relevant To AAA's Claims .................... 11

    D.    AAA Should Exhaust Discovery From Knowledgeable Port Authority Employees Before Seeking Burdensome Discovery of Duplicative Information ...................... 13

    E.    Subpoenas Issued To Persons At The Apex of An Organization—As Here—Are Designed To Harass .................................................. 14

    F.    In the Alternative, The Court Should Issue A Protective Order To Prevent AAA's Baseless Subpoenas ...................................... 16

CONCLUSION ..................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Arkwright Mutual Ins. Co. v. Nat'l Union Fire Ins. Co.*,
No. 90 Civ. 7811, 1993 WL 34678 (S.D.N.Y. Feb. 4, 1993)......................................... 15

*Armstrong Corp. v. Niagara Mohoawk Power Corp.*,
16 F.R.D. 389 (S.D.N.Y. 1954) ..................................................................................... 14

*Auto. Club of N.Y., Inc. v. Cox*,
592 F.2d 658 (2d Cir. 1979) ...................................................................................... 4, 12

*Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*,
444 F. Supp. 706 (S.D.N.Y. 1989), *aff'd*, 887 F.2d 417 (2d Cir. 1989),
*cert. denied*, 495 U.S. 930 (1990)............................................................................. 4, 12

*Bey v. City of New York*,
No. 99 Civ. 3873(LMM)(RLE), 2007 WL 3010023 (S.D.N.Y. Oct. 15, 2007) ...................... 8, 17

*Blum v. Schlegel*,
150 F.R.D. 38 (W.D.N.Y. 1993) .................................................................................... 16

*Bridgeport & Port Jefferson Steamboat v. Bridgeport Port Auth.*,
567 F.3d 79 (2d Cir. 2009) ........................................................................................... 12

*Burns v. Bank of Am.*,
No. 03 Civ. 685 RMB JCF, 2007 WL 1589437 (S.D.N.Y. June 4, 2007) ....................... 16

*Cmty. Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*,
96 F.R.D. 619 (D.D.C. 1983) ....................................................................................... 10

*Consol. Rail Corp. v. Primary Indus. Corp.*,
No. 92 Civ. 4927, 92 Civ. 6313, 1993 WL 364471 (S.D.N.Y. Sept. 10, 1993)........................ 14

*Delaware v. U.S. Army Corp. of Eng'rs*,
722 F. Supp. 2d 535 (D. Del. 2010)............................................................................... 12

*Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*,
No. 07 Civ. 9580(HB), 2008 WL 5099957 (S.D.N.Y. Dec. 3, 2008) ........................... 16

*Fears v. Wilhelmina Model Agency, Inc.*,
No. 02 Civ. 4911(HB)(HBP), 2004 WL 719185 (S.D.N.Y. April 01, 2004) ................... 8

*Filetech, S.A. v. France Telecom, S.A.*,
No. 95 Civ. 1848, 1999 WL 92517 (S.D.N.Y. Feb. 17, 1999)...................................... 15

*Harris v. Computer Assocs. Int'l, Inc.*,
204 F.R.D. 44 (E.D.N.Y. 2001)..................................................................................... 15

*Howard v. Galesi*,
107 F.R.D. 348 (S.D.N.Y. 1985) .................................................................................. 16

*In re Gushlak*,
No. 11-MC-218, 2011 WL 3651268 (E.D.N.Y. Aug. 17, 2011) .................................... 8

## TABLE OF AUTHORITIES

**Page**

*In re Subpoena Issued to Dennis Friedman,*
    350 F.3d 65 (2d Cir. 2003) ............................................................................. 7

*Innomed Labs, LLC v. Alza Corp.,*
    211 F.R.D. 237 (S.D.N.Y. 2002) ................................................................... 14

*Jones v. Hirschfeld,*
    219 F.R.D. 71 (S.D.N.Y. 2003) ..................................................................... 13

*Jordan v. U.S. Dep't of Justice,*
    591 F.2d 753 (D.C. Cir. 1978) ...................................................................... 12

*L.D. Leasing Corp., Inc. v. Crimaldi,*
    No. 91-CV-2430(EHN), 1992 WL 373732 (E.D.N.Y. Dec. 1, 1992) .............. 9

*M.A. Porazzi Co. v. Mormaclark,*
    16 F.R.D. 383 (S.D.N.Y. 1951) ..................................................................... 15

*Marisol A. v. Giuliani,*
    No. 95 CIV. 10533(RJW), 1998 WL 132810 (S.D.N.Y. Mar. 23, 1998) ............ 8, 9, 10

*Molinari v. N.Y. Triborough Bridge & Tunnel Auth.,*
    838 F. Supp. 718 (E.D.N.Y. 1993) ............................................................... 12

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975) ...................................................................................... 12

*Noel v. Bank of N.Y. Mellon,*
    No. 11 MC 216, 2011 WL 3279076 (S.D.N.Y. July 27, 2011) ...................... 11

*Nova Biomedical Corp. v. i-State Corp.,*
    182 F.R.D. 419 (S.D.N.Y. 1998) ............................................................ 8, 17

*Nw. Airlines, Inc. v. Cnty. of Kent,*
    510 U.S. 355 (1994) ...................................................................................... 12

*Sanofi-Synthelabo v. Apotex, Inc.,*
    No. 02-Civ-2255, 2009 WL 5247497 (S.D.N.Y. Dec. 30, 2009) ................... 13

*Scott v. Dime Sav. Bank,*
    No. 88 Civ 5495, 1989 WL 140286 (S.D.N.Y. Nov. 16, 1989) ..................... 14

