```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

AUTOMOBILE CLUB OF NEW YORK,          :
INC., d/b/a "AAA New York,"
and AAA NORTH JERSEY, INC.,           :

                 Plaintiffs,   :      11 Civ. 6746 (RKE)(HBP)

    -against-                   :      OPINION
                                       AND ORDER
THE PORT AUTHORITY OF           :
NEW YORK AND NEW JERSEY,

                                :
                 Defendant.
                                :
----------------------------------X
```

          PITMAN, United States Magistrate Judge:


I.   Introduction


          Plaintiffs Automobile Club of New York, Inc., doing

business as "AAA New York," and AAA North Jersey, Inc. (collec-

tively, "AAA") claim that the privilege log submitted by defen-

dant the Port Authority of New York and New Jersey (the "Port

Authority") is deficient.  The Port Authority produced a privi-

lege log that identified categories of withheld documents, rather

than identifying each individual document withheld.  AAA does not

object to the Port Authority's use of a categorical privilege

log, but instead contends that eight of the categories do not

contain the substantive information required by Rule 26 of the

Federal Rules of Civil Procedure.  AAA seeks an order directing the Port Authority to amend its log to correct this deficiency.

For the following reasons, I conclude that the Port Authority's privilege log should be supplemented as detailed below.

II.  Facts

A.  Plaintiffs' Underlying Allegations

The facts and allegations in this case are fully set forth in the decision of the Honorable Richard J. Holwell, United States District Judge (retired), addressing plaintiffs' motion for a preliminary injunction and defendant's cross-motion to dismiss, Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J., 842 F. Supp. 2d 672 (S.D.N.Y. 2012), and can be briefly summarized.

AAA contends that certain toll increases within the Port Authority's Integrated Transportation Network ("ITN"),[1]

---

[1] The Interstate Transportation Network is comprised of "four bridges, the George Washington Bridge (including a bus station), the Bayonne Bridge, the Goethals Bridge, and the Outerbridge Crossing; two tunnels, the Lincoln Tunnel and the Holland Tunnel; the bus terminal at 40th Street and 8th Avenue in Manhattan; the Port Authority Bus Programs; and the PATH railroad system." Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J., 887 F.2d 417, 418 (2d Cir. 1989).

which took effect on September 18, 2011, were enacted for im-
proper purposes -- specifically, to fund real estate development
at the World Trade Center site, rather than to cover ITN capital
needs -- and violate the Commerce Clause of the United States
Constitution and the Surface Transportation and Uniform Reloca-
tion Assistance Act of 1987 (the "Highway Act"), 33 U.S.C. § 508
(Complaint ("Compl.")(Docket Item 1) ¶¶ 1, 34-45).  Plaintiffs
argue that under Bridgeport & Port Jefferson Steamboat Co. v.
Bridgeport Port Authority, 567 F.3d 79, 86 (2d Cir. 2009), such
toll increases violate the dormant Commerce Clause because they
do not bear a "functional relationship" to the ITN, and, thus, do
not represent a "fair approximation" of the use of ITN facilities
and are "excessive in relation to the benefits conferred" on toll
payers (Memorandum of Law in Support of Plaintiffs' Motion for a
Preliminary Injunction, dated September 26, 2011 (Docket Item
32)("Pls.' P.I.  Mem.") at 10).  Accordingly, AAA contends that
the tolls are not "just and reasonable" under the Highway Act,
and are, therefore, illegal because they were enacted to fund
projects that are not part of the ITN (Pls.' P.I. Mem. at 6-7,
citing Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J., 887
F.2d 417 (2d Cir. 1989)).  Plaintiffs sought a preliminary
injunction to reverse the toll increases, and continue to seek
declaratory as well as injunctive relief (Compl. ¶¶ 46-51).

Judge Holwell denied AAA's motion for a preliminary injunction and converted the Port Authority's cross-motion to dismiss into a motion for summary judgment, but reserved decision pending discovery.  Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J., supra, 842 F. Supp. 2d at 681.  Discovery in this action has been limited "to Interstate Transportation Network Revenues and expenses for the years 2007 forward" (Docket Item 41) and "the reasons for the toll increases" (Docket Item 69 at 16-17).

B.   The Instant Dispute

Pursuant to Fed.R.Civ.P. 26 and Local Civil Rule 26.2(c), the Port Authority provided plaintiffs with a privilege log that identified withheld documents on a categorical, rather than an individual, basis.  At issue here are eight categories of documents -- numbers 17, 18, 19, 20, 24, 25, 26 and 27 -- with respect to which the Port Authority has claimed the deliberative process privilege.

AAA claims that the Port Authority's privilege log is deficient with respect to these eight categories because it fails "to provide the substantive information required by Fed.R.Civ.P. 26(b)(5) and S.D.N.Y. Local Rule 26.2 in a comprehensible form" (Letter from Kevin P. Mulry, Esq., dated February 27, 2013

4

("Mulry Ltr.") at 2-3).  AAA does not object to the Port Author-
ity's use of a categorical log, but rather objects to the spe-
cific descriptions provided (Mulry Ltr. at 3).  AAA claims that
the log is deficient because (1) the log should contain more
detailed descriptions of the withheld documents; (2) the log does
not contain sufficient information for AAA to determine whether a
document is predecisional and (3) the term "Client" is defined so
broadly that it is meaningless (Mulry Ltr. at 3-4).

       The Port Authority contends that its log is suffi-
ciently detailed (Letter from Randy M. Mastro, Esq., dated March
4, 2013 ("Mastro Ltr.")).  In support of this contention, the
Port Authority points to the fact it provided AAA with additional
information about the documents withheld on privilege grounds,
including the total number of documents withheld in each
category, additional descriptions of the type and subject-matter
of documents withheld, year-by-year date ranges for certain
categories, a list of all Port Authority counsel appearing on the
privileged documents and clarification of the terms "Client" and
"Client's In-House Counsel" (Ex. E to Mastro Ltr.).

       I heard oral argument on AAA's objections to the
privilege log on March 6, 2013.  On March 11, 2013, the Port
Authority submitted a supplemental privilege log that incorpo-

rated the additional details it had previously provided to AAA in separate materials.

III.  Analysis

    A.  Applicable Law

        1.  Deliberative Process Privilege

        As explained below, the nature of the privilege asserted bears on the adequacy of the Port Authority's privilege log.  Accordingly, it will be helpful to start with a brief discussion of the deliberative process privilege -- the only privilege asserted with respect to the eight categories of documents in issue.

        The deliberative process privilege was comprehensively described by the Honorable Richard J. Sullivan, United States District Judge, in MacNamara v. City of New York, 249 F.R.D. 70, 77-78 (S.D.N.Y. 2008):

> "The deliberative process privilege is designed to promote the quality of agency decisions by preserving and encouraging candid discussion between officials. It is based on 'the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.'"  Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 356 (2d Cir. 2005) (quoting Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001)). An "inter- or intra-agency document" may be subject to

the privilege if it is both (1) "predecisional" and (2) "deliberative." La Raza, 411 F.3d at 356 (quoting Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999)) (additional internal citations omitted).

A document is predecisional "when it is prepared in order to assist an agency decisionmaker in arriving at his decision." Tigue v. United States Dep't of Justice, 312 F.3d 70, 80 (2d Cir. 2002). The Second Circuit has noted some factors to consider in determining whether a document is "predecisional," including whether the organization asserting the privilege can (1) "pinpoint the specific . . . decision to which the document correlates" and (2) "verify that the document precedes, in temporal sequence, the 'decision' to which it relates." Grand Cent. P'ship, 166 F.3d at 482 (quoting Providence Journal Co. v. United States Dep't of the Army, 981 F.2d 552, 557 (1st Cir. 1992)).

A document is deliberative when it is "actually . . . related to the process by which policies are formulated." Grand Cent. P'ship, 166 F.3d at 482 (citing Hopkins, 929 F.2d at 84) (additional citation and internal quotation marks omitted). In other words, "the privilege does not protect a document which is merely peripheral to actual policy formation; the record must bear on the formulation or exercise of policy-oriented judgment." Tigue, 312 F.3d at 80 (internal quotation marks and citation omitted). Thus, the privilege "focus[es] on documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" Grand Cent. P'ship, 166 F.3d at 482 (quoting Hopkins, 929 F.2d at 84-85) (additional internal quotation marks and citation omitted). In particular, it is well-settled that "[d]raft documents, by their very nature, are typically predecisional and deliberative. They reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation either by their authors or by superiors." Exxon Corp. v. Dep't of Energy, 585 F. Supp. 690, 698 (D.D.C. 1983) (internal quotation marks and citation omitted); see also Nat'l Council of La Raza v. Dep't of Justice, 339 F.

7

Supp. 2d 572, 573 (S.D.N.Y. 2004) ("Drafts and comments on documents are quintessentially predecisional and deliberative.").

Nevertheless, a document is not "deliberative" where it concerns "purely factual" information regarding, for example, investigative matters or factual observations.  See Grand Cent. P'ship, 166 F.3d at 482; Hopkins v. U.S. Dep't of Hous. and Urban Dev., 929 F.2d 81, 85 (2d Cir. 1991).  "Thus, factual findings and conclusions, as opposed to opinions and recommendations, are not protected."  E.B. v. New York City Bd. of Educ., 233 F.R.D. 289, 292 (E.D.N.Y. 2005) (internal quotation marks and citation omitted).

2.  Fed.R.Civ.P. 26
    and Local Civil Rule 26

Rule 26 of the Federal Rules of Civil Procedure provides that when a party withholds documents on the grounds of privilege, it must both "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed -- and do so in a manner that without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed.R.Civ.P. 26(b)(5)(A). In addition, Local Civil Rule 26.2 requires that a party asserting privilege in response to a document request provide:

> (i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other . . .

Local Civil Rule 26.2(a)(2)(A); see also United States v. Constr.
Prods Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996); S.E.C. v.
Beacon Hill Asset Mgmt. LLC, 231 F.R.D. 134, 144 (S.D.N.Y. 2004)
(Pitman, M.J.).

        Local Civil Rule 26.2 also authorizes the use of a
categorical privilege log and provides that "when asserting
privilege on the same basis with respect to multiple documents,
it is presumptively proper to provide the information required by
this rule by group or category."  Local Civil Rule 26.2(c).
Although the Local Civil Rule does not define what information
must be included in a categorical privilege log, Fed.R.Civ.P. 26
applies with the same force to a categorical log as it does to a
traditional log that lists each document individually.
Accordingly, a categorical privilege log is adequate if it
provides information about the nature of the withheld documents
sufficient to enable the receiving party to make an intelligent
determination about the validity of the assertion of the
privilege.  See In re Methyl Tertiary Butyl Ether (MTBE) Prods.
Liab. Litig., 274 F.R.D. 106, 112 (S.D.N.Y. 2011) (Scheindlin,
D.J.) ("The standard for testing the adequacy of the privilege
log is whether, as to each document, it sets forth specific facts
that, if credited, would suffice to establish each element of the
privilege or immunity that is claimed." (internal footnote and

quotation marks omitted)); <u>City of N.Y. v. Grp. Health, Inc.</u>, 06 Civ. 13122 (RJS)(RLE), 2008 WL 4547199 at *3 (S.D.N.Y. Oct. 10, 2008) (Ellis, M.J.) ("Litigants seeking to invoke the deliberative process privilege must, among other things, identify and describe the information or documents sought, and provide 'precise and certain' reasons for asserting confidentiality over the requested information." (internal citation omitted)); <u>Orbit One Commc'ns, Inc. v. Numerex Corp.</u>, 255 F.R.D. 98, 109 (S.D.N.Y. 2008) (Francis, M.J.) ("Lowenstein must justify its assertion of privilege with regard to each category, and the description of each category must provide sufficient information for Numerex to assess any potential objections to the assertions of attorney-client privilege.").

       Therefore, the adequacy of a privilege log -- whether categorical or document-by-document -- must be measured with respect to the privilege asserted.  As applied to the deliberative process privilege, this requires that the log contain sufficient information such that the reviewing party can make an intelligent determination as to whether the withheld documents are "predecisional" and "deliberative."  <u>See</u> <u>S.E.C. v. Collins & Aikman Corp.</u>, 256 F.R.D. 403, 416 (S.D.N.Y. 2009) (Scheindlin, D.J.).  Thus, a log of documents withheld on the basis of the deliberative process privilege should provide

10

various pieces of information, including, but not limited to, a
description of the decision to which the documents relate, the
date of the decision, the subject-matter of the documents in
issue, the nature of the opinions and analyses offered, the date
that documents were generated, the roles of the agency employees
who authored or received the withheld documents and the number of
employees among whom the documents were circulated.  These sort
of details, while not exhaustive, would provide the receiving
party with sufficient facts to assess whether the documents were
"related to the process by which policies are formulated."  Nat'l
Council of La Raza v. Dep't of Justice, supra, 411 F.3d at 356.

        Finally, an assessment of a categorical privilege log
should also include a determination of whether a categorical log
is appropriate in the particular case before the court.  Even
though Local Civil Rule 26.2 arguably permits categorical logs in
all cases, the rule should be read in light of its purpose, which
is to reduce the burden of individually identifying a large
volume of documents.  The Local Civil Rule's Committee Notes
suggest that the rationale for the rule is the exponential growth
in the size of document productions that have resulted from the
use of computers, emails and similar devices and applications
that generate electronically stored information:  "[w]ith the
advent of electronic discovery and the proliferation of e-mails

and e-mail chains, traditional document-by-document privilege

logs may be extremely expensive to prepare, and not really

informative to opposing counsel and the Court."  Committee Note

to Local Civil Rule 26.2.  See also Orbit One Commc'ns, Inc. v.

Numerex Corp., supra, 255 F.R.D. at 109 (permitting party to

submit categorical log in order to "lessen the burden posed by

reviewing and recording a large quantity of protected

communications"); Fifty-Six Hope Road Music, Ltd. v. Mayah

Collections, Inc., 05 Civ. 1059, 2007 WL 1726558 at *8 (D. Nev.

June 11, 2007) (permitting categorical privilege log where emails

numbered in hundreds or thousands and "requiring Plaintiffs to

provide a privilege log for each privileged email communication

would be unduly burdensome and not serve the legitimate purposes

of discovery under Fed.R.Civ.Pro. 26."); In re Imperial Corp. of

America, 174 F.R.D. 475, 478-79 (S.D. Cal. 1997) (authorizing

categorical privilege log where document-by-document log would

have been "unreasonable and unduly burdensome" given that there

were thousands if not millions of documents that were subject to

attorney-client privilege or work-product protection).  Although

there is a strong justification for a categorical log when

thousands of documents have been withheld, there is some

threshold below which the marginal utility of a categorical log

is immaterial.  For example, where the volume of withheld

documents (in hardcopy format) could fit in a number 10 envelope,
it would be difficult to justify a categorical log.  Thus, the
justification for a categorical log of withheld documents is
directly proportional to the number of documents withheld.

      With these principles in mind, I now address AAA's
objections to the Port Authority's privilege log.

B.  <u>Application</u>

      The Port Authority has provided a privilege log for the
eight categories of withheld documents at issue that lists for
each category the "Date," "Doc Type," "Authors," "Recipients,"
"Privilege Description" and "Privilege Reason."  The log also
groups these categories under specific decisions.  An appendix
defines certain terms used in the log, including "Client."  AAA
only challenges the adequacy of the privilege log with respect to
"Privilege Description," "Date," "Authors" and "Recipients."  I
conclude that certain aspects of the log provide sufficient
detail, while other aspects are inadequate and need to be
supplemented.

1.   Adequacy of
     "Privilege Description"

I conclude that the "Privilege Descriptions" that the
Port Authority has provided for the eight categories of withheld
documents in issue are adequate.

I note at the outset that the label the Port Authority
has used for this class of information is inaccurate.  Under the
column marked "Privilege Description," the Port Authority does
not describe any privilege, but rather has provided the
information about the documents that, in the Port Authority's
view, supports the assertion of the privilege.

Category 17, includes "Communications, including e-
mails and/or letters" related to "Advice Regarding the 2011
Proposed Toll and Fare Increases" from October 18, 2010 to August
19, 2011.  The Port Authority describes these documents as:

> Non-public communications, including documents
> reflecting communications, reflecting internal
> deliberations and/or discussing, reflecting, or in
> furtherance of recommendations, draft documents,
> proposals, suggestions, and/or other subjective
> documents which reflect the personal opinions of the
> writer rather than the policy of the agency, regarding
> the 2011 proposed toll and fare increases, including
> whether to raise the tolls and fares; the size of the
> toll and fare increases; and whether to implement an
> objective, financial-model based mechanism for future
> toll and fare increases.

14

Category 18 utilizes this same description for "Privileged Memoranda, White Paper reports drafted to help readers understand an issue facing the Port Authority, non-final versions of documents of various types that are covered by one of the claimed privileges, and/or other privileged documents that are not communications, memoranda or white papers."

These descriptions provide an adequate basis for AAA to evaluate the Port Authority's assertion of the deliberative process privilege.  The descriptions state that these documents reflected the personal opinions of their authors, rather than the stated policy of the agency.  Moreover, the descriptions go beyond a generic recitation of the elements of the deliberative process privilege.  They specifically identify the decision -- the 2011 proposed toll and fare increases -- and provide an overview of the opinions, options and recommendations that the Port Authority evaluated.  This information is relevant in assessing whether the documents were created as part of the process by which the Port Authority makes decisions.  While I express no opinion on whether the Port Authority has properly asserted the deliberative process privilege, I do find that the description of the documents' contents is sufficiently detailed.

The descriptions for the remaining challenged categories provide equivalent information.  For example, category

15

24 asserts privilege with respect to "Advice Regarding ITN

Capital Planning" and encompasses "Communications, including

emails" from October 18, 2010 to June 5, 2012.  It describes the

contents of these documents as follows:

> Non-public communications, including documents
> reflecting communications, reflecting internal
> deliberations and/or discussing, reflecting, or in
> furtherance of recommendations, draft documents,
> proposals, suggestions, and/or other subjective
> documents which reflect the personal opinions of the
> writer rather than the policy of the agency, regarding
> capital planning and/or expenditures by the Port
> Authority for the ITN, including which projects to
> include on the capital plan and the order of
> prioritization (deliberations ongoing during the
> relevant time period); formalization of the Port
> Authority's policies regarding transparency initiatives
> in relation to capital planning (approximate decision
> date: Jun. 5, 2012; documents generated Apr. 13, 2012 -
> June 5, 2012); deliberations related to the drafting
> and approval of the Port Authority's 2011 Budget
> (approximate decision date: Dec. 7, 2010; documents
> generated Sep. 22, 2010 - Oct. 27, 2010); deliberations
> related to the drafting and approval of the Port
> Authority's Preliminary 2012 Budget (approximate
> decision date: Dec. 8, 2011; documents generated Apr.
> 1, 2011 - Dec. 7, 2011); and approval or cancellation
> of capital expenditures projected for 2011, and/or
> determinations regarding whether to issue debt to fund
> said capital expenditures (deliberations ongoing during
> relevant time period).

Category 25 utilizes a virtually identical description, but

applies to "Privileged memoranda, White Paper Reports drafted to

help readers understand an issue facing the Port Authority, non-

final versions of documents of various types that are covered by

16

one of the claimed privileges, and/or other documents that are not communications, memoranda, or white papers."

As with Categories 17 and 18 above, the description here is adequate.  It does more than offer a conclusory assertion that the privilege applies.  It describes the specific decision at issue as well as the related "sub-decisions," the various factors and proposals that informed the decision-making process and the date ranges of the documents included within the category.  This description provides enough specificity for AAA to evaluate how and whether the withheld documents relate to the process by which the decision was formulated.

I have carefully reviewed the remaining challenged categories -- numbers 19, 20, 26 and 27 -- and conclude that the privilege descriptions are similarly adequate.  As with the categories discussed above, the Port Authority identified the particular decision at issue, the subject-matter of proposals and options considered and the date ranges within which the documents were created.  This information provides more than a simple recitation of the elements of the privilege and serves as an adequate basis for AAA to make an intelligent determination about the validity of the Port Authority's assertion of the deliberative process privilege.

Accordingly, no further supplementation of the "Privilege Description" is required for the eight challenged categories.

2.   Adequacy of "Date" Information

Next, AAA claims that the date ranges for the withheld documents do not provide adequate information to determine when a decision was made or when the documents were created.  I conclude the date information provided by the Port Authority is sufficient.

With respect to categories 17 and 18, the parties agreed at oral argument that the date ranges provided for these documents all predate the relevant decision.  Accordingly, no further supplementation is warranted with respect to these categories.

With respect to the remaining challenged categories, the Port Authority has provided an overarching date range for each category and provided more specific date ranges for groups of documents encompassed within the particular category.  In providing the dates that the documents within the categories were generated, the Port Authority has given AAA enough detail to assess whether these documents are "predecisional," i.e., whether they predate the relevant decision.  I conclude, therefore, that

this provides AAA with sufficient specificity to determine whether to challenge the assertion of the privilege.

Accordingly, no further supplementation of the dates in categories 19, 20, 24, 25, 26, 27 and 28 is necessary.

      3.   Adequacy of "Client" as Used
            in "Authors" and "Recipients"

Finally, AAA challenges the manner in which the Port Authority has defined "Client" and used it to describe the "Authors" and "Recipients" of the withheld documents.  I conclude that the definition is inadequate because it is so broad that it ceases to be meaningful.[2]

As defined by the Port Authority, "[t]he term 'Client' means and refers to the Port Authority, its employees, commissioners, and/or individuals at the New York or New Jersey governors' offices in the course of their duties to oversee the Port Authority."  This definition essentially sweeps in all employees of the Port Authority, without distinguishing the role that a particular author or recipient of a withheld document

---

[2]The Port Authority also uses the term "Client's In-House Counsel" to describe "Authors" and "Recipients."  This term is defined as "attorneys employed by the Port Authority, including" twenty-eight specifically identified attorneys.  AAA, however, does not object to the manner in which this term has been defined or used on the privilege log.

played at the Port Authority.  An author or recipient's role is
relevant because it is more likely that a relatively senior-level
employee, as opposed to a more junior staffer, would be offering
opinions and analyses to assist the agency official responsible
for the formulation of significant public policy -- the very
process that the privilege protects.  See, e.g., In re Methyl
Tertiary Butyl Ether (MTBE) Products Liab. Litig., supra, 643 F.
Supp. 2d at 443 (noting that "a high-level agency official is
more likely to be involved in the decisionmaking process");
Otterson v. Nat'l R.R. Passenger Corp., 228 F.R.D. 205, 208
(S.D.N.Y. 2005) (Kaplan, D.J.) ("[T]he deliberative process
privilege applies only 'in the context of communications designed
to directly contribute to important public policy.'" (internal
citation omitted)); Kaufman v. City of New York, 98 Civ. 2648
(MJL)(KNF), 1999 WL 239698 at *4 (S.D.N.Y. Apr. 22, 1999) (Fox,
M.J.) ("[R]outine operating decisions are not transformed into
the high-level policy determinations that the governmental
deliberative process privilege seeks to protect simply because
the routine decisions are made at government agencies."); see
also Grand Cent. P'ship v. Cuomo, supra, 166 F.3d at 482 (the
deliberative process privilege does not protect documents that
are "merely peripheral to actual policy formulation").  A blanket
representation that "Client" includes all employees of the Port

Authority does not reveal whether the authors and recipients would have been in a position to have been involved in the decision-making process surrounding high-level policy determinations.[3]  Without some specificity as to where the "Authors" and "Recipients" fall on the Port Authority's hierarchy, AAA is unable to assess fully the assertion of the privilege.

Moreover, in assessing the applicability of the deliberative process privilege, the relationship between the authors and recipients of the document is relevant.  The universe of employees that were privy to the documents informs the evaluation of whether these individuals are involved in "the process by which policies are formulated."  Grand Cent. P'ship, Inc. v. Cuomo, supra, 166 F.3d at 482.  The broad definition of "Client" provides AAA with no meaningful basis to assess the relationships between the authors and recipients of the withheld documents.  In addition, this definition does not indicate the number of individuals who are included within the term "Client" for a particular category.  This information is relevant because

---

[3]Although the Port Authority proffered at oral argument that all the individuals encompassed within "Client" are relatively high-level employees at the Port Authority, it has not made this limitation apparent in its definition of the term in its privilege log.

the extent to which a document was circulated at the Port
Authority can illuminate whether that document assisted in the
decision-making process.  If the documents were circulated among
a small universe of employees, it is more likely that the
document was designed to assist in the decision-making process as
the number of employees involved in this process is likely to be
discrete and limited.  Without any understanding of the number of
individuals involved, AAA is deprived of a source of information
relevant to its assessment of the deliberative process privilege.

Accordingly, the Port Authority is directed to
supplement its index by providing the number of individuals that
comprise the "Authors" and "Recipients" of each of the eight
challenged categories.  If there are ten or fewer individuals,
the Port Authority is directed to specifically identify these
individuals.  This limited supplementation is appropriate given
that the purpose of categorical privilege logs, as detailed
above, is to reduce the potential burdens imposed by a document-
by-document privilege log in cases involving high volumes of
privileged material.  If there are only a relatively small number
of individuals encompassed within the term "Client" as it is used
in each of the challenged categories, the risk of burdensomeness
is low and the efficiencies associated with a categorical log are
not as compelling.  If there are more than ten individual

"Authors" or "Recipients" in any category, the Port Authority is
to identify, by name and title, the most highly placed individual
and the least highly placed individual with respect to each
category.

Finally, the Port Authority is directed to supplement
its privilege log further by providing the number of documents
encompassed within each of the eight challenged categories.  The
Port Authority did provide this information in a letter to AAA
(Ex. B to Mastro Ltr.) and stated at oral argument that the eight
categories encompass approximately 200 documents.  Nonetheless, a
listing of the number of documents withheld on the log itself
will streamline AAA's evaluation and provide it with a more
fulsome record to assess the privilege.

IV.   Conclusion

For the reasons set forth above, the Port Authority shall supplement its privilege log as directed in this Opinion and Order.

Dated:  New York, New York
        May 8, 2013

                                    SO ORDERED

                                    _____
                                    HENRY PITMAN
                                    United States Magistrate Judge

Copies transmitted to:

Kevin P. Mulry, Esq.
Farrell Fritz, P.C.
1320 Reckson Plaza
Uniondale, New York  11556

Michael F. Fitzgerald, Esq.
Farrell Fritz, PC
Suite 800
370 Lexington Avenue
New York, New York  10017

Kathleen G. Miller, Esq.
Arnold D. Kolikoff, Esq.
Carlene V. McIntyre, Esq.
David R. Kromm, Esq.
The Port Authority of New York and New Jersey
14th Floor
225 Park Avenue South
New York, New York  10003

24

Alexander H. Southwell, Esq.
Nancy E. Hart, Esq.
Randy M. Mastro, Esq.
Gibson, Dunn & Crutcher, LLP
47th Floor
200 Park Avenue
New York, New York  10166

Debra Wong Yang, Esq.
Gibson, Dunn & Crutcher, LLP
333 South Grand Avenue
Los Angeles, California  90071