```
                        UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF NEW YORK

In re:                                  :
                                            Docket #11cv6746
AUTOMOBILE CLUB OF NEW YORK,            : 1:11-cv-06746-RKE-HBP

                      Plaintiff,        :

   - against -                          :

THE PORT AUTHORITY OF NEW YORK          : New York, New York
AND NEW JERSEY,                           March 6, 2013
                      Defendant.        :

------------------------------------- :

                           PROCEEDINGS BEFORE
                      THE HONORABLE HENRY PITMAN,
            UNITED STATES DISTRICT COURT MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:              FARRELL FRITZ, PC
                            BY:  KEVIN P. MULRY, ESQ.
                            370 Lexington Avenue
                            New York, New York 10017
                            (516) 227-0620


For the Defendants:         GIBSON, DUNN & CRUTCHER, LLP
                            BY:  RANDY MASTRO, ESQ.
                            200 Park Avenue, 48th Floor
                            New York, New York 10166
                            (212) 351-3897



Transcription Service:  Carole Ludwig, Transcription Services
                        141 East Third Street #3E
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Fax:  (212) 420-6007

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None    |        |       |           |          |

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None           |             |    |    |           |

```
 1                                                  3
 2           THE COURT:  The last discovery dispute in the
 3  matter and there were some letters that I received late
 4  last year. This is a conference that we've been trying to,
 5  it's been adjourned several times at the parties' request.
 6  The dispute involves the defendant's privilege log and I
 7  received letters last week and this week. I received a
 8  letter from plaintiff dated February 27, 2013, and a letter
 9  from defendant dated March 4, 2013. I take it that
10  supersedes, those two letters supersede the previous
11  correspondence on the matter?
12           MALE VOICE:  Yes, Your Honor.
13           MALE VOICE:  Yes, Your Honor.
14           THE COURT:  Okay.  All right, before we talk about
15  the specific dispute, what's, what's been going on. I mean
16  your discovery was supposed to end in November, but for
17  this dispute are you ready to proceed to summary judgment
18  briefing?
19           MR. MULRY:  Your Honor, the discovery is complete
20  with the exception of two items. One is the privilege log
21  issue which is before you, and the other is the deposition
22  of David Samson which Your Honor had allowed us to leave
23  open to after the close of discovery at the time based on
24  Mr. Samson's schedule. And as we've written to the Court,
25  we, we would seek to have this privilege log issue resolved
```

1

2 before Mr. Samson's deposition so as to avoid any issue

3 with seeking an application from the Court to potentially

4 re-depose him after production of additional documents. But

5 with the exception of those two issues, discovery would be

6 completed.

7          THE COURT:  All right.  Well why don't I hear you

8 on the privilege log issue first and then I'll hear from

9 defense counsel.

10          MR. MULRY: Your Honor, the parties have engaged in

11 a number of exchange of letters as well as telephone

12 conferences to try to narrow the dispute. There were, I

13 believe, 37 different categories in the privilege log that

14 was submitted by defendants, and we had concerns with the

15 generality of most of the categories, understanding that

16 defendants were submitting a categorical privilege long.

17 And that is one thing to say at the outset is we're not

18 challenging the, the preparation by defendants of a

19 categorical log, we are making the argument that even a

20 categorical --

21          THE COURT:  Let me ask you something, I've read,

22 I'm familiar with the current version of Rule 26, of Local

23 Civil Rule 26.2.  In your research have you come across

24 any, unfortunately the rule does not define what a

25 categorical privilege log is or what information it should

1

2   have.  Have you come across any case that has found a

3   categorical privilege log to be sufficient?  There are a

4   couple of decisions from Judge Francis finding them to be

5   insufficient, but have you, has plaintiff found any that

6   have rung the bell?

7            MR. MULRY:  No, Your Honor.

8            THE COURT:  Okay, go ahead.

9            MR. MULRY:  So our concern was with the generality

10  of the privilege log, yet in an effort to try to streamline

11  this issue as well as streamline any issues that we would

12  present to Your Honor, we have limited our objection to the

13  privilege log to eight categories which involve the

14  assertion of the deliberative process privilege. And even

15  within those eight categories, we've tried to in our

16  February 27th letter, characterize the, what we see as the

17  most efficient way to address the deficiencies.

18           The first is the definition of client.  Now in the

19  rule, and we would certainly assert that this is true of a

20  categorical privilege log, as well, it is necessary for a

21  party to describe the authors, the addresses, and the

22  recipients of, of a communication as well as the

23  relationship of the author, addressees and recipients to

24  each other.  What defendants have done in this log is they

25  defined the term client very broadly and it's in their

6

1

2    appendix, which I'm sure Your Honor has seen.

3              THE COURT:  Actually I didn't, I don't -- I got,

4    it's sort of a, I received with defendant's letter some

5    attachments, one of which I think purports to define who

6    the clients are.  I didn't get an appendix to the index,

7    itself.

8              MR. MULRY:  Well Exhibit A --

9              MR. MASTRO:  It's on the very last page, Your

10   Honor, of the log, itself, page 10, "the term client means

11   and refers to the Port Authority, it's employees,

12   commissioners" --

13             THE COURT:  There's nothing that defines them by

14   name though?

15             MR. MASTRO:  No, it doesn't identify them by name.

16             THE COURT:  All right.

17             MR. MASTRO:  But it describes the category

18   including those overseeing, leading and managing the

19   agency.

20             THE COURT:  All right.

21             MR. MASTRO:  Thank you, Your Honor.

22             THE COURT:  Thanks.  Go ahead.

23             MR. MULRY:  So the category, the term client

24   refers to anyone in the Port Authority, and it has that

25   language that employees, commissioners and/or individuals

1

2  involved with overseeing, leading and managing the agency.

3  In our meet and confer discussions in response to sort of

4  questioning as to what client means, we came to understand

5  that the term client also includes individuals who are in

6  the governor's offices from the New Jersey governor and the

7  New York governor.

8            So if you go to the log, just for example at some

9  of the paragraphs we've questioned, 17, for example, the

10  authors of these communications which range in date from

11  October of 2010 to August of 2011, the document type is

12  communications, it is from the client and/or client's in-

13  house counsel, and the recipients are client and/or

14  client's in-house counsel.  So client in author and client

15  in recipient could be anyone in the Port Authority, it

16  could be a commissioner, someone in management, someone on

17  staff, it could also be someone in the New York attorney's

18  -- the New York governor's office, it could be someone in

19  the New Jersey governor's office, and there is no, no

20  understanding of what's the relationship of the author,

21  addressees and recipients to each other. So plaintiff is

22  left to simply guess as to who the authors and recipients

23  are of all these communications and this carried through

24  all of the deliberative process categories that we are

25  raising today.

1                                                                8

2              The only thing we know about the authors,

3    addressees and recipients is that they are people who are

4    in, somewhere in the Port Authority or in the New Jersey

5    governor's office or in the New York governor's office and

6    there is no explanation of who's sending to whom. So that

7    just if you're looking at the requirement of the people who

8    receive and send communications, in our view that is just

9    entirely too broad of a definition, and it really amounts

10   to not giving any description of who the people are who are

11   sending these communications or to whom they're addressed

12   or who are receiving the communications.

13             What we proposed, which is still in keeping with a

14   categorical log, it is not, certainly not a perfect

15   approach to explaining why documents have been withheld on

16   the ground of privilege, but we suggested subcategories

17   which would be Port Authority commissioners, the Port

18   Authority management, Port Authority staff, and then the

19   New York governor's office and the New Jersey governor's

20   office.

21             Now at this point we don't know what documents

22   are, are covered by the assertions of privilege, so it's

23   hard to say even if those subcategories would be

24   descriptive enough. But what we're trying to make this,

25   trying to work out this dispute that is a suggestion we had

made that subcategories would still keep a categorical log

and would address the issues of burdensomeness that the

Port Authority has raised, but it would still give some

explanation of who is creating documents, who's sending

them and who's receiving them, because the nature of the

deliberative process privilege certainly, it is relevant to

the deliberative process privilege as to who are the

communications flowing to and from.

Particularly, where here you have a unique

situation where the assertion is being made that a

deliberative process privilege is appropriate and is

applicable to communications between individuals at the

Port Authority and individuals in the offices of the New

Jersey governor and the New York governor.  That was with

respect to the issue of the definition of client and the

explanation of the authors and addressees of

communications.

The second issue we had raised is an issue that

goes to the definition of whether something is covered by

the deliberative process privilege which is whether the

documents are pre-decisional.  We have eight categories of

documents and in a letter dated February 7th, which is

attachment B to the AAA letter, and it's also an attachment

to the Port Authority letter, the Port Authority had broken

1

2   out within those eight categories various decisions that

3   are referenced.  And that was in response to our objections

4   that the categories, the description of the categories was

5   just too general for AAA to assess even whether it should

6   assert that the deliberative process privilege did not

7   apply. And this goes, it would be pages, starting on the

8   bottom of page 3 on the February 7th letter, carrying over

9   to page 4, and in that letter by our count in those 8

10  categories there were at least 19 separate decisions

11  referenced. So it is certainly relevant to the assertion of

12  the deliberative process privilege what is the decision

13  that the Port Authority is either making or considering for

14  which the document applies, and it's certainly relevant to

15  the assertion of the privileges to whether that's pre-

16  decisional, and the cases have talked about that, that

17  there has to be a description of why the documents are pre-

18  decisional.

19          And in our reading of the February 7th letter,

20  which breaks down these 19 or more decisions, particularly

21  given the wide range of dates that are in those 8

22  categories, AAA is unable to determine whether these

23  documents are pre-decisional, whether, what documents

24  within each of those categories refer to which decisions

25  and when those, those decisions were made.  We have raised

1
2  and we raise this in our third point, these general

3  objections to the date ranges. Because we understand that

4  there is some leeway within a categorical privilege log to

5  have ranges of dates, but here some of the ranges last more

6  than a year. So that's the, the second point was on the

7  pre-decisional nature and in our view the log has to be

8  further modified to explain, explain the basis for why

9  these documents are pre-decisional.

10          And finally, in the May 27th letter, we argue that

11  the, the log has to be more detailed in terms of

12  descriptions and in terms of dates because even if the

13  privilege applies, even if the deliberative process of

14  privilege applies, it is clear from the cases, including

15  some of the cases we've cited that Your Honor decided, that

16  the deliberative process privilege, first of all, does not

17  apply if, if the matter is purely factual. Also, the

18  deliberative process privilege is a qualified privilege.

19  So a Court would have to balance the interests favoring

20  disclosure and the interests disfavoring disclosure. And

21  Your Honor went into that in the Davis case citing the

22  various factors that a Court considers in determining

23  whether the deliberative process privilege should apply in

24  a particular case.

25          With the generality of the privilege log, and the

12

generality of the description of the authors, the time

periods, and the descriptions of the decisions that are

referenced, AAA is not in a position to adequately assess

whether there should be a challenge to the privilege log.

Finally, the case law indicates that the

deliberative process privilege is a qualified privilege and

it's routinely not applied when the agency decisions are

central to the case. And here the decision of the Port

Authority to raise the tolls and the reasons for the toll

increase are central to this case. And for that reason we

believe there would be an argument that certain documents

that are claimed to be privileged under the deliberative

process privilege, even if the privilege would apply in the

first instance, those documents should be produced either

because the interests favoring disclosure outweigh the

interests disfavoring disclosure, or because the agency

decisions are central to the case.

THE COURT:  All right.  Okay --

MR. MULRY:  I think that capsulizes the arguments

we had made with respect to the privilege log and if Your

Honor had questions?

THE COURT:  No.  All right, but you are just

interested in those 8 categories, 17, 18, 19, 20, 24, 25,

26 and 27, right?

```
 1                                                  13
 2            MR. MULRY:  We did have general concerns with the
 3   others but for the purpose of this we --
 4            THE COURT:  Yeah.
 5            MR. MULRY:  We limited ourselves to those
 6   deliberative process categories.
 7            THE COURT:  All right.  Who's -- Mr. Mastro, let
 8   me start by asking you the question I asked your adversary,
 9   are you aware of any case that has found, I mean I
10   appreciate what 26.2 says about categorical privilege logs,
11   but are there cases that have set a standard or set, found
12   categorical logs, found a particular categorical log to be
13   sufficient?
14            MR. MASTRO:  Well, again, Your Honor, what just,
15   what Judge Francis did in the Orbit One and the In re
16   Rivastigme (phonetic) case, cases, was to say the
17   categorical logging was permissible, but in that case --
18            THE COURT:  But those logs were found to be
19   deficient.
20            MR. MASTRO:  Correct, Your Honor.
21            THE COURT:  Yeah.  What I'm asking you, is there
22   one, is there a case where they found, the Court found a
23   log to be sufficient?
24            MR. MASTRO:  Your Honor --
25            THE COURT:  I mean it's sort of an undefined term
```

```
 1                                                    14
 2  in the Local Rule, but I'm --
 3             MR. MASTRO:  It is, Your Honor, I think there is
 4  instructive guidance though from what was found to be
 5  deficient there.  And I think Your Honor's own decision in
 6  Go (phonetic) which was not a categorical logging, but the
 7  level of specificity in certain areas, including the
 8  descriptions that is on our log, greatly exceed what was in
 9  Go.
10             Now, Your Honor, if I may --
11             THE COURT:  Well, I'm not, Go is not the alpha and
12  the omega though on the issue of sufficiency of a privilege
13  log.
14             MR. MASTRO:  I didn't say that, Your Honor --
15             THE COURT:  So.
16             MR. MASTRO:  And we are in uncharted territory.
17  But if I may, Your Honor, I think the real problem here is
18  that while Mr. Mulry says that there's no dispute we can
19  categorically log, basically what he's challenging is the
20  fact that we categorically logged. And I can go through
21  each --
22             THE COURT:  Well --
23             MR. MASTRO:  Okay, Your Honor, first of all, this
24  --
25             THE COURT:  Go ahead.
```

1                                                                          15

2              MR. MASTRO:  It's important to remind the Court

3    that you give a plaintiff a narrow window and they will try

4    and open it so wide, we've given over 30,000 pages of

5    documents to the other side, we have given over 1,700

6    native files to them, we have given them our deputy CEO, a

7    guy who runs the Port Authority on a day to day basis, our

8    CFO, our deputy OMB director, we've given them the report

9    of the outside experts, Navigant, and what did Navigant

10   say, there isn't enough money there, without the toll

11   increase we'd be billions of dollars in the hole and

12   couldn't fund the capital projects. Every piece of evidence

13   they've gotten, more than they ever should have under the

14   very narrow confines of what Judge Holwell and Your Honor

15   permitted of just the ITN related documents since 2007, and

16   the narrow question of the reasons for this decision, this

17   toll increase. They have, they're trying to drive a Mack

18   truck through it.

19             Now, deliberative process logging.  Let me go

20   through each of their three categories, because they're

21   trying to set traps that have nothing to do with the

22   ultimate resolution of this case. And frankly, once we

23   resolve the deliberative process privilege claim, we should

24   be going to summary judgment because --

25             THE COURT:  I don't know if can -- well, go ahead.

1  Go ahead.

2

3          MR. MASTRO:  Because the chair knows, doesn't know

4  anything more than and knows less than the deputy CEO and

5  the CFO about these issues, but the wanted to address the

6  privilege issues first before going forward there.  And the

7  privilege issues I think are a dead end for them.  Your

8  Honor, let me go through each category.

9          They say three things, three things that they

10  disagree with, okay?  First of all, they say it's necessary

11  to describe the authors, the addressees, the recipients,

12  what they want is, is an old fashioned privilege log, not a

13  categorical log.  Your Honor, the definition --

14          THE COURT:  Old fashioned privilege log still

15  works.

16          MR. MASTRO:  But we are permitted --

17          THE COURT:  And there's nothing, there's nothing

18  in the Local Rule that says an old fashioned privilege log

19  is now impermissible.

20          MR. MASTRO:  But Your Honor, this is, Your Honor,

21  we are a public authority that has now spent enormous

22  amounts of money on what was supposed to be very limited

23  discovery and we're allowed to do a categorical log,

24  everyone here agrees to that, and we defined clients

25  properly.  Your Honor, we told them flat out, everybody who

1

2  is in the client category is at a high level. They want you

3  to go into a trap. They want you to say we have to say

4  which ones are commissioners, which ones are managers,

5  which ones are staff, what kind of ambiguity is that,

6  manager/staff.  They are all high level employees or

7  commissioners, or from the governor's offices, and the

8  governor's, of course, are the ones overseeing the Port

9  Authority.

10         Now why does he say he needs this, why does he say

11  --

12         THE COURT:  Well, your appendix doesn't say

13  they're high level employees.

14         MR. MASTRO:  Your Honor, it says they're all

15  employees.

16         THE COURT:  Yeah.  Well, I mean I presume the guy

17  who takes the money at the George Washington Bridge is an

18  employee, too.

19         MR. MASTRO:  Yes, well obviously were not talking

20  about documents of that nature, Your Honor, but we're now

21  supposed to define who constitutes a manager and who

22  constitutes just a staffer?  They are not on the list

23  unless they're people who were involved in the deliberative

24  process on making the decision, okay, and we represented

25  that to them so I think this is not the kind of argument

 1

 2   being made to Your Honor as anything other than to burden

 3   us further and to try and create certain traps.

 4         Now he says, it's got to be high level, it's got

 5   to be high level for deliberative process, that's why he

 6   needs to know about the governor's offices being involved,

 7   because he tells you now that, oh, I need to know that

 8   distinction because it's got to be at the highest level

 9   these decisions are made.  Yet in his letters to us and to

10   Your Honor, he actually is going to argue not that because

11   the governor's offices are involved it is deliberative

12   process, he is going to argue to you, and this is the

13   duplicity of this argument, "the inclusion of the New York

14   --

15         THE COURT:  No one is being duplicitous here, and

16   everyone should try to generate light, not heat. I mean

17   duplicitousness is, that adjective is really uncalled for.

18         MR. MASTRO:  Just, Your Honor, listen to what he

19   said.

20         THE COURT:  Go ahead.

21         MR. MASTRO:  Okay, he's wrote to you, after he

22   just argued to you that he needed to know the governors'

23   offices because they had to be at a high level to qualify

24   for deliberative process privilege he is then going to

25   argument when that breakdown is done, quote, his letter to

 1

 2  you, "the inclusion of the New York and New Jersey

 3  governors' offices within a deliberative process privilege

 4  asserted by the Port Authority, raises a clear legal issue

 5  whether communication between the Port Authority and the

 6  New York and New Jersey governors' offices are privileged."

 7          Your Honor, he argued to you just a few minutes

 8  ago he needed to know if the governors' offices were

 9  involved because it has to be at the highest level to

10  qualify for deliberative process, yet he wrote in this

11  letter that he is then going to use that information to

12  argue there is no deliberative process privilege. And

13  Giuliani v. Marisol, Judge Sotomayor's decision establishes

14  jus the opposite. That, in fact, the mayor has a

15  deliberative process even though it's a city agency who

16  makes the decision because it's the people who oversee the

17  decision makers.

18          So I'm just saying, Your Honor, in this category

19  there is no basis, no basis based on having gone back three

20  times and supplemented the information on the privilege log

21  and having told them that every, every person in the client

22  category was somebody involved in the decision making

23  process, that we should get sucked into this, for lack of a

24  better word, you know, game of put people in different

25  buckets and then they are going to come back and challenge

2   them anyway even though they argued they needed to know the

3   buckets to know if it was a high level person.

4           THE COURT:  Look, I mean, Mr. Mastro, when I

5   looked at the index though it does seem fairly opaque. I

6   mean I'm not sure how it gives a, even with a categorical

7   list, the rule still requires that it give sufficient

8   information to reasonably assess the applicability of the

9   privilege. And let me ask you a question, how many

10   documents are involved in the 8 categories that plaintiff

11   is raising here?

12           MR. MASTRO:  Your Honor, a little over 200, 200 to

13   250, it's not a large category, Your Honor.

14           THE COURT:  Yeah.

15           MR. MASTRO:  But if I may, Your Honor, I think

16   that the point of a categorical log, clearly is, and I've

17   done them in other cases, as well, is that you don't have

18   to identify every author, every recipient, everyone who was

19   copied on it.  That you're talking about categories and I

20   am making a representation as an officer of the Court and

21   we've made it to them previously, that the authors and

22   recipients and people copied on these documents are all

23   people who were at at least a higher level staff category,

24   that they were involved in some way in that deliberative

25   process. It doesn't have to be broken out by and frankly it

1
2   would involved kind of arbitrary decisions to say who's

3   staff and who's management, but this is ultimately about,

4   Your Honor, again, for lack of a better word, the game to

5   try and find what documents have a governor's office on

6   them and then to come back to you and say there is no

7   deliberative process privilege, yet they are arguing here

8   today to you to make us be more specific because they

9   argued if the governor's offices were involved that's the

10  high level. It doesn't wash.

11          Now, Your Honor, it's also the case, the second

12  category that they have here, second category that they

13  have here is whether something was pre-decisional or not.

14  And we're not, we're not disagreeing on the principle, Your

15  Honor, that deliberative process goes into the decision,

16  but what they totally leave out, Your Honor, is that many

17  of these categories that are in their, in their eight

18  categories, the decisions at issue were not necessarily

19  decisions or were ones that are revisited on a regular

20  basis.

21          When you do a budget, when you do a capital

22  budget, okay, you are reviewing that capital budget

23  periodically throughout the year. There isn't one decision

24  point.  I have a little experience with this having been a

25  deputy mayor, the budget gets reviewed, it gets altered, it

1

2  gets changed, there isn't one decision point at only one

3  point in time in the year.

4        So, Your Honor, all the documents here and in some

5  cases they're going to, and I'm going to go through those

6  specifically to make my record, if I can, Your Honor, to

7  try and help the Court --

8        THE COURT:  Well, there are, there are, I mean I

9  suppose, for example, with the Port Authority's 2011

10  budget, I'm looking at page 4 of your office's February 7th

11  letter, I mean I presume at some point the budget is set,

12  is it not?

13        MR. MASTRO:  It is, Your Honor, but let me just

14  explain.

15        THE COURT:  No, I, I understand it's an ongoing

16  process and I've read Tighe (phonetic) and I understand, I

17  think I understand what Tighe means --

18        MR. MASTRO:  Correct.

19        THE COURT:  But presumably, you know, if there was

20  a document discussing the 2011 budget after the 2011 budget

21  was set, the deliberative process privilege I think becomes

22  more problematic.

23        MR. MASTRO:  Let me explain, Your Honor --

24        THE COURT:  Go head.

25        MR. MASTRO:  On each of the categories. And Your

1

2  Honor is right to bring up Tighe, our Second Circuit

3  authority, where again, the Second Circuit may clear, even

4  if there's factual information in a deliberative process

5  privilege document it does not warrant having to turn it

6  over.  That the Court rule there, you don't turn it over.

7       Your Honor, first two categories they have, these

8  are categories 17 and 18, these are "regarding the 2011

9  proposed toll and fare increases."  Well these don't have

10  that problem because we've already told them they were,

11  there was a decision date, we all know when the decision

12  date was on the toll increase, and all the documents

13  predate that. So they don't need it for category 17 and 18,

14  they knew that coming in here, they admitted it to us on

15  the phone, yet they left it in the mix.  They are all pre-

16  decisional, there was a firm decision date, nothing else to

17  be said about it.

18       Then we have categories 19 and 20, okay, these are

19  documents regarding the 2011 approved toll and fare

20  increases including, but not limited to, proposals to

21  modify or suspend them.  Well, Your Honor, this is exactly

22  what I was just talking about, okay.  We've already covered

23  everything in 17 and 18 --

24       THE COURT:  Just one second, there are so many

25  documents here that unfortunately there is on composite

1

2   index that contains all the emendations in the

3   correspondence. Go ahead, 19 and 20 now?

4          MR. MASTRO: Yes, now I'm on to 29 and 20, Your

5   Honor.

6          THE COURT: Go ahead.

7          MR. MASTRO: And that basically is covering a

8   broader different category, including, but not limited to

9   proposals to modify or suspend the toll increases later.

10  So that actually doesn't have any end date, because there

11  was no decision made subsequently to modify or suspend. So

12  to the extent there was any deliberative process --

13         THE COURT: Well, was there a decision made not to

14  modify or suspend?

15         MR. MASTRO: No, Your Honor, there wasn't a --

16  there wasn't a decision made one way or the other. To the

17  extent there was any dialog about it internally, Your

18  Honor, you know, the decision was done, so there was not a

19  new decision that was made one way or the other.

20         THE COURT: No, but at some point did it become a

21  dead issue?

22         MR. MASTRO: Your Honor, I think that the way

23  these kinds of issues play out in a public authority

24  context or in a government context are that a decision is

25  made. There is always the potential to revisit, modify,

25

1    maybe a need to make an additional increase or decrease

2    later, but there was no subsequent decision to change the

3    status quo. No subsequent decision.

4    

5                To the extent there are any documents --

6                THE COURT:  No, but I mean, I mean at some point

7    did not modification or suspension of the August 11th toll

8    increases become a dead issue?  I mean are they still

9    considering it?

10               MR. MASTRO:  There hasn't been a decision to

11   modify or suspend, Your Honor.  The notion that there's a

12   --

13               THE COURT:  No, I know there hasn't been, but is

14   it still under consideration or is it a dead issue?

15               MR. MASTRO:  Your Honor, is it a dead issue, it

16   didn't happen in the period since, you know, but the fact

17   of the matter is that they never had a decision point, all

18   right, they just didn't do it, okay?  But there may be

19   documents that are covered by those categories of, of

20   internal deliberations about whether they should tee that

21   up or not, I'm not saying there are.  But all I'm saying is

22   that there is no, there is no decision point on modifying

23   or suspending, because nothing has happened in that regard.

24   And there was no formal process ever initiated to do that

25   one way or the other.

1                                                          26

2           So the notion of a date in those categories is

3   almost a ludicrous concept.  Because there was no

4   subsequent decision one way or the other to modify or

5   suspend. You could take that, Your Honor, as they never

6   modified or suspended.  But that doesn't mean they don't

7   have the right to and wouldn't have, had some deliberative

8   process about whether to initiate such a process or not,

9   they made no such decision subsequently one way or the

10  other. They made a decision back in 2011 and that was it.

11          THE COURT:  Well if your analysis is correct, does

12  the deliberative process privilege then apply ad infinitum

13  to documents discussing the August 11th toll and fare

14  increases?  I mean at some point does it ever, I mean your

15  analysis seems to suggest it's always going to be covered

16  by the deliberative process privilege.

17          MR. MASTRO:  Actually, Your Honor, that's not what

18  I meant to convey, I mean obviously there's a finite period

19  of time that we define on the log on number 19 from, you

20  know, October, 2011, to June, 2012, because there are at

21  least some documents where there was at least some internal

22  consideration of whether to initiate some process of

23  whether to or not, but it didn't happen. So that's not

24  really a decision point, Your Honor, but it is part of a

25  deliberative process where government is always

1

2 reassessing, you know, the decisions made and whether to

3 make changes in the future.

4      THE COURT:  Well, I mean hopefully all government

5 officials are deliberating and earning their keep, but that

6 doesn't necessarily bring them into privilege.

7      MR. MASTRO:  I'm pointing out, Your Honor, why

8 what they are seeking makes no sense in the context of 19

9 and 20 because their, whatever internal documents exist

10 that show any kind of deliberation about how we're doing,

11 should we be reassessing, should we be modifying or

12 suspending, whatever documents exist to that extent there

13 isn't a finite decisional date by which there should be

14 dates of every document because there was no such decision

15 made one way or the other. So the request is one that makes

16 no sense in the context of 19 and 20.

17      Your Honor, the same really applies for 24, 25,

18 26, and 27.  Let me start with 24 and 25.  "Regarding

19 capital planning and or expenditures by the Port Authority

20 for the ITN."  And yes, there is the passage of a budget on

21 a date certain, but as to capital projects, and the budgets

22 and expenditures for capital projects, they then have to be

23 reviewed by commissioners and they are constantly under a

24 review process where priorities are set about which

25 projects to fund and how much to fund them.  That is not

1

2    something that ends on a finite date, it's something that

3    is an ongoing consideration. So there are deliberations

4    about these capital projects, enormous expenses, even with,

5    as we've explained to Your Honor, even with the toll, they

6    can't fund all the capital projects relating to bridges and

7    tunnels that they want to, they're not, it's not even

8    raising enough money to cover what they actually need. But

9    the process of determining which capital projects have

10   priority or how much to spend on each one is an ongoing

11   review process. So it's not that there's one day when all

12   is set in stone.

13        So again, the notion on 24, 25, 26 and 27 that the

14   dates of the documents is determinative, we've always given

15   ranges, by the way, Your Honor, on the log, that it doesn't

16   make sense in those contexts.

17        THE COURT:  Well I'm not sure you can necessarily

18   reach that conclusion.  I mean if you had a document dated

19   discussing the 2011 budget after the 2011 budget was set,

20   I'm not, it seems to me that the deliberative process

21   privilege would be a much closer case.  And, Your Honor, I

22   don't think that is, that's, having been responsible for

23   the budget of the third largest government in the United

24   States -- fourth, I'm sorry, fourth largest government in

25   the United States, we were in capital projects in a

1

2  constant state of review. It wasn't that the budget passed

3  --

4         THE COURT:  No, but is it pre-decisional after the

5  budget is set?

6         MR. MASTRO:  Your Honor, it's, if I had -- Your

7  Honor, let's take a specific project.  If we were going to,

8  you know, have to rebuild a particular bridge, the budget

9  passes at a given point in time and we have allocated a

10  billion dollars to rebuilding that one bridge, and the year

11  is continuing and then we realize we have nowhere near

12  enough money to rebuild that bridge, what are we going to

13  have to do about it. And we're having deliberative process

14  about whether to do an amendment or go to the commissioners

15  for more money, okay --

16         THE COURT:  Yeah, I mean the memo may also say we

17  hired XYZ Construction Company to build the widgets and

18  they've come in under budget. We should use them again.  I

19  mean, you know, the memos could say a lot of things.  You

20  can hypothesize the memo that's within the privilege, you

21  can hypothesize a memo that's without the privilege. So the

22  fact that you can hypothesize on that's within the

23  privilege, I'm not sure how compelling that is.

24         MR. MASTRO:  It's, we're not talking about

25  hypothesizing, Your Honor, we're all officers of the Court

1

2  here, when we do a categorical log, it has to be something

3  that we believe involved, you know, a deliberative process

4  about allocation of capital funds on a particular project.

5  That's what 24, 25, 26, and 27 go to. And part of a

6  deliberative process about what steps to take or not to

7  take, it didn't end on the day in 2012 that the budget

8  passed. There can be deliberative process documents that

9  are after that date. So it goes to --

10          THE COURT:  No, but an attorney can make a

11  determination in good faith and it's reasonable, and may

12  still wind up to be a determination that the Court

13  disagrees with.

14          MR. MASTRO:  But what difference, Your Honor --

15          THE COURT:  No, I mean the fact that, you know,

16  you're saying we're officers of the Court, we're all

17  proceeding in good faith, I'm sure that's true but that's

18  not the end of the analysis.

19          MR. MASTRO:  But, Your Honor, what difference does

20  it make which date in time a particular document that is in

21  a category in a privilege log, when it comes to capital

22  expenditures, and there is an ongoing review of capital

23  expenditures throughout the year, and adjustments to the

24  budget, and adjustments to what's allocated, that it is

25  irrelevant to that, the specific date of each document,

1

2   it's irrelevant to whether there's a privilege claim.

3           THE COURT:  All documents concerning capital

4   budgets are always within the deliberative process

5   privilege?

6           MR. MASTRO:  No, I did not say that, Your Honor,

7   what I said was the documents --

8           THE COURT:  No, but that's where your argument

9   leads.

10           MR. MASTRO:  The few documents that we've put on

11   the log are ones that go to the deliberative process of how

12   to allocate capital funds. That doesn't mean every document

13   about the capital budget is in that category.  The one you

14   cited isn't on our log, okay, we would not be putting that

15   on the log. The ones that are on our log, and there's only

16   200 plus in the categorical category, are all ones that

17   involved some internal assessment of either what should go

18   into the capital budget or what changes needed to be made

19   afterwards to the capital budget based on priorities.  The

20   notion that he needs the dates, and that suddenly becomes

21   the relevant inquiry, just isn't well founded as to those

22   documents.

23           So, Your Honor, again, I, I repeat, in the first

24   two categories, 17 and 18, they know the decision date and

25   they have been told that all the documents are pre-

32

decisional. In the other categories, I have explained why as to 19 and 20 there wasn't a decision date, so it will be irrelevant what the dates are, and as to 24, 25, 26 and 27, while there were decisions at certain points in time, there were multiple decisions.  It wasn't just the passage of the budget that determined that.

And again, Your Honor, we have put in date ranges for the documents so they know whether some are before and some are after what they would consider to be certain decision dates. So they know that if they think there was a decision date and there's some documents afterwards that wouldn't apply, they should move right now.  Because they know that in these capital budget categories in some cases some of the decisions are passed after the -- some of the documents are dated after the date of the budget.  But we believe we properly asserted deliberative process privilege, even though some of the documents are after the date of passage of the budget, but the notion that he needs to know the exact dates before and after, is an ephemeral notion in determining whether he thinks that's a basis for moving to compel.

Now, Your Honor, the last category that he brought up was more detailed descriptions in the log.  Now Your Honor can see we, I hope Your Honor will see that we

1                                                                    33

2  attempted and I think succeeded in providing pretty

3  extensive description of what each category covered --

4           THE COURT:  Well the descriptions, again, they're

5  extremely general because the categories are so broad.  You

6  know, I'm not -- you know, I'm not sure it really provides

7  a basis though for an intelligent assessment as to whether

8  or not the privilege is properly asserted.

9           MR. MASTRO:  Your Honor, as to the descriptions,

10 it's not just the log, itself, we gave them three

11 supplemental letters that spelled out in more detail

12 responding to their specific request. And I think when Your

13 Honor looks at both the original log and the three letters

14 about December 10th, January 10th, and February 7th, you will

15 see the descriptions we've provided and the supplements we

16 had given on these issues, you know, exceed that which Your

17 Honor found to be sufficient descriptions on the log in the

18 Go case.

19          THE COURT:  Well it would help a great deal if

20 there was, you know, not a some assembly required log here.

21          MR. MASTRO:  Your Honor, I appreciate that and if

22 Your Honor gives us 24 hours we will incorporate the

23 letters onto the log as to the additional descriptions we

24 gave.

25          THE COURT:  Just one second.

1

2          MR. MASTRO:  And finally, Your Honor, I just

3  wanted to say that we are, given the volume of discovery

4  that has been produced here, given the very limited

5  universe of documents as to which we have claimed

6  deliberative process, this, and the extensive back and

7  forth now where we've modified and supplemented over and

8  over again and we detail in our letter the dozen categories

9  where we have supplemented with more information, this

10  really is in the much ado about nothing category.

11          THE COURT:  Well --

12          MR. MASTRO:  Every piece of, the volume of

13  material they've gotten, every deposition, the Navigant

14  report, and the reams of financial data, and this is only

15  supposed to be this discovery about the reasons for the

16  fare increase and the ITN financials to show that this is

17  needed for that, we have given them all of that and more.

18          THE COURT:  No, I understand that, and, you know,

19  Mr. Mastro, when Judge Eaton gets the summary judgment

20  motion, you know, he may conclude in a heartbeat that, you

21  know, the plaintiff's position is without merit and the

22  Port Authority here is dead right and they had a clear

23  legal basis for the fare increase.  But I'm not sure that

24  the strength of your position on the merits, and I'm

25  assuming for purposes of argument that you have got a

1                                                               35

2   strong position on the merits, the strength of your

3   position on the merits does not alter the obligations with

4   respect to the privilege log, as I understand the Rules of

5   Procedure.  Am I, am I wrong on that?

6              MR. MASTRO:  Your Honor, I wasn't suggesting that

7   --

8              THE COURT:  It sounds like you were.

9              MR. MASTRO:  Our privilege log doesn't have to be

10  sufficient, I was suggesting to Your Honor, and I suggest

11  it again, that some of the reasons we're here have nothing

12  to do with the ITN financials and the reasons for the fare

13  increase. They have to do with trying to isolate, you know,

14  what went to governors' offices and didn't so they can try

15  and pierce privilege there and embarrass the governors.  It

16  is not a proper purpose, Your Honor, it is not, we're not

17  here over legitimate privilege disputes in my view, we are

18  here to continue this exercise because every piece of

19  evidence they've gotten to date, every piece of evidence,

20  reams of evidence, has proven our case, yet we are here now

21  fighting about a couple of hundred plus pages of documents

22  and whether on a categorical log, which we are allowed to

23  do, and they conceded we're allowed to do, now has identify

24  all the authors and recipients and copies by name or

25  categories and every document has to be identified by date,

1

2 even though they know the dates of certain decisions,

3 including the toll increase, so those first two categories

4 don't count. I think that Your Honor should not have been

5 burdened with this, but we are here and we believe that our

6 privilege log is not only more than sufficient to pass

7 muster, we believe that the requests that are being made

8 here are not ones that illuminate the issues for purposes

9 of them knowing whether they should be challenging the

10 privilege log. If they think communications to the governor

11 --

12          THE COURT:  Are you saying that even if they got

13 all the documents they still lose?

14          MR. MASTRO:  Your Honor, they will still lose if

15 they pierce the privilege documents, but I'm not allowed to

16 talk about what the privilege documents say.  I am saying

17 to Your Honor that we have a deliberative process that we

18 need to protect. And Your Honor, that's, that's something

19 that goes broader than this litigation.  And in that

20 regard, I just want to emphasize the following point, okay,

21 in terms of the deliberative process on this decision, they

22 know now which of these two categories, 14 and 15 are, when

23 the decision was made and that they're all pre-decision. So

24 we couldn't be here about that.

25          They know that some documents in the other

1

2  categories, you know, are after points that they might say

3  the budget was passed. So if they wanted to make a motion,

4  they can make that motion right now without Your Honor

5  ordering that the log be supplemented at all.  If they want

6  to make a motion that governors somehow, even though they

7  oversee and they appoint everybody at the Port Authority

8  and they're the ones who are blamed for everything the Port

9  Authority does, the governors and their key staff are not

10  par to the deliberative process, an extreme position

11  rejected by Judge Sotomayor in Giuliani v. Marisol, they

12  can make that motion right now. And if they believe that an

13  documents dated after the passage of the budget be --

14        THE COURT:  Be careful what you wish for, I mean

15  if they make that motion, don't you bear the burden of

16  proof?

17        MR. MASTRO:  I win that motion, Your Honor, and I

18  win the motion on the timing of the documents, too, okay?

19        THE COURT:  But don't you bear the burden of

20  proof?

21        MR. MASTRO:  Your Honor, I'm simply saying that to

22  order us to go back and do the log more doesn't advance

23  their ability to know what issues they've highlighted to

24  Your Honor. It's a simple proposition. They say give us the

25  different categories of people by name or by categories

1  precisely because they have already advised Your Honor they

2  want to make a certain motion.  Well they know that some of

3  the documents are in that category so let them move.  They

4  say decision point, we say certain decision points, the

5  budget passed, but some of the documents are after that.

6  Well then they'd have to move in that regard. But the fact

7  of the matter is that there is no there there, okay, and to

8  make us go back and do an even more detailed log is an

9  exercise that doesn't advance their appreciation for the

10  privilege claims we've made, who they apply to, what

11  categories they apply to, and why.

12  THE COURT:  Are you saying the documents are

13  irrelevant?

14  MR. MASTRO:  No, Your Honor, I'm saying, Your

15  Honor, that we asserted privilege on them because they do

16  involve a deliberative process about decision making.  And

17  we have a right to assert that privilege. Do I think that

18  hey will alter the case in any way, shape or form, no, they

19  will not.  But we have a deliberative process that we have

20  to protect. You're not the only proceeding we're before,

21  Your Honor, we have other proceedings where there are, you

22  know, subpoenas or otherwise, we have to protect the

23  deliberative process of the Port Authority.

24  THE COURT:  I have no quarrel with the existence

39

of the deliberative process privilege, I have no quarrel
with any entities right to assert the deliberative process
privilege. My only concern right now is the adequacy of the
index, that's all.

MR. MASTRO:  Okay.  And all I was suggesting to
Your Honor is that --

THE COURT:  But I mean you're raising other issues
about the other documents that you've produced in the scope
of production and that they're trying to drive a truck
through a keyhole, or I forget the exact metaphor you used,
I'm not, you know, you sort of have a broad ranging
argument here that goes well beyond the sufficiency of the
log.

MR. MASTRO:  Your Honor, I do because I think it
is relevant to Your Honor's determinations, especially when
he said you could order, you could pierce the deliberative
process if you wanted to --

THE COURT:  We're not up to that, the issue right
now is the sufficiency of the log.  We're not up to whether
or not anything on the log should be produced or not.

MR. MASTRO:  I think it was extremely important
for Your Honor to know how extensive the discovery has been
in this case based on the orders Your Honor already issued
and based on the good faith of the Port Authority. We have

2   given more than I think anyone ever expected we would have

3   to give. And it's been an enormous burden and an expense on

4   a major public authority with several of its top executives

5   already having to prepare and then be deposed.

6           But, Your Honor, I am talking about the

7   sufficiency of the log, very specifically about the

8   sufficiency of the log.  He's here saying he needs certain

9   specific information even though he already has identified

10  to you the issues that he's concerned about, whether

11  certain documents are after certain dates he considers to

12  be decision points and he knows there are some such

13  documents.  And whether certain documents went to, you

14  know, certain people, and he knows there are some such

15  documents.  So he doesn't need the greater specificity in

16  the log to know whether he's got something to complain

17  about or not, we think he has nothing to complain about

18  because he's wrong on those issues, but it's not a question

19  of the date of a document or identifying everyone who was

20  an author or a recipient, we've already told him there are

21  documents that went to some people in every one of those

22  categories.  We have already shown on the face of the log

23  that there are some documents that relate to deliberative

24  process on capital expenditures after the date of the

25  budget passage.

```
 1                                                      41

 2          So he knows those things already, he doesn't need

 3   this additional information, and us having to go through

 4   the several hundred documents and catalog that like it's to

 5   a categorical log, like it's a normal log.  So, Your Honor,

 6   that's really the only point I was trying to make.  Thank

 7   you.

 8          THE COURT:  All right.  Do you want to respond?

 9          MR. MULRY:  Your Honor, I'll try to go briefly

10   backwards and certainly if Your Honor has any particular

11   questions I would want to address those.  The first thing I

12   would say is this application and this letter and this

13   process of dealing with counsel for Port Authority has been

14   absolutely for a legitimate purpose and the purpose is what

15   Your Honor has referenced. That we are entitled to be able

16   to assess whether we should assert the privilege, whether

17   we should assert --

18          THE COURT:  Challenge, whether you should

19   challenge the privilege.

20          MR. MULRY:  Whether we should challenge the

21   privilege.  Mr. Mastro seems to suggest that AAA should

22   just make a motion. That, Your Honor, we would suggest is,

23   would be highly inefficient.  For example, in their letter

24   and today, the Port Authority suggests that the AAA should

25   make a motion on whether the governors' offices are covered
```

42

1   by the Port Authority deliberative process privilege.  Well

2   that wouldn't make any sense in the context of this log,

3   because, first of all, we don't know, we assume because the

4   Jersey and New York governors' offices are within the

5   definition of client, that we would assume that there are

6   some documents that they are involved with here.  We don't

7   know how many, we don't know what categories they're in.

8        Another important point is that even if the

9   deliberative process privilege does apply to a document,

10  again, that's a qualified privilege.  The Court has to

11  balance the factors favoring and disfavoring disclosure.

12  How could we possibly make an argument as to how the Court

13  should balance factors with respect to a document involving

14  the governor's office and the Port Authority if we have no

15  idea what that document is about?  The Court would be at a

16  loss, the Court -- we would be simply guessing and we would

17  be asking the Court to guess as to how to assess that

18  balance.

19       THE COURT:  But what about categories 14 -- I'm

20  sorry, 17 and 18?

21       MR. MULRY:  Seventeen and 18, with respect to, I

22  think the main argument that was being made was that the,

23  our argument on the dates was not applicable to categories

24  17 and 18 and during this process in conversations with Mr.

1
2  Southwell on behalf of the Port Authority, we said, yes,

3  with respect to those two categories, and this is actually

4  before the February 7th letter, I believe, with respect to

5  the, if the decision we're talking about is the proposed

6  toll and fare increase, then that range of documents,

7  October of 2010 to August, 19th of 2011, that would indicate

8  that for those two categories it's pre-decisional, we

9  understand that.  And that's -- so the dates, yes, they're

10  less relevant for those two categories. They're relevant

11  for all the other categories because those other six

12  categories have probably 15 or more different decisions

13  within them. And we have no information on when those

14  decisions that are referenced were made or were not made,

15  or are still being considered. So we simply don't know and

16  we can't assess whether to make an argument --

17          THE COURT:  Well does it have to be a specific

18  decision, doesn't Tighe talk about it being relevant to an

19  issue?

20          MR. MULRY:  It really depends on what is the

21  issue, for example, the argument was made with respect to a

22  continuing discussion, let's say, of deliberative process

23  about a decision on funding a certain project. Well, maybe,

24  it may be that for that category of documents or that

25  specific documents there is not a specific date. But that's

44

1

2  not to say that there is no a specific date for any of the

3  decisions that are listed in the February 7th letter.

4         One thing, and again, we're talking about

5  apparently 200 to 250 documents, so the need for a

6  categorical log becomes less important when you're talking

7  about that, that amount of documents.  Also we don't know

8  what's in these documents, it's hard for us to characterize

9  how they should be described in the context of a

10 categorical log.  It is also possible with regard to a

11 universe of simply 200, 250 documents, that it may be

12 appropriate to have a mixed log where certain documents

13 which are sui generis or unusual should be listed document

14 by document, where there are other groupings of document,

15 which would be more suitable for a categorical log.  So

16 that if there are a number of documents that are from the

17 same individual, to the same individual, on the same topic,

18 at or around the same time, that seems to be a very

19 appropriate set of documents for a categorical log.

20        Our problem again is not with the nature of a

21 categorical log, but its use here that it sweeps in too

22 many documents, with too broad generalizations of

23 descriptions, and the description of authors and recipients

24 with the term client really gives us little guidance as to

25 who are those people. And that's a very important factor in

45

1  a privilege log as to who are the individuals who are

2  sending documents, receiving documents, an what are their

3  positions within an organization.

4       I think there was some references in the early

5  part of Mr. Mastro's presentation where I think he was

6  expressing that I had characterized the need to break out

7  the governors' offices at least in category, if not on a

8  document by document basis because of the high level nature

9  of, of people in the governors' offices. And Your Honor

10  will be the guide but I don't recall arguing that.  What

11  we've raised with respect to the client definition is the

12  uncertainty and the broad generality of the term client.

13  That it really tells AAA nothing about who are the people

14  who are involved in these communications aside from that

15  they're within the Port Authority or the governors' offices

16  of New York and New Jersey.

17       THE COURT:  All right, anything else you want to

18  tell me?

19       MR. MULRY:  Unless Your Honor has questions?

20       THE COURT:  No.

21       MR. MULRY:  That would be all.

22       THE COURT:  All right.  Mr. Mastro.

23       MR. MASTRO:  Just very briefly.

24       THE COURT:  Sure, well it doesn't necessarily have

46

 1   to be brief.  Let me ask you one question, a few questions

 2   at the outset.  Does the amendment to the Local Rule

 3   permitting categorical privilege logs, is that intended to

 4   create, is that intended to alter the nature of the

 5   information that has to be provided on an index of

 6   privilege documents?

 7        MR. MASTRO:  I think, Your Honor, there is no

 8   question that in categorically logging you are altering the

 9   nature of some of the information that you provide.

10        THE COURT:  Does it change the standard of what

11   the proponent of the privilege has to produce?

12        MR. MASTRO:  In terms of the log?

13        THE COURT:  Yeah.

14        MR. MASTRO:  It necessarily permits the proponent

15   of the log to log by categories of people as opposed to

16   specific individuals, by date ranges and then give --

17        THE COURT:  It doesn't say what the structure

18   should be.

19        MR. MASTRO:  It doesn't. But, Your Honor, I think

20   it's necessarily presumed that a categorical log, that it

21   doesn't become necessary to list 100 people who fall into

22   the category who authored or received, that to define the

23   category of people who authored or received in some general

24   sense, to give the date range covered by the documents, and

 1

 2   then to give a description that covers the category of

 3   documents in that particular category, just as if you, if

 4   you did the old fashioned logs, say there was 100 documents

 5   in that category, you would have to do author and recipient

 6   copy, you would have to do the specific date and then you

 7   would do a description of what the document was.  A hundred

 8   of them that are all in that same category of the

 9   description, under a categorical log you describe generally

10   the lawyers at Gibson Dunn to the lawyers at the Port

11   Authority, then you would have the date ranges of the

12   documents and you would have that same general description

13   would have covered all hundred documents.

14           THE COURT:  Well, and it may or may not have --

15           MR. MASTRO:  I understand, but I think we've done

16   that.

17           THE COURT:  But I mean there's some Circuit

18   authority on what should be in an index of privilege

19   documents.  I'm looking at the decision of the Second

20   Circuit in United States v. Construction Product Research

21   73 F. 3d 464, decided by the Court of Appeals in 1996.  I

22   mean to the extent the Local, if the Local Rule is

23   inconsistent with the Court of Appeals' authority, who

24   wins?

25           MR. MASTRO:  Well, Your Honor, that's the Court of

1
2   Appeals' authority for how to do a log before we went to

3   categorical logging, which necessarily allows you to

4   simplify the presentation of the information, or else it

5   wouldn't work, it would be to frustrate the purposes of

6   categorical logging. I would suggest to Your Honor just the

7   following.

8            THE COURT:  Can a District Court and a Local Rule

9   trump the Court of Appeals?

10           MR. MASTRO:  It was a committee with full

11  consideration of what should be involved and it is

12  consistent I would submit with, with the salutary purposes

13  that existed prior to the categorical logging rule, but

14  recognizing --

15           THE COURT:  You didn't answer my question.

16           MR. MASTRO:  Your Honor, I believe that the local

17  district has the discretion to permit categorical logging

18  as long as generally consistent with certain principles.

19           THE COURT:  And if it's inconsistent with the

20  Court of Appeals Rule who wins?

21           MR. MASTRO:  Yes, I think they are consistent,

22  Your Honor, because categorical logging necessarily means

23  that you are, you are describing categories of documents

24  where certain groups of people were involved, certain date

25  ranges and that a general description category, I don't

1                                                                49

2    think there is anything inconsistent with categorical

3    logging. And the Second Circuit's decision sort of defining

4    how an old fashioned log would have been done.  I think the

5    whole point of categorical logging was to recognize that

6    all the documents of my law firm, when I'm communicating

7    with my clients at the Port Authority, I shouldn't have to

8    go name by name, this one was Randy Mastro to, you know,

9    Darryl --

10          THE COURT:  Yeah, but there is case law that says

11   not every communication from a law firm to the client is

12   privileged.

13          MR. MASTRO:  I understand, Your Honor.  The point

14   I'm making, Your Honor, is that the Second Circuit ruling

15   you're referring to was really speaking in a different

16   context and the categorical logging, which is not only the

17   rule now here in our district, after full committee vetting

18   and review, but is also becoming a trend in other

19   jurisdictions. It's consistent with the old, the older

20   rule, but it's a recognition that there are appropriate

21   circumstances for describing by categories of people, date

22   ranges and general description to facilitate this process.

23          THE COURT:  Let me come back to a question I asked

24   before. I mean because the categorical privilege logs are,

25   are a new animal for me at least.  Is there authority from

50

1

2  any Court in any district which has adopted a rule

3  permitting categorical logs which have approved an example?

4  I mean is there any guidance as to what rings the bell?

5          MR. MASTRO:  I know Your Honor asked both of us

6  that question before --

7          THE COURT:  I think before I limited it to the

8  Second Circuit, but let me broaden it to any Court in the

9  country.

10          MR. MASTRO:  Since it is in its infancy, Your

11  Honor, we're not able to cite one to Your Honor, other than

12  by implication the --

13          THE COURT:  Are there commentators who say what

14  should be in a categorical privilege log?

15          MR. MASTRO:  It's, Your Honor, we'd be pleased to

16  try to endeavor to find you more guidance on this subject,

17  but there isn't well developed case law. Again, I was going

18  to say by implication Judge Francis recognized the

19  categorical logs were fine but having had specific items

20  that he was concerned about, that there is guidance that

21  flows from that.

22          THE COURT:  Yeah, and my recollection of what he

23  did is ordered an old, what you characterized as an old

24  fashioned log.

25          MR. MASTRO:  Yes, but that was because, that was

```
 1                                                      51
 2  because he --
 3            THE COURT:  The logs in front of him were
 4  deficient.
 5            MR. MASTRO:  And he told them what to do and they
 6  blew it, and then he did what he did.  We're not talking
 7  about that here.  And I have to say, Your Honor, just a few
 8  --
 9            THE COURT:  I'm just trying to understand what the
10  standard is that has to be met?
11            MR. MASTRO:  Yes, well I think the committee notes
12  give us some, some feel for it, about the need to handle
13  privilege claims in a new and more efficient way.  And that
14  --
15            THE COURT:  No, but at the same time the party has
16  to be able, the party receiving the log has to be able to
17  make an intelligent assessment of the validity of the
18  assertion of the privilege.
19            MR. MASTRO:  I agree with that, Your Honor, I'm
20  just pointing out the committee notes make clear that the
21  rule is intended to --
22            THE COURT:  I've read them.
23            MR. MASTRO:  Facilitate without the need of
24  traditional privilege log.  So let's talk about the
25  sufficiency, Your Honor.  We told them in the categories
```

1                                                           52

2  that client included, and this really seems to be the

3  category they admit they're interested in, the client

4  includes those overseeing the Port Authority which would

5  include the governors' offices.  We already told them, Your

6  Honor, for them to say that they have to assume it, we've

7  already told them that some --

8           THE COURT:  Well you've defined client.  I mean the

9  appendix is defining clients is extremely broadly.

10          MR. MASTRO:  But they already know that documents

11 among deliberative process privilege here includes some

12 communications with each of the two governors' offices.

13 They already know that.  I've said it in open court.  We told

14 it to them on the phone.  They don't have to assume it, Your

15 Honor, they already know that.  It's few, but it's some.

16 And we've already told them that so they don't have to tell

17 you now here today that they have to assume it, I'm telling

18 you and I told them or my colleague Alex Southwell told

19 them before, and it's in our correspondence to Mr. Mulry.

20 So he doesn't have to assume anything and I, and he didn't

21 need to say that to the Court since we wrote it to him on

22 January the 10th.

23          Seventeen and 18, we've made progress here today,

24 Your Honor, he admits that the, that he knows that all the

25 documents in those categories are pre-decisional because

53

1

2 it's the date of the toll increase, and therefore there is

3 application in that regard as to the dates of every

4 document is irrelevant because he already knows they're all

5 pre-decisional.

6          Finally, Your Honor --

7          THE COURT:  I mean the biggest problem I have is

8 with the description and whether or not there is really a

9 meaningful description or whether it just parrots the

10 elements of the privilege.

11          MR. MASTRO:  Okay, well, Your Honor, we were

12 intending to --

13          THE COURT:  I mean ordinarily if you had, you

14 know, if you had a traditional log and a description of

15 what, a description of the document was, you know,

16 confidential communication from lawyer to client disclosing

17 privileged information, there are some decisions that say

18 that kind of bare bones description would not be

19 sufficient.  I mean there is always a tension as to how

20 much you disclose in the description. I mean but I'm

21 concerned about the adequacy of the descriptions here more

22 than anything else.

23          MR. MASTRO:  I would suggest to your, Your Honor,

24 and I, and we were remiss for not doing this earlier, we

25 gave you the original privilege log and we didn't want to

1

2  alter it and then we gave you the several letters that we

3  sent to Mr. Mulry supplementing the explanations.

4          THE COURT:  Yeah, I got those yesterday.

5          MR. MASTRO:  In 24 hours I can get you a chart

6  that will reflect not only the original description but

7  whatever supplementation was done in the letters. And I

8  think Your Honor will see that they are more than

9  sufficient, I hope Your Honor will see that.  But it would

10 be, you're not able to have a complete record if you are

11 just looking at the original log because of the meet and

12 confer process where we provided more information.  And I

13 would also say, Your Honor, on a traditional privilege log,

14 it would not be uncommon to have certain common

15 descriptions that where used repeatedly on the log.  On

16 this particular original log, there are six or seven

17 different formulations of categories that cover a number of

18 topics and then there were subsequent letters that provided

19 even more detail on certain of these categories. So I

20 promise, Your Honor, you'll have that before close of

21 business tomorrow so that you'll be able to see exactly how

22 we described each category after the meet and confer

23 process.

24         THE COURT:  All right.

25         MR. MASTRO:  And I just wanted to say one more

1                                                              55

2   thing, Your Honor.

3              THE COURT:  Go ahead.

4              MR. MASTRO:  Mr. Mulry ended, you know, where I

5   began, which is that this is an attempt to eviscerate or

6   end run the categorical logging process that is now the new

7   rule in our district. He actually said to you, maybe

8   there's some pieces that could be categorical but the rest

9   should be all like a traditional log.  The fact of the

10  matter is they're trying to do an end run about what is now

11  the --

12             THE COURT:  Well I'm not, you know, in light of

13  the progress that counsel has made in the meet and confer,

14  I'm not sure the comment is, is entirely accurate. I mean

15  you've got I think 37 categories here?

16             MR. MASTRO:  That's right, Your Honor.

17             THE COURT:  And we're down to eight and on two of

18  the eight the dates are not, the date of the specific

19  documents are not being pressed. So to suggest he is trying

20  to do an end run around 26.2 I'm not sure is entirely

21  accurate. I mean the amount that is left in dispute is

22  really a fraction of what you started with, so --

23             MR. MASTRO:  I'm simply commenting, Your Honor, on

24  what he said at the end of his last presentation, that

25  maybe what you should do is require that.  That to me is an

1

2  invitation to bypass the rule --

3      THE COURT:  Well, on, I think Judge Francis has

4  done it and if the categorical log is insufficient

5  requiring the traditional log I don't think is an end run

6  around the rule or an implied repealer of the rule. I mean

7  it's been done in the past.

8      MR. MASTRO:  I think Your Honor will see when we

9  couple what additional information we provided with the

10  original descriptions on the log that our descriptions are

11  sufficient.  I also hope, Your Honor will appreciate that

12  having to break down the individual recipients in more

13  detail than this when Mr. Mulry has now come around to

14  acknowledging his end game is documents that went to

15  governors' offices and I have acknowledged that there are

16  some documents that went to governors' offices, he doesn't

17  need the greater specificity to know that there are some

18  such documents.

19      And finally, he doesn't need the greater

20  specificity in the other six categories to know that there

21  are, as he put it there have been 15 or more decisions made

22  in some of these categories at different points in time, so

23  how can knowing the dates make any difference in that

24  context?  And he knows that some of the dates in each of

25  these categories occurred after the passage of the original

1   budget.

2          So we will get you the additional information,

3   Your Honor, if Your Honor permits us, in the next 24 hours,

4   on the categories and descriptions of the privilege log so

5   you can see them exactly based on what additional

6   information we provided to Mr. Mulry during the meet and

7   confers.

8          THE COURT:  No, I mean, look, I got your letter

9   yesterday, Mr. Mastro, and between the time I got it and

10  today I really haven't had a chance to try to fully

11  incorporate what's in the letters into the log to try to

12  get a composite. And if you can prepare a composite just

13  with respect to the categories in issue and you don't even

14  need to address the date issue with respect to 17 and 18,

15  so we're just talking about 8 categories here.

16         MR. MASTRO:  Understood.

17         THE COURT:  But if you can provide an amended log

18  with respect to those 8 categories that reflects the

19  additional information disclosed as a result of the meet

20  and confers that would certainly be helpful.

21         MR. MASTRO:  We will do it, Your Honor.

22         THE COURT:  And, look, I'm not, there is no reason

23  why, to make the life of the Gibson and Dunn associates

24  miserable here, if you can get it to me by Monday, that

```
 1                                                     58
 2  will be fine, okay?
 3            MR. MASTRO:  That's much appreciated, Your Honor.
 4            THE COURT:  But you've got to promise you're not
 5  going to make anybody pull an all nighter tonight.
 6            MR. MASTRO:  I won't, Your Honor.
 7            THE COURT:  Okay?
 8            MR. MASTRO:  My colleagues are extremely grateful,
 9  my partners and associates are extremely grateful.  Thank
10  you.
11            THE COURT:  Life is too short.
12            MR. MASTRO:  Thank you, Your Honor.
13            THE COURT:  Okay?  All right, I'm going to
14  reserve, just submit it without argument because if I get
15  argument from you then I've got to get another round of
16  argument from plaintiff.  So just submit the amended index
17  without, just on those eight categories without argument.
18            MR. MASTRO:  We will, Your Honor.
19            THE COURT:  Okay?  And I'll reserve decision until
20  I get the amended index, okay?
21            MR. MASTRO:  Thank you, Your Honor.
22            THE COURT:  All right?
23            MR. MASTRO:  Much appreciated, pleasure to see you
24  again, Your Honor.
25            THE COURT:  Close of business Monday would be
```

59

1
2   great, okay?

3          MR. MASTRO:   Thank you, Your Honor.

4          THE COURT:   Thanks.

5          MR. MULRY:   Thank you, Your Honor.

6          (Whereupon the matter is adjourned.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

60

<u>C E R T I F I C A T E</u>

I, Carole Ludwig, certify that the foregoing transcript of proceedings in the United States District Court, Southern District of New York, Automobile Club of New York versus The Port Authority of New York and New Jersey, Docket #1:11-cv-06746-RKE-HBP, was prepared using digital electronic transcription equipment and is a true and accurate record of the proceedings.

Signature_____

Date:  June 12, 2013