*Thomas v. Int'l Bus. Machs.,*
    48 F.3d 478 (10th Cir. 1995) ......................................................................... 15

*Tigue v. U.S. Dep't of Justice,*
    312 F.3d 70 (2d Cir. 2002) ............................................................................ 12

*Treppel v. Biovail Corp.,*
    No. 03 Civ. 3002, 2006 WL 468314 (S.D.N.Y. Feb. 28, 2006) ................... 16

*Universal Calvary Church v. City of New York,*
    No. 96 Civ. 4606(RPP), 1999 WL 350852 (S.D.N.Y. June 2, 1999) ............. 8

*Williams v. McCausland,*
    Nos. 90 Civ 7563 (RWS), 91 Civ. 7281 (RWS), 1994 WL 62937 (S.D.N.Y. Feb. 22, 1994) ........ 9

## TABLE OF AUTHORITIES

**Page**

*Wirtz v. Local 30, Int'l Union of Operating Eng'rs,*
  34 F.R.D. 13 (S.D.N.Y. 1963) ................................................................. 10

*WM High Yield v. O'Hanlon,*
  460 F. Supp. 2d 891 (S.D. Ind. 2006) ...................................................... 13

## Statutes & Rules

Fed. R. Civ. P. 26 .......................................................................... passim

Fed. R. Civ. P. 30 .............................................................................. 13

Fed. R. Civ. P. 45 .................................................................. 1, 3, 7, 13

## PRELIMINARY STATEMENT

Port Authority Chairman David Samson and Commissioner Jeffrey Lynford respectfully submit this motion to quash the subpoenas ("Subpoenas") that Plaintiffs Automobile Club of New York, Inc. and AAA New Jersey, Inc. (collectively, "AAA" or "Plaintiffs") served on them seeking unspecified deposition testimony. *See* Fed. R. Civ. P. 45(c)(3)(a). The Subpoenas should be quashed for multiple reasons. First and foremost, they fail to identify any testimony topic on which Plaintiffs could conceivably obtain non-duplicative, relevant information from these deponents. Indeed, they fail to identify any testimony topics whatsoever. Moreover, there is no reason to require these two high-level government officials to be diverted from performing important public duties to have to be deposed here, especially since the Port Authority's two most knowledgeable, high-level fiscal officers have been made available for the Plaintiffs to depose, one has already been deposed, and her testimony simply confirmed that Plaintiffs' case has no merit. The subpoenas go far beyond the parameters previously defined by the Court, and are nothing more than an attempt to turn this litigation into a spectacle, rather than a legal matter focused on the relevant issues.

Of course, Plaintiffs endgame in serving these Subpoenas on Chairman Samson and Commissioner Lynford, who voluntarily serve as appointed members of the Board of Commissioners of the Port Authority of New York and New Jersey ("Port Authority"), is to change the conversation and try to make this case about deliberative process and subjective intent, instead of objective reality. Despite the fact that the Court has long-ordered that the scope of discovery in this litigation focus on the revenues and expenses of the Port Authority's Interstate Transportation Network (the "ITN"), Plaintiffs seek to impermissibly delve into the subjective intent of these individual Port Authority Commissioners involved in the process of adopting the toll and fare increase—information which is plainly irrelevant to AAA's claims in this litigation and threatens to impinge upon the Port Authority's deliberative process and chill decision-makers' ability to have the

1

kind of frank exchanges ordinarily protected from disclosure.[1] As the Court explained in limiting the scope of discovery, the only relevant issue in deciding whether the toll increases are "just and reasonable" is to determine whether the ITN revenue from the toll increases substantially exceeds the amount needed to cover ITN-related expenditures. Tr. at 24 ("I mean it would seem to me the comparison is income versus cost here."); *id.* at 49 ("If the toll revenue is equal or less than the [ITN] expenses . . . it really doesn't matter how the World Trade Center is being funded."). These two Commissioners cannot provide unique information about the particulars of the Port Authority's actual ITN revenues and expenditures. Hence, Plaintiffs simply have no basis for deposing them.

It is well established that AAA's Highway Act and dormant Commerce Clause claims turn on an objective determination of whether the financial picture provided by the Port Authority demonstrates that the toll revenues are being used to fund the ITN, and that the toll increases raise no more money than is necessary for that purpose. The Port Authority has also provided, and will continue to provide, discovery on this pertinent issue—not only in documentary evidence, but also through the deposition testimony of the two key Port Authority personnel with considerable knowledge of the Port Authority's finances that have been noticed in this litigation: Chief Financial Officer, Michael Fabiano, and Deputy Director of Management and Budget, Rosemary Chiricolo. Indeed, just last week during her nearly seven-hour deposition, Ms. Chiricolo was able to extensively educate AAA regarding the Port Authority's financials relating to the ITN, including the critical fact

---

[1]     The Court recently clarified in its Opinion and Order dated October 9, 2012 ("October 9 Order"), that the scope of its May 7, 2012 Order was not limited purely to "raw financial data" relating to the revenues and expenses of the ITN, and that, subject to the deliberative process privilege and any other objections the Port Authority may raise, discovery concerning the reasons for the toll increase was not precluded. The Port Authority has already produced numerous documents relating to the reasons for the toll increase (including board meeting transcripts, board minutes, presentations and memoranda provided to the board regarding the need for the toll increases, public hearing reports, public hearing transcripts, and video of the public board meetings), and it will continue to produce responsive, non-privileged documents in accordance with the Court's guidance. The AAA's intent in serving the Subpoenas here, however, is to go well beyond the Court's orders and seek information not merely about the reasons for the toll increase, but rather regarding the Commissioners' decision-making process, which are not only plainly irrelevant to its claims but an impermissible area of inquiry.

that the ITN ran a significant deficit before the toll increase, and has and will continue to run a deficit following the toll increase—and Mr. Fabiano is scheduled to be deposed shortly, on October 24, who will provide similar testimony.

Moreover, independent, third parties have recently issued public reports detailing the Port Authority's ITN finances, with Navigant Consulting, a leading financial advisory firm that has been engaged in a year-long audit of the Port Authority, concluding that the toll increases were "vital to fund Port Authority infrastructure projects"; "are necessary to meet the funding requirements of the Port Authority's Preliminary 2011–2020 Capital Plan," and that the capital plan itself is necessary to maintain the Port Authority's "State-of-Good-Repair."[2]  Yet despite these depositions and discovery, AAA has refused to withdraw the Subpoenas for these two high-ranking governmental officials whose knowledge relevant to the scope of ordered discovery is plainly narrow and necessarily duplicative of the detailed information Port Authority employees have and will continue to provide.

Given Plaintiffs' insistence in pursuing these Subpoenas despite the clear duplicity and irrelevance of any testimony from the recipients, the Subpoenas constitute an abuse of discovery by Plaintiffs and a transparent attempt to harass the Commissioners and the Port Authority by probing internal and non-public Port Authority information.  For all the reasons stated herein, Chairman Samson and Commissioner Lynford respectfully request that this Court quash the Subpoenas under Federal Rule of Civil Procedure 45(c), or in the alternative, issue a protective order under Rule 26(c)(3) preventing the unnecessary and irrelevant testimony AAA seeks.

---

[2]   *See* Navigant Phase II Report to the Special Committee of the Port Authority of New York and New Jersey, at 6, *available at* http://www.panynj.gov/corporate-information/pdf/navigant-phase-2-and-rothschild-reports.pdf.

## BACKGROUND AND PROCEDURAL HISTORY

### A.    Chairman Samson and Commissioner Lynford

Chairman Samson is a Partner and founding member of the law firm Wolff & Samson.[3]  In addition to his full-time legal practice, Chairman Samson volunteers his time as a member of the Port Authority's Board of Commissioners.  He was nominated to that position by Governor Chris Christie, confirmed by the New Jersey State Senate on January 25, 2011, and elected as the agency's Chairman on February 3, 2011.  Commissioner Lynford is the co-founder of the Wellsford group of public and private real estate companies and is currently a Co-Managing Member of Wellsford Strategic Partners LLC.  *Id.*  In addition to his full-time management responsibilities, Commissioner Lynford also volunteers his time as a member of the Board of Commissioners.  He was appointed to that position in June 2011 by Governor Andrew Cuomo.  Neither Chairman Samson nor Commissioner Lynford are employees of the Port Authority or compensated for their service as Commissioners.

### B.    Procedural History

On September 18, 2011, the Port Authority implemented an increase in ITN tolls.  Compl. ¶ 2.  As the AAA has repeatedly—and unsuccessfully—done in response to past toll increases, it sued the Port Authority in an attempt to enjoin these toll increases on September 27, 2011.[4]  *See generally* Compl.  AAA's complaint alleges the toll increases were not "just and reasonable" under the dormant Commerce Clause and the Federal-Aid Highway Act of 1987 (the "Highway Act").

---

[3]    *See* Board of Commissioners, Port Authority, *available at* http://www.panynj.gov/corporate-information/board-commissioners.html.

[4]    *See, e.g., Auto. Club of N.Y., Inc. v. Cox*, 592 F.2d 658 (2d Cir. 1979) (affirming decision upholding the Federal Highway Administrator's approval of the Port Authority's toll increase as "just and reasonable"); *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, 444 F. Supp. 706 (S.D.N.Y. 1989) (dismissing action and rejecting AAA argument that toll increase was not "just and reasonable" because of inclusion of the PATH system into calculation), *aff'd*, 887 F.2d 417 (2d Cir. 1989), *cert. denied*, 495 U.S. 930 (1990) .

Compl. ¶ 2. In particular, AAA claims the toll increases are impermissibly earmarked to fund the World Trade Center construction. *Id.*

Judge Holwell denied AAA's motion for a preliminary injunction, holding it had failed to show irreparable injury or a likelihood of success. Mem. Op. and Order, Feb. 6, 2012 (the "Feb. 6 Order") at 6, 13. Judge Holwell stated that the Port Authority financial analyses "strongly suggest[ed] that no toll increases are, or will be, used for the World Trade Center." *Id.* at 9. The Court went on to note:

> . . . [a]lthough AAA was given the opportunity by this Court in connection with its motion to take discovery and present an alternative financial picture for the Port Authority, AAA has failed to do so. Even at oral argument, AAA continued to rely on a few comments made in Port Authority press statements and at the August 19, 2011 Board of Commissioners meeting to counter statements presented by the Port Authority in affidavits. While the comments identified by AAA mention the World Trade Center site and its escalating costs, they frequently also mention repairs within the ITN and nowhere state affirmatively that the toll increase will subsidize non-ITN activity. Likewise, although AAA provides the Court with the Port Authority's financial statements for 2010, AAA fails to show how these past statements contradict the Port Authority's financial figures for the coming years . . . .
>
> For these reasons, the AAA has failed to demonstrate a likelihood of success on the merits of its Commerce Clause claim, let alone a clear or substantial likelihood of success.

*Id.* The Court then converted the Port Authority's motion to one for summary judgment and reserved judgment on the converted summary judgment motion pending "appropriate discovery" needed to litigate the converted summary judgment motion. *Id.*

Subsequently, at a discovery conference before this Court, the parties discussed at length the permissible scope of AAA's discovery requests, which sought to obtain information concerning toll revenues and the use of toll proceeds—including the sources of all funding for the World Trade Center. This Court rejected AAA's requested scope of discovery, holding that it was substantially overbroad. As the Court explained, "[i]f the toll revenue is equal or less than the [Interstate Transportation Network ("ITN")] expenses," then the tolls are not excessive and "it really doesn't

matter how the World Trade Center is being funded." May 4, 2012 Tr. at 49.  Thus, the only relevant

issue in determining whether the toll increases are "just and reasonable" is whether the ITN revenue

from the toll increases exceeds the amount needed to cover ITN expenses.  *Id.* at 24.  The Court

therefore issued an order (the "May 7 Order") stating that "the scope of discovery is limited to [ITN]

revenues and expenses for the years 2007 forward."  May 7 Order, at 1.

     Despite AAA's knowledge of the Commissioners' status and lack of unique knowledge on

the relevant issues regarding whether the ITN revenues from the toll increase will exceed the amount

needed to cover ITN expenses, AAA has repeatedly signaled its intention to depose Commissioners

Samson and Lynford on the inappropriate subject of the Commissioners' beliefs and motivations in

approving the toll increase.  Indeed, AAA filed a "motion to compel" seeking to reopen the scope of

discovery and the scope of questioning that could occur at depositions on a variety of speculative

topics, including the uses of the Port Authority's reserve funds for the funding of the World Trade

Center, the revenues and expenses of the ITN stretching back to 2001, and the subjective intent of the

decision-making process.  Dkt. # 57–61.

     The Court recently ruled on this motion (*see* October 9 Order) and denied AAA's motion.

The Court also further clarified its May 7 Order regarding the permissible scope of discovery and

noted that "subject to the deliberative process privilege and any other objections defendant may raise,

the May 7 Order does not preclude discovery concerning the reasons for the toll increases."  October

9 Order, at 17.  The Port Authority has already produced numerous documents relating to the reasons

for the toll increase, including relevant board minutes and transcripts, presentations and memoranda

provided to the board regarding the need for the toll increases, public hearing reports, public hearing

transcripts, and video of the public board meetings.  And while the Port Authority will continue to

provide discovery regarding the reasons for the toll increase in accordance with the Court's Orders,

AAA admitted to Port Authority counsel that AAA wanted to take the Commissioners' depositions to delve into their subjective intent—what was "in their minds"—when they deliberated on whether to approve the toll increase. Declaration of Alexander Southwell dated October 10, 2012 ("Southwell Decl."), ¶ 2. This line of questioning is plainly inappropriate.

Indeed, the Port Authority has long made clear to AAA that the persons most knowledgeable regarding the facts underlying the Plaintiffs' claims (including the plain reason—as independently confirmed by Navigant Consulting—for the toll increase that the ITN was facing a massive deficit and would not be able to undertake needed capital expenditures to maintain its bridges and tunnels) were Chief Financial Officer Fabiano and Deputy Director of Budget and Management Chiricolo, AAA nonetheless issued deposition subpoenas to Commissioners Samson and Lynford on September 17, 2012. On October 1, 2012, counsel for Commissioners Samson and Lynford sent a letter to counsel for AAA, informing AAA that they objected to the Subpoenas as unduly burdensome. Following Ms. Chiricolo's deposition, Port Authority counsel requested AAA withdraw the Subpoenas as duplicative and unwarranted in light of the information developed and explored in Ms. Chiricolo's deposition. AAA refused to voluntarily withdraw the Subpoenas, and, as a result, Commissioners Samson and Lynford were forced to seek the intervention and protection of this Court from undue burden and harassment. Southwell Decl., ¶ 3.

## ARGUMENT

### A.    AAA's Subpoenas Impose An Impermissible Undue Burden on the Commissioners under the Applicable Standard

This Court "must quash or modify a subpoena that subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv); *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003) (It is well-settled that "judges may prevent [a] proposed deposition when the facts and

circumstances are such that it creates an inappropriate burden or hardship."). Determinations of issues of "undue burden" are committed to the discretion of the trial court. *Id.* at 68–70.

To determine whether a subpoena imposes an undue burden, courts evaluate the: (i) relevance of the sought-after evidence, (ii) issuing party's need for the evidence, (iii) breadth of the request, (iv) time period covered by the request, (v) adequacy of description of the evidence sought, and (vi) burden imposed. *In re Gushlak*, No. 11-MC-218, 2011 WL 3651268, *6 (E.D.N.Y. Aug. 17, 2011) (citing *Nova Biomedical Corp. v. i-State Corp.*, 182 F.R.D. 419, 422–23 (S.D.N.Y. 1998)). "[W]here, as here, discovery is sought from a non-party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden . . . on the non-party." *Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911(HB)(HBP), 2004 WL 719185, *1 (S.D.N.Y. April 01, 2004).

**B.      AAA Has Utterly Failed To Establish That The Depositions of These High-Ranking Government Officials Are In Any Way Necessary or Appropriate**

The Subpoenas issued by AAA impermissibly target high-level government officials without articulating a single permissible basis as to why such depositions are needed. Federal courts subject requests to depose high-ranking government officials to a heightened standard of review. *Marisol A. v. Giuliani ("Marisol I")*, No. 95 CIV. 10533(RJW), 1998 WL 132810, at *2 (S.D.N.Y. Mar. 23, 1998) ("While granting a protective order and quashing a deposition is the exception rather than the rule, the burden a deposition would place on a high ranking government official must be given special scrutiny."). This heightened standard applies to not only national government officials, but also those at the state and local levels. *See, e.g.*, *United States v. Merhige*, 487 F.2d 25, 29 (4th Cir. 1974) (granting writs of mandamus to vacate ordered depositions of members of the U.S. Board of Parole); *Bey v. City of New York*, No. 99 Civ. 3873(LMM)(RLE), 2007 WL 3010023 (S.D.N.Y. Oct. 15, 2007) (issuing protective order to preclude deposition of the former commissioner of the NYC

Department of Corrections); *Universal Calvary Church v. City of New York*, No. 96 Civ. 4606(RPP), 1999 WL 350852 (S.D.N.Y. June 2, 1999) (denying request to depose N.Y.C. Mayor Giuliani and N.Y.P.D. commissioners Bratton and Safir); *Marisol A. v. Giuliani ("Marisol II")*, No. 95 Civ. 10533(RJW), 1998 WL 158948, at *3 (S.D.N.Y. Apr.1, 1998) (barring deposition of N.Y. Governor Pataki).

Specifically, the heightened standard dictates that "high ranking government officials are not subject to depositions" absent a showing by the party seeking the deposition that: "(1) the deposition is necessary in order to obtain relevant information that cannot be obtained from any other source and (2) the deposition would not significantly interfere with the ability of the official to perform his governmental duties."[5] *Marisol I*, 1998 WL 132810, at *2–*3 (citations omitted); *Williams v. McCausland*, Nos. 90 Civ. 7563 (RWS), 91 Civ. 7281 (RWS), 1994 WL 62937, at *3 (S.D.N.Y. Feb. 22, 1994) (same). AAA has utterly failed to meet this burden.

"[W]hen applying the first prong, courts only permit the deposition of a high ranking government official if he has unique personal knowledge that cannot be obtained elsewhere." *Marisol A.*, 1998 WL 132810, at *2; *L.D. Leasing Corp.*, 1992 WL 373732, at *2 (same). Here, AAA has not articulated a single fact showing that Commissioners Samson and Lynford possess any unique knowledge as to the only information relevant to this litigation. And they clearly do not as to the only permitted area of discovery at issue here: the revenues and costs of the ITN. The information relevant pursuant to the Court's May 7 Order is readily available to Plaintiffs through the materials publicly available[6] and that have been produced in discovery, as well as through the

---

[5]   "The purpose of this rule is not only to leave officials free to conduct government business, but also to protect the mental processes of executive and administrative officers in order promote open channels of communication within government." *L.D. Leasing Corp., Inc. v. Crimaldi*, No. 91-CV-2430(EHN), 1992 WL 373732 (E.D.N.Y. Dec. 1, 1992) (granting protective order as to deposition of N.Y.C. Mayor Dinkins).

[6]   For example, two leading consulting and financial advisory firms, Navigant Consulting, Inc., and Rothschild Inc., were engaged last year by the Port Authority to undertake a comprehensive review and audit of the entire

depositions that the Port Authority has already agreed to of Rosemary Chiricolo, Deputy Director

Management and Budget and Michael Fabiano, Chief Financial Officer, who have extensive

knowledge on the subject matters at issue in this litigation.

Second, in weighing the concerns of those seeking depositions of government officials,

courts must place 'reasonable limits' so as to conserve the time and energies of public officials and

prevent the disruption of the primary functions of the government." *Marisol I*, 1998 WL 132810, at

*3 (quoting *Cmty. Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 96 F.R.D. 619, 621 (D.D.C.

1983)). Here, Commissioners Samson and Lynford not only have separate full-time jobs, but have

chosen to also volunteer their time and resources as public servants appointed to serve as

Commissioners of the Port Authority. As such, they have heightened demands on their time and are

entitled to protection from unwarranted, time-wasting discovery such as that sought by AAA. *Wirtz*

*v. Local 30, Int'l Union of Operating Eng'rs*, 34 F.R.D. 13, 14 (S.D.N.Y. 1963) ("[C]ommon sense

suggests that a member of the Cabinet and the administrative head of a large executive department

should not be called upon personally to give testimony by deposition, either in New York or

elsewhere, unless a clear showing is made that such a proceeding is essential to prevent prejudice or

injustice to the party who would require it.").

AAA cannot meet the standard necessary to depose Chairman Samson and Commissioner

Lynford and for this reason alone the Subpoenas must be quashed.

---

agency, covering its finances, operations, and ten-year capital plan. Those firms recently publicly issued their reports and Navigant's report, in particular, describes the needs of the ITN in detail and concludes, drawing on substantial independent financial analysis of the Port Authority's finances, that "the toll increases… are necessary to meet the funding requirements of the Port Authority's Preliminary 2011-2020 Capital Plan," and that the capital plan itself is necessary to maintain the Port Authority's "State-of-Good-Repair." *See* Navigant Phase II Report to the Special Committee of the Port Authority of New York and New Jersey, at 6, *available at* http://www.panynj.gov/corporate-information/pdf/navigant-phase-2-and-rothschild-reports.pdf. Indeed, Navigant concluded that the "proceeds of [toll] increases are vital to fund Port Authority infrastructure projects." *Id.* at 47. Navigant's report further established that the ITN operated at a significant deficit both before and after the toll increase—and that the ITN was projected to continue to run a deficit well into the future. *Id.* at 6.

**C.** **AAA's Subpoenas Do Not And Cannot Demonstrate That AAA Seeks Non-Privileged, Non-Duplicative Information Relevant To AAA's Claims**

The Subpoenas issued by AAA are also facially inadequate, because they fail to identify a single relevant, non-privileged, or unique topic or fact that AAA could elicit from the recipients of the Subpoenas. The Federal Rules of Civil Procedure require that discovery be relevant to the claims or defenses in a case. Fed. R. Civ. P. 26. This mandate applies equally to discovery sought from parties and non-parties alike. *See, e.g., Noel v. Bank of N.Y. Mellon*, No. 11 MC 216, 2011 WL 3279076 (S.D.N.Y. July 27, 2011). Further, "[t]he party seeking discovery bears the initial burden of showing relevance. *Id.* at *1.

AAA fails to carry its burden of demonstrating that it seeks relevant information unique to Commissioners Samson and Lynford. To the contrary, the Subpoenas identify *no* topics of testimony whatsoever. This is no accident. The AAA's previous statements to this Court expose AAA's true motive in seeking to depose Commissioners Samson and Lynford: to secure testimony on issues that extend well beyond the scope of relevant information expressly defined by this Court and delve impermissibly into generally privileged information. For example, at the May 4 discovery conference before this Court, AAA stated that it desired to depose the Commissioners, because "[t]hese were the 12 decision-makers who made the decision to increase the tolls [and] the knowledge they had at the time . . . would be relevant to whether that decision was just and reasonable and would also be, they would also be relevant on the issue of what is their understanding of how ITN revenues can be used, whether they have to be limited to expenditures for the ITN or whether that's a relevant consideration for them." May 4, 2012 Tr. at 62. AAA reiterated this point to Port Authority counsel in a meet-and-confer session wherein AAA expressly admitted that they wanted to take the Commissioners' depositions to delve into their subjective intent—their hearts and minds—in approving the toll increase. Southwell Decl., ¶ 2. The Commissioners' deliberative

process and subjective intent, however, is not only generally privileged, but irrelevant to the inquiry of whether the tolls were just and reasonable.[7]  In determining whether a toll increase is "just and reasonable," there is no reason for a court to consider anything beyond the objective measure of analyzing revenues and expenditures related to the toll increase—*i.e.* whether the ITN revenues with the toll increase exceed the ITN deficit (and they do not).  As courts have recognized in analogous contexts, "officials should be judged by what they decided[,] not for matters they considered before making up their minds." *Delaware v. U.S. Army Corp. of Eng'rs*, 722 F. Supp. 2d 535 (D. Del. 2010) (quoting *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 772–73 (D.C. Cir. 1978)).  Far from looking at a public decision-maker's deliberations and intent, the applicable jurisprudence under the Highway Act[8] and dormant Commerce Clause[9] applies an objective standard.  Consequently, regardless of Plaintiffs' desire to mine the Commissioners' deliberations, this information is simply irrelevant to and distracts from the mandated scope of discovery:  whether the ITN revenue from the toll increases exceeds the amount needed to cover ITN expenses. May 7 Order, at 1.[10]

---

[7]    Not only is the AAA's inquiry into the Commissioners' intent irrelevant, it also threatens key privileges rightly afforded such public officials, infringing on their deliberative process and threatening to chill the kind of frank exchanges ordinarily protected from disclosure. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975); *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002).  As outlined above, AAA's stated goal of probing the Commissioners' intent in these subpoenaed depositions raises the application of these privileges, and Commissioners Samson and Lynford respectfully reserve any objections they may have, including any objections based upon all available privileges, if they are ever deposed.

[8]    *Auto. Club of N.Y., Inc. v. Cox*, 592 F.2d at 667–99 (analyzing revenues and expenses relating to the toll increase and holding toll was "just and reasonable" because revenues used to support the Port Authority's ITN); *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, 706 F. Supp. at 284 (holding toll hike was "just and reasonable" because the calculated base rate that included PATH financials in the ITN was appropriate). *See also Molinari v. N.Y. Triborough Bridge & Tunnel Auth.*, 838 F. Supp. 718, 725 (E.D.N.Y. 1993) (holding toll hike "just and reasonable," because "if a bridge toll generates more revenue than necessary to provide a fair profit or rate of return, the toll may not be challenged successfully if it is used to support a single integrated transportation system in which the successful operation of the bridge is dependent in whole or part on the operation of the other related facilities.").

[9]    *Bridgeport & Port Jefferson Steamboat v. Bridgeport Port Auth.*, 567 F.3d 79 (2d Cir. 2009) (in a dormant Commerce Clause challenge of a fee levied on interstate passengers, the court assessed whether "revenue collected . . . substantially exceeded the amount of money spent by the [agency] for those activities that benefit[] the [] passengers"); *Nw. Airlines, Inc. v. Cnty. of Kent*, 510 U.S. 355 (1994) (same).

[10]   As discussed *infra* in Section D, even if AAA restricted its line of questioning to the actual reasons for the toll increase (which has been well documented) and not the deliberative process itself, the Port Authority executives

AAA's failure to meet its burden of relevance—and its pursuit of irrelevant information—warrants that the Subpoenas be quashed. *Sanofi-Synthelabo v. Apotex, Inc.*, No. 02-Civ-2255, 2009 WL 5247497 (S.D.N.Y. Dec. 30, 2009) (quashing subpoenas issued pursuant to Fed. R. Civ. P. 30(b)(6) and 45 based on relevance); *see Jones v. Hirschfeld*, 219 F.R.D. 71, 78 (S.D.N.Y. 2003) (In "the absence of any basis for believing [the proposed deponent] has non-privileged information regarding any relevant matter, [the proposed deponent] has demonstrated that it would constitute an 'undue burden' for him to be compelled to testify.").

**D.    AAA Should Exhaust Discovery From Knowledgeable Port Authority Employees Before Seeking Burdensome Discovery of Duplicative Information**

Even if Commissioners Samson and Lynford were not high-level government officials and possessed personal knowledge regarding relevant issues in this case, AAA should first be required to take the depositions of Port Authority employees that actually have knowledge relating to the scope of discovery ordered in this case: *i.e.* "the Interstate Transportation Network revenues and expenses for the years 2007 forward." May 7 Order.  Not only does Rule 45 protect subpoenaed witness from such burdensome and unnecessary discovery (*see, e.g.*, *WM High Yield v. O'Hanlon*, 460 F. Supp. 2d 891, 896 (S.D. Ind. 2006) (quashing subpoena where party seeking information failed to demonstrate that it had been unable to obtain the desired information from employees of the party to the underlying litigation)), but Rule 26 *requires* a court to limit the extent of discovery otherwise allowed where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

Here, the Plaintiffs have steadfastly refused to withdraw the subpoenas for the depositions of Chairman Samson and Commissioners Lynford, even though the Port Authority has provided

---

and employees with first-hand knowledge of the ITN's vital needs necessitating the toll increase should be deposed rather than the Commissioners here.

witnesses who possess significant knowledge and have ready access to relevant information on the issues about which the AAA's counsel may properly inquire. Indeed, the Port Authority's Deputy Director of Budget and Finance Rosemary Chiricolo has already provided in her lengthy deposition an exhaustive explanation of the ITN financials and the significant deficit the ITN is continuing to run after the toll incrase, and the Port Authority's Chief Financial Officer Michael Fabiano is scheduled to be deposed on October 24, 2012, to provide further comprehensive details (including details relating to the reasons for the toll increase). *See Scott v. Dime Sav. Bank*, No. 88 Civ. 5495, 1989 WL 140286, at *2 (S.D.N.Y. Nov. 16, 1989) (allowing bank to designate an official "most familiar with the facts" to testify). Yet AAA continues to demand the Commissioners' depositions even though these witnesses possess only a high-level understanding of the information relating to the ordered scope of discovery that is, at best, duplicative of Ms. Chiricolo's highly detailed testimony and additional testimony Mr. Fabiano can provide.

AAA's failure to seek relevant discovery from a knowledgeable party first is fatal to its attempt to depose the Commissioners here. *See Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002) (quashing subpoena that sought testimony duplicative of information already produced through discovery). For this separate and independent reason, the Subpoenas must be quashed.

**E.     Subpoenas Issued To Persons At The Apex of An Organization—As Here—Are Designed To Harass**

"Courts should not allow litigants to manipulate the federal judicial system's liberal deposition procedures to harass their adversaries." *Diesel Props S.R.L.*, 2008 WL 5099957, at *1 (citing *Armstrong Corp. v. Niagara Mohoawk Power Corp.*, 16 F.R.D. 389, 390–91 (S.D.N.Y. 1954); *accord Consol. Rail Corp. v. Primary Indus. Corp.*, No. 92 Civ. 4927, 92 Civ. 6313, 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993) (noting that "permitting unfettered discovery of

corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation"); *Arkwright Mutual Ins. Co. v. Nat'l Union Fire Ins. Co.*, No. 90 Civ. 7811, 1993 WL 34678, at *2 (S.D.N.Y. Feb. 4, 1993) (Likelihood of harassment and business disruption are factors to be considered in deciding whether to allow discovery of high-level executives). In particular, courts routinely deny unfettered depositions of an organization's apex officials. *See, e.g., M.A. Porazzi Co. v. Mormaclark*, 16 F.R.D. 383, 384 (S.D.N.Y. 1951); *Harris v. Computer Assocs. Int'l, Inc.*, 204 F.R.D. 44, 46–47 (E.D.N.Y. 2001) ("When a vice president can contribute nothing more than a lower level employee, good cause is shown not to take the deposition.").

The roles of Chairman Samson and Commissioner Lynford on the Board of Commissioners are readily analogous to that of apex officials in private companies. For instance, they are charged with the high-level governance of the Port Authority and are responsible to appoint the Port Authority's Executive Director.[11] As Chairman and Commissioner, they are entitled to the protections afforded apex officials. *See Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 482–84 (10th Cir. 1995) (affirming grant of protective order preventing the deposition of defendant's chairman); *Harris*, 204 F.R.D. at 46–47 (denying plaintiff's attempt to depose defendant's chairman); *Filetech, S.A. v. France Telecom, S.A.*, No. 95 Civ. 1848, 1999 WL 92517, at *2 (S.D.N.Y. Feb. 17, 1999) (staying deposition of defendant's chairman where other employees were available to furnish information necessary to resolve the inquiry at issue).

Recognizing the potential for abuse by overly aggressive litigants, courts have routinely held that a party may not depose high-level corporate executives and directors absent demonstrable evidence of the following: (i) that the apex official has personal knowledge of the case; (ii) that the apex official possesses unique knowledge that other lower-level employees do not have; and (iii) that

---

[11]   *See* Governance, Port Authority, available at http://www.panynj.gov/corporate-information/governance.html.

the plaintiff has exhausted less intrusive means of discovery to determine whether the apex official's

deposition is necessary. *See, e.g., Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, No. 07 Civ.

9580(HB), 2008 WL 5099957, at * 1 (S.D.N.Y. Dec. 3, 2008) (denying deposition of apex officials

absent a showing "they possess unique personal knowledge related to the relevant issues in the

case").[12]

AAA has already been provided Ms. Chiricolo's particularized testimony regarding the

ITN's financials of the ITN, including the critical fact at issue in this case establishing that even with

the toll increase, the ITN is and will continue to run a significant deficit.  Consequently, AAA cannot

articulate what relevant facts within the limited scope of discovery that they hope to obtain from

Commissioners Samson and Lynford or why they are unique sources of those unarticulated facts.

Yet despite its knowledge that the Subpoenas target high-level government officials with no unique

knowledge relevant to the "revenues and expenses" of the ITN, AAA has refused to withdraw the

Subpoenas—for the obvious reason that AAA wishes to try to delve into their deliberative process

regarding the reasoning for the toll increase.  Given these facts, there can be no doubt that the sole

purpose of these depositions is to harass Chairman Samson and Commissioner Lynford, as well as

defendant Port Authority, and as such, the Subpoenas must be quashed as a matter of law.

**F.      In the Alternative, The Court Should Issue A Protective Order To Prevent AAA's Baseless Subpoenas**

Federal Rule of Civil Procedure 26(c) also permits a court to "make any order which justice

requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

---

[12]   *See also Treppel v. Biovail Corp.*, No. 03 Civ. 3002, 2006 WL 468314, at *3 (S.D.N.Y. Feb. 28, 2006) (deposition of senior corporate officers denied because "plaintiff has not explained why the noticed individuals are believed to have personal knowledge of the underlying events, nor why that knowledge is believed to be unique," because plaintiff had "made no attempt to depose any lower level executives," and because document discovery was not complete); *Burns v. Bank of Am.*, No. 03 Civ.1685 RMB JCF, 2007 WL 1589437 (S.D.N.Y. June 4, 2007) (denying plaintiffs' motion to compel the deposition of Bank of America's General Counsel until plaintiff had conducted interviews of lower level employees possessing relevant information, and permitting reconsideration of such a deposition only upon a showing by plaintiffs of "a foundation for their belief that [the general counsel] possesses unique, non-duplicative knowledge of relevant facts").

expense, including . . . that the discovery not be had." *Blum v. Schlegel*, 150 F.R.D. 38, 41

(W.D.N.Y. 1993) (quoting *Howard v. Galesi*, 107 F.R.D. 348, 350 (S.D.N.Y. 1985)). Rule 26

further permits a court to limit "the frequency or extent of use of the discovery otherwise allowed" if

it determines, among other things, that "the discovery sought is unreasonably cumulative or

duplicative," or that "the burden or expense of the proposed discovery outweighs its likely benefit."

Fed. R. Civ. P. 26(b)(2)(C)(i), (iii); *Nova Biomedical*, 182 F.R.D. at 423.

 The Subpoenas at issue here seek unspecified deposition testimony from two high-ranking

public officials who are not Port Authority employees and who do not possess any non-duplicative,

relevant information relating to the "revenues and expenses" of the ITN. *See Bey v. City of New*

*York*, No. 99 Civ. 3873(LMM)(RLE), 2007 WL 3010023 (S.D.N.Y. Oct. 15, 2007) (issuing

protective order to preclude deposition of the former commissioner of the NYC Department of

Corrections); *L.D. Leasing Corp., Inc. v. Crimaldi*, No. 91-CV-2430(EHN), 1992 WL 373732

(E.D.N.Y. Dec. 1, 1992) (granting protective order as to deposition of N.Y.C. Mayor Dinkins).

AAA's motive in seeking the depositions of the Commissioners is clear:  the Subpoenas are an

impermissible attempt to do an end-run around the ordered scope of discovery and impermissibly

delve into the deliberative process and subjective intent of these Commissioners in adopting the toll

increase, despite the fact that this information is subject to privilege and has no relevance or legal

basis relating to AAA's claims here. *See, e.g., Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*,

706 F. Supp. 264 (S.D.N.Y. 1989), *aff'd*, 887 F.2d 417 (2d Cir. 1989), *cert. denied*, 495 U.S. 930

(1990) (finding toll hike was "just and reasonable" because the calculated base rate that included

PATH financials in the ITN was appropriate); *Bridgeport & Port Jefferson Steamboat v. Bridgeport*

*Port Auth.*, 567 F.3d 79, 84 (2d Cir. 2009) (analyzing whether the "revenue collected . . .

substantially exceeded the amount of money spent by the [agency] for those activities that benefit[]

the [] passengers.").

As such, the Court should issue a protective order as an alternative basis to prevent the

unnecessary and burdensome testimony sought through AAA's Subpoenas.  In the event that the Court

is inclined to permit these depositions to proceed at all, however, the Court should issue a protective

order strictly limiting the Commissioners' depositions testimony to only the Commissioners' non-

duplicative personal knowledge of the "revenues and expenses" of the ITN pursuant to the Court's

May 7 and October 9 Orders.[13]

## CONCLUSION

For the foregoing reasons, Chairman Samson and Commissioner Lynford respectfully request

that this Court quash the Subpoenas, or in the alternative, issue a protective order precluding any

testimony beyond the ordered scope of discovery relating to the expenses and revenues of the ITN.

Dated:   New York, New York
          October 10, 2012

GIBSON, DUNN & CRUTCHER LLP

By: *Randy Mastro*

Randy M. Mastro (RM-9492)
Debra Wong Yang (admitted *pro hac vice*)
Alexander H. Southwell (AHS-0997)
Nancy Hart (NH-1789)

200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Chairman David Samson and
Commissioner Jeffrey Lynford*

---

[13]   To the extent the Court permits the taking of limited testimony, AAA should be restricted to taking only the testimony of Chairman Samson, given his role as head of the Board of Commissioners, and should quash the subpoena of Commissioner Lynford, whose testimony would be unnecessarily duplicative.