UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

AUTOMOBILE CLUB OF NEW YORK, INC., :
d/b/a "AAA New York" and "AAA
New Jersey, Inc.",                :

                Plaintiffs,    :    11 Civ. 6746 (RKE)(HBP)

   -against-                     :    OPINION
                                    AND ORDER
THE PORT AUTHORITY OF NEW YORK     :
AND NEW JERSEY,
                             :
                Defendant.     :
----------------------------------X

PITMAN, United States Magistrate Judge:


I.  Introduction


      By notice of motion dated August 6, 2013 (Docket Item

91), Automobile Club of New York, Inc., doing business as "AAA

New York" and "AAA New Jersey" (collectively "AAA") move to

compel the production of documents withheld by the Port Authority

of New York and New Jersey (the "Port Authority") pursuant to the

deliberative process privilege.  For the reasons set forth below,

AAA's motion is denied.

II.  <u>Facts</u>

    A.  Relevant Factual and
       <u>Procedural Background</u>

     The facts and allegations in this action are set forth
in the decision of the Honorable Richard J. Holwell, United
States District Judge (retired), addressing AAA's motion for a
preliminary injunction and defendant's cross motion to dismiss,
<u>Auto Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.</u>, 842 F.
Supp. 2d 672 (S.D.N.Y. 2012), and my prior Opinion and Order,
<u>Auto Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.</u>, 297 F.R.D.
55 (S.D.N.Y. 2013), and may be briefly summarized.

     AAA alleges that the Port Authority approved certain
toll increases in the Port Authority's Integrated Transportation
Network ("ITN") in order to fund, among other things, real estate
development at the World Trade Center site (Complaint, dated
Sept. 27, 2007, (Docket Item 1) ("Compl.") ¶¶ 34-45).  AAA
contends that these toll increases violate the dormant Commerce
Clause because they were enacted to fund projects outside the ITN
Network, and, therefore, (1) do not represent a fair approxima-
tion of the use of ITN facilities and (2) are excessive in
relation to the benefits conferred to toll payers (Memorandum of
Law in Support of Plaintiffs' Motion for a Preliminary Injunc-

tion, dated Sept. 26, 2011, (Docket Item 32) ("Pls.' P.I. Mem.")
at 10).  AAA also contends that the toll increases violate the
Surface Transportation and Uniform Relocation Act of 1987 (the
"Highway Act"), 33 U.S.C. § 508, because they are not "just and
reasonable" (Pls.' P.I. Mem. at 6-7).  AAA sought a preliminary
injunction to reverse the toll increases, and continues to seek
declaratory and injunctive relief (Compl. ¶¶ 46-51).

       Judge Holwell denied AAA's motion for a preliminary
injunction and converted the Port Authority's cross-motion to
dismiss into a motion for summary judgment, reserving decision on
the cross-motion pending the completion of relevant discovery.
Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J., supra, 842
F. Supp. 2d at 681.  Judge Holwell's decision confined discovery
to "financial documents or correspondence not yet provided for
public review."  Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. &
N.J., supra, 842 F. Supp. 2d at 61.  Several subsequent orders
limited discovery to ITN "revenues and expenses for the years
2007 forward" and "the reasons for the toll increases" (Docket
Items 41 & 69).

       Pursuant to Fed.R.Civ.P. 26 and Local Civil Rule
26.2(c), the Port Authority provided AAA with a privilege log
that identified withheld documents on a categorical basis (Ex. B
to the Declaration of Kevin P. Mulry, Esq., dated Aug. 6, 2013,

3

(Docket Item 92) ("Mulry Decl.")).  Among other things, the
privilege log defined eight categories of documents -- 17, 18,
19, 20, 24, 25, 26, and 27 -- over which the Port Authority
claimed the deliberative process privilege and listed for each
category the "Date," "Doc Type," "Authors," "Recipients," "Privi-
lege Description" and "Privilege Reason" (Ex. B to Mulry Decl.).

        AAA subsequently moved for an Order directing that the
Port Authority supplement its privilege log.  AAA contended that
the privilege log did not provide sufficient detail in the
"Privilege Description," "Date," "Authors," and "Recipients"
columns and defined the term "Client" too broadly (Letter from
Kevin P. Mulry, Esq., dated Feb. 27, 2013, at 2-3).

        In a Memorandum Opinion and Order dated May 8, 2013
("May 8 Order"), I granted AAA's motion in part.  In that Order,
I concluded that certain aspects of the privilege log provided
sufficient detail, while other aspects needed to be supplemented.
For example, with respect to "Privilege Descriptions" in the Port
Authority's privilege log, I concluded:

            These descriptions provide an adequate basis for
        AAA to evaluate the Port Authority's assertion of the
        deliberative process privilege.  The descriptions state
        that these documents reflected the personal opinions of
        their authors, rather than the stated policy of the
        agency.  Moreover, the descriptions go beyond a generic
        recitation of the elements of the deliberative process
        privilege.  They specifically identify the decision --
        the 2011 proposed toll and fare increases -- and pro-

4

vide an overview of the opinions, options and recommendations that the Port Authority evaluated.  This information is relevant in assessing whether the documents were created as part of the process by which the Port Authority makes decisions.  While I express no opinion on whether the Port Authority has properly asserted the deliberative process privilege, I do find that the description of the documents' contents is sufficiently detailed.

Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J., supra, 297 F.R.D. at 61.  However, with respect to the Port Authority's use of the word "Client" in its privilege log, I found:

> As defined by the Port Authority, "[t]he term 'Client' means and refers to the Port Authority, its employees, commissioners, and/or individuals at the New York or New Jersey governors' offices in the course of their duties to oversee the Port Authority."  This definition essentially sweeps in all employees of the Port Authority, without distinguishing the role that a particular author or recipient of a withheld document played at the Port Authority.

> \*       \*       \*

> Accordingly, the Port Authority is directed to supplement its index by providing the number of individuals that comprise the "Authors" and "Recipients" of each of the eight challenged categories.  If there are ten or fewer individuals, the Port Authority is directed to specifically identify these individuals.  This limited supplementation is appropriate given that the purpose of categorical privilege logs, as detailed above, is to reduce the potential burdens imposed by a document-by-document privilege log in cases involving high volumes of privileged material.  If there are only a relatively small number of individuals encompassed within the term "Client" as it is used in each of the challenged categories, the risk of burdensomeness is low and the efficiencies associated with a categorical log are not as compelling.  If there are more than ten individual "Authors" or "Recipients" in any category,

5

> the Port Authority is to identify, by name and title, the most highly placed individual and the least highly placed individual with respect to each category.

Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J., supra, 297 F.R.D. at 62-64.

Pursuant to my May 8 Order, the Port Authority submitted a revised privilege log accompanied by the declaration of Patrick J. Foye, Executive Director of the Port Authority, setting forth the factual basis for the agency's assertion of the privilege (Ex. A & C to Mulry Decl.).

B.  The Instant Dispute

AAA now seeks an Order compelling the production of the 339 documents the Port Authority continues to withhold pursuant to the deliberative process privilege (Docket Item 91).  AAA claims that the privilege has not been invoked by the appropriate officials and that the privilege log provides insufficient information to assess the assertions of the privilege.  In the alternative, AAA claims that, on balance, its need for the underlying information outweighs the Port Authority's interest in keeping its internal deliberations confidential (Plaintiffs' Memorandum of Law in Support of Motion to Compel, dated Aug. 6, 2013, (Docket Item 93) ("Pls.' Mem.")).

III.  Analysis

    A.  Applicable Law

        1.  The Deliberative Process Privilege[1]

        The deliberative process privilege was comprehensively described by the Honorable Richard J. Sullivan, United States District Judge, in MacNamara v. City of New York, supra, 249 F.R.D. at 77-78:

> "The deliberative process privilege is designed to promote the quality of agency decisions by preserving and encouraging candid discussion between officials. It is based on 'the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.'" Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 356 (2d Cir. 2005) (quoting Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001)). An "inter- or intra-agency document" may be subject to the privilege if it is both (1) "predecisional" and (2) "deliberative." La Raza, 411 F.3d at 356 (quoting Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999)) (additional internal citations omitted).

---

[1] The deliberative process privilege often arises in actions where a party seeks documents from the federal government under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(5). However, the privilege as codified by FOIA is still applied like a common-law privilege. See, e.g., In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997). "Thus, in addressing the privilege, district courts in this Circuit and elsewhere frequently rely on authority applying the privilege in both FOIA and non-FOIA actions." See, e.g., McNamara v. City of New York, 249 F.R.D. 70, 77 n.6 (S.D.N.Y. 2008) (Sullivan, D.J.) (collecting cases).

A document is predecisional "when it is prepared in order to assist an agency decisionmaker in arriving at his decision."  Tique v. United States Dep't of Justice, 312 F.3d 70, 80 (2d Cir. 2002).  The Second Circuit has noted some factors to consider in determining whether a document is "predecisional," including whether the organization asserting the privilege can (1) "pinpoint the specific . . . decision to which the document correlates" and (2) "verify that the document precedes, in temporal sequence, the 'decision' to which it relates."  Grand Cent. P'ship, 166 F.3d at 482 (quoting Providence Journal Co. v. United States Dep't of the Army, 981 F.2d 552, 557 (1st Cir. 1992)).

A document is deliberative when it is "actually . . . related to the process by which policies are formulated."  Grand Cent. P'ship, 166 F.3d at 482 (citing Hopkins, 929 F.2d at 84) (additional citation and internal quotation marks omitted).  In other words, "the privilege does not protect a document which is merely peripheral to actual policy formation; the record must bear on the formulation or exercise of policy-oriented judgment."  Tique, 312 F.3d at 80 (internal quotation marks and citation omitted).  Thus, the privilege "focus[es] on documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"  Grand Cent. P'ship, 166 F.3d at 482 (quoting Hopkins, 929 F.2d at 84-85) (additional internal quotation marks and citation omitted).  In particular, it is well-settled that "[d]raft documents, by their very nature, are typically predecisional and deliberative.  They reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation either by their authors or by superiors."  Exxon Corp. v. Dep't of Energy, 585 F. Supp. 690, 698 (D.D.C. 1983) (internal quotation marks and citation omitted); see also Nat'l Council of La Raza v. Dep't of Justice, 339 F. Supp. 2d 572, 573 (S.D.N.Y. 2004) ("Drafts and comments on documents are quintessentially predecisional and deliberative.").

Nevertheless, a document is not "deliberative" where it concerns "purely factual" information regard-

8

ing, for example, investigative matters or factual
observations.  See Grand Cent. P'ship, 166 F.3d at 482;
Hopkins v. U.S. Dep't of Hous. and Urban Dev., 929 F.2d
81, 85 (2d Cir. 1991).  "Thus, factual findings and
conclusions, as opposed to opinions and recommenda-
tions, are not protected."  E.B. v. New York City Bd.
Of Educ., 233 F.R.D. 289, 292 (E.D.N.Y. 2005) (internal
quotation marks and citation omitted).

(internal footnote omitted).

Importantly, "[t]he Supreme Court has held that materi-
als are not to be withheld on the basis of the deliberative
process privilege simply because the agency deems them confiden-
tial and would prefer not to disclose them."  Toney-Dick v. Doar,
12 Civ. 9162 (KBF), 2013 WL 5549921 at *2 (S.D.N.Y. Oct. 3, 2013)
(Forrest, D.J.), citing Tigue v. U.S. Dep't of Justice, supra,
312 F.3d at 77.  "The deliberative process privilege does not
provide a blanket basis upon which to withhold documents that an
agency has created during its decision-making process."  Toney-
Dick v. Doar, supra, 2013 WL 5549921 at *1.  "Indeed, if that
were the case, the deliberative process privilege would provide
an exemption from the discovery rules for decision-making agen-
cies generally -- and that, of course, is not the law."  Toney-
Dick v. Doar, supra, 2013 WL 5549921 at *1.

Several procedural requirements must be met in order to
properly invoke the privilege.  First, the privilege must be
invoked "by the head of the governmental agency which has control

9

over the information to be protected, after personal review of
the documents in question" or by a subordinate designee of high
authority.  Reino De Espana v. Am. Bureau of Shipping, 03 Civ.
3573 (LTS)(RLE), 2005 WL 1813017 at *12 (S.D.N.Y. Aug. 1, 2005)
(Ellis, M.J.), quoting Flaherty v. Giambra, No. 02-CV-0243E (SR),
2004 WL 816906 at *1 (W.D.N.Y. Jan. 27, 2004); accord In re
Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 643 F.
Supp. 2d 439, 443 (S.D.N.Y. 2009) (Scheindlin, D.J.); In re
Grand Jury Subpoena Dated August 9, 2000, 218 F. Supp. 2d 544,
552-53 (S.D.N.Y. 2002) (Chin, D.J.).  Second, "the person assert-
ing the privilege must have personally reviewed the purported
privileged matter" and "provide[d] specific reasons for the
assertion of the . . . privilege with an affidavit contemporane-
ous with the assertion of such privilege." Martin v. N.Y.C.
Transit Auth., 148 F.R.D. 56, 59-60 (E.D.N.Y. 1993); Resolution
Trust Corp. v. Diamond, 137 F.R.D. 634, 641 (S.D.N.Y. 1991)
(Carter, D.J.).  These requirements "rest[] on the notion that
the decisionmaker is in the best position to know what documents
were prepared to assist a decision, what documents express
deliberative opinions, and what documents must be protected in
order to maintain internal candor." In re MTBE Prods. Liab.
Litig., supra, 643 F. Supp. 2d. at 443.

2.   The Requirement of an
Index of Documents Withheld
<u>on the Ground of Privilege</u>

Federal Rule of Civil Procedure 26(b)(5)[2] and Local

Civil Rule 26.2[3] both require that a party withholding documents

---

[2]Fed.R.Civ.P. 26(b)(5)(a) provides:

When a party withholds information otherwise
discoverable by claiming that the information is
privileged or subject to protection as trial
preparation material, the party must:

(i)  expressly make the claim; and

(ii) describe the nature of the documents,
communications, or tangible things not produced or
disclosed -- and do so in a manner that, without
revealing information itself privileged or
protected, will enable other parties to assess the
claim.

[3]Local Civil Rule 26.2 provides:

(a) Unless otherwise agreed by the parties or
directed by the Court, where a claim of privilege is
asserted in objecting to any means of discovery or
disclosure . . . and an answer is not provided on the
basis of such assertion,

(1) the person asserting the privilege shall
identify the nature of the privilege (including
work product) which is being claimed and, if the
privilege is governed by state law, indicate the
state's privilege rule being invoked; and

(2) the following information shall be
provided in the objection . . . unless divulgence
of such information would cause disclosure of the
allegedly privileged information:

(continued...)

on the basis of a privilege prepare an index of the withheld documents.  Local Civil Rule 26.2 also authorizes the use of a categorical privilege log, providing that "when asserting privilege on the same basis with respect to multiple documents, it is presumptively proper to provide the information required by this rule by group or category."  Although the Local Civil Rule does not define what information must be included in a categorical privilege log, Fed.R.Civ.P. 26 applies with the same force to a categorical log as it does to a traditional log that lists each document individually.  Accordingly, a categorical privilege log is adequate if it provides information about the nature of the withheld documents sufficient to enable the receiving party to make an intelligent determination about the validity of the assertion of the privilege.  See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 274 F.R.D. 106, 112 (S.D.N.Y. 2011) (Scheindlin, D.J.) ("The standard for testing the adequacy of the privilege log is whether, as to each document, it sets

---

[3](...continued)
               (A) For documents:  (i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other. . . .

forth specific facts that, if credited, would suffice to estab-
lish each element of the privilege or immunity that is claimed."
(internal footnote and quotation marks omitted)); City of New
York v. Grp. Health, Inc., 06 Civ. 13122 (RJS)(RLE), 2008 WL
4547199 at *3 (S.D.N.Y. Oct. 10, 2008) (Ellis, M.J.) ("Litigants
seeking to invoke the deliberative process privilege must, among
other things, identify and describe the information or documents
sought, and provide 'precise and certain' reasons for asserting
confidentiality over the requested information." (internal
citation omitted)); Orbit One Commc'ns, Inc. v. Numerex Corp.,
255 F.R.D. 98, 109 (S.D.N.Y. 2008) (Francis, M.J.) ("Lowenstein
must justify its assertion of privilege with regard to each
category, and the description of each category must provide
sufficient information for Numerex to assess any potential
objections to the assertions of attorney-client privilege.").

     Where a properly prepared index of withheld documents
has been served, the withholding party's obligation to produce
evidence to sustain its assertions of privilege should be limited
to those elements of the privilege or protection challenged by
the adversary.  8 Charles Alan Wright, Arthur R. Miller & Mary
Kay Kane, Federal Practice & Procedure § 2016.1 at 318 n.1 (3d
ed. 2010), citing S.E.C. v. Beacon Hill Asset Mgmt. LLC, 231
F.R.D. 134, 140 (S.D.N.Y. 2004); ECDC Envtl., L.C. v. N.Y. Marine

& Gen. Ins. Co., 96 Civ. 6033 (BSJ)(HBP), 1998 WL 614478 at *3-*4
(S.D.N.Y. June 4, 1998).  As the party asserting privilege,
defendants have the burden of establishing through its privilege
log, affidavits, or other evidentiary material that the elements
of the privilege exist.  See Johnson Matthey, Inc. v. Research
Corp., 01 Civ. 8115 (MBM)(FM), 2002 WL 31235717 at *3 (S.D.N.Y.
Oct. 3, 2002) (Maas, M.J.) ("[W]here the information in the log
is insufficient to establish a factual basis for the privilege,
the proponent of the privilege bears the burden of showing its
applicability, a gap which often is filled through an affidavit
or deposition testimony.").

   B.  AAA's Specific Challenges

      1.  Invocation of the Privilege

      Submitted with the Port Authority's revised privilege
log is the declaration of Patrick Foye, the Executive Director
for the Port Authority.  Foye's declaration states that he has
reviewed the 339 documents withheld pursuant to the deliberative
process privilege and has found them to be predecisional and
deliberative (Ex. C to Mulry Decl. at ¶¶ 1-4).  AAA contends that
an unspecified number of the 339 documents are communications
between the Port Authority and individuals in the New York and

14

New Jersey Governors' offices ("Inter-Agency Communications"),
and that Foye's declaration is insufficient to invoke the delib-
erative process privilege as to those documents.  AAA claims that
in order to sustain its claim of privilege, the Port Authority
must also submit an affidavit or declaration from the heads of
both the New York and New Jersey Governors' offices with respect
to the Inter-Agency Communications.  AAA claims that the Port
Authority's failure to do so constitutes a waiver of the privi-
lege (Pls.' Mem. at 4-5 and n.1).

AAA's argument is unpersuasive.  As explained above,
invocation of the deliberative process privilege requires an
affidavit or declaration from the head of the governmental agency
with control of the withheld documents.  It is undisputed that
the Port Authority has control over the Inter-Agency Communica-
tions, and, therefore, Foye, as the Executive Director for the
Port Authority, is the appropriate agency official to invoke the
deliberative process privilege on the Port Authority's behalf.

AAA argues, without citation to any authorities, that
Foye is the wrong individual to invoke the privilege and that
affidavits must be submitted by the New York and New Jersey
Governors' Offices because they received the documents (Pls.'
Mem. at 5).  There is no legal requirement that invocation of the
deliberative process privilege requires an affidavit from every

15

recipient of the documents in issue.  Rather, as noted above, the proper invocation of the privilege requires only an affidavit from the head of the agency with control of the documents.  AAA's argument in this regard is based on a non-existent legal principle.

Accordingly, the Port Authority has properly invoked the deliberative process privilege over the Inter-Agency Communications.

    2.  Sufficiency of the Port
        Authority's Revised Privilege Log

Although AAA concedes that the revised privilege log is in compliance with my May 8 Order, it, nevertheless, contends that the Port Authority has waived the deliberative process privilege by failing to provide sufficiently descriptive information in its revised privilege log.  Specifically, AAA claims that the author and recipient information is insufficiently detailed because the Port Authority has not provided "the identities, titles, and roles of the authors, recipients and those CC'ed on [the withheld] communications" (Pls.' Mem. at 7).  AAA also argues that the descriptions of the categories of withheld documents are "vague" and "conclusory" (Pls.' Mem. at 10). Additionally, as to the Inter-Agency Communications, AAA claims

that the Port Authority has not provided sufficient information upon which the court can determine whether the New York and New Jersey Governors' offices were participants in the decision to raise the tolls.  Finally, AAA asserts that any purely factual material in the documents must be disclosed (Pls.' Mem. at 11).

AAA appears to misunderstand my May 8 Order.  In that Order, I resolved the dispute concerning the sufficiency of the Port Authority's privilege log pursuant to Fed.R.Civ.P. 26 and Local Civil Rule 26.2, i.e., whether the Port Authority's privilege log contained "sufficient information such that [AAA could] make an intelligent determination as to whether the withheld documents were 'predecisional' and 'deliberative.'"  Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J., supra, 297 F.R.D. at 60.  As indicated on pages 4, 5 and 6 above, in my May 8 Order I found that certain aspects of the Port Authority's privilege log were sufficiently detailed, while others needed to be supplemented.  AAA concedes that the Port Authority submitted a revised privilege log that complies with my May 8 Order (Pls.' Mem. at 7).  Because the Port Authority's revised log complies with my May 8 Order, the issue of whether the log provides adequate information is now off the table and the only remaining question is whether the information in the revised privilege log establishes, for each category of documents, that the documents are

both pre-decisional and deliberative.  <u>Favors v. Cuomo</u>, 285

F.R.D. 187, 221 (E.D.N.Y. 2012); <u>Bowne of N.Y.C., Inc. v. AmBase</u>

<u>Corp.</u>, 150 F.R.D. 465, 470 (S.D.N.Y. 1993) (Dolinger, M.J.).  If

AAA thought my May 8 Order did not require sufficient informa-

tion, its remedy was to seek reconsideration or to file objec-

tions with Judge Eaton.  Having done neither, there is no basis

to revisit the issues resolved in that Order.

However, instead of arguing that the entries do not

establish the elements of any privilege, AAA renews its argument

that the privilege log is insufficiently detailed.  For example,

AAA's memorandum of law states "[a]though the Port Authority has

supplemented the privilege log as directed by the Court, the

definition of 'Client' is still inadequate because it is so broad

that it ceases to be meaningful" (Pls.' Mem. at 7 (internal

quotation marks omitted); <u>see also</u> Pls. Mem. at 8).  AAA's

memorandum of law also states that "[t]he vague and formulaic

description provided by the Port Authority does not satisfy its

burden of demonstrating that the privilege applies, and for that

reason the withheld documents should be produced" (Pls.' Mem. at

10).  Because my May 8 Order and the Port Authority's subsequent

remedial steps addressed these arguments, I reject AAA's attempt

to reassert them here.

I also reject AAA's argument that there is insufficient information to determine whether individuals at the New York and New Jersey Governors' offices were participants in the deliberative process leading up to the 2011 toll increases.  The Port Authority states that it regularly updated officials at the New York and New Jersey Governors' offices regarding the Port Authority's activities, and the 2011 toll increases in particular (Defendant's Opposition to Plaintiffs' Motion to Compel, dated Aug. 29, 2013, (Docket Item 94) ("Def.'s Mem.") at 16, <u>citing</u> Bill Baroni Dep. Tr. 147:9-18, <u>and</u> Ex. 8 to Declaration of Alexander H. Southwell, dated Aug. 28, 2013, (Docket Item 95)).  Counsel represents that the Port Authority apprised both Governors' offices of the Port Authority's planned toll increases because those offices had the power to veto any toll increases approved by the Port Authority's Commissioners (Def.'s Mem. at 16).  <u>See</u> N.J. Stat. Ann. § 32:1-17; N.Y. Unconsol. Law § 6417; <u>Hess v. Port Auth. Trans-Hudson Corp.</u>, 513 U.S. 30, 37 (1994) ("The Governor of each State may veto actions of the Port Authority commissioners from that State, including actions taken as PATH directors.").  Communications reflecting internal deliberations between government officials and their superiors regarding the prospective enactment of a policy are the quintessential examples of communications covered by the deliberative process

privilege.  Nat'l Day Laborer Org. Network v. U.S. Immigration &
Customs Enforcement Agency, 811 F. Supp. 2d 713, 756-57 (S.D.N.Y.
2011) (Scheindlin, D.J.); McNamara v. City of New York, supra,
249 F.R.D. at 81 ("[A] document may be deemed 'deliberative' not
only where it explicitly weighs competing policy alternatives,
but also where it contains a preliminary outline of a policy
prepared by lower-ranking government officials for presentation
to a superior with final policymaking authority."); Tarullo v.
U.S. Dep't of Def., 170 F. Supp. 2d 271, 277-78 (D. Conn. 2001).

       Finally, counsel for the Port Authority represents in
its opposition brief that none of the 339 documents contain
purely factual material that can be separated from deliberative
analyses (Def.'s Mem. at 8 n.4).  In light of counsel's represen-
tation, which AAA provides no reason to question, AAA's motion to
compel the production of purely factual material in the Port
Authority's privilege log is denied.

       3.   Balancing the Parties' Interests

       A finding that a document is protected under the
deliberative process privilege does not, however, end the analy-
sis because the deliberative process privilege is not absolute.

              [T]he deliberative process [is a] qualified privi-
         lege[] and, therefore, "when the existence of [the]
         privilege is established, there is a need to balance

the public interest in nondisclosure against the need of the particular litigant for access to the privileged information." <u>United States v. United States Currency in Sum of Twenty One Thousand Nine Hundred Dollars</u>, No. 98 Civ. 6168 (SJ), 1999 WL 993721, at *2 (E.D.N.Y. Sept. 21, 1999) (citing <u>Friedman v. Bache Halsey Stuart Shields</u>, 738 F.2d 1336, 1341 (D.C. Cir. 1984), <u>and Raphael v. Aetna Cas. & Sur. Co.</u>, 744 F. Supp. 71, 74-75 (S.D.N.Y. 1990)) (additional internal citation omitted).

Thus, in assessing the government's assertion of privilege, "[t]he court must balance the interests favoring and disfavoring disclosure, keeping in mind that the burden of persuasion rests on the party seeking to prevent disclosure.  The court must also consider the value of appropriate protective orders and redactions." <u>King</u>, 121 F.R.D. at 190-91; <u>see also Kitevski v. City of New York</u>, No. 04 Civ. 7402 (RCC)(RLE), 2006 WL 680527, at *3 (S.D.N.Y. March 16, 2006) ("Whether the showing of relevance and need rises to the requisite level is a discretionary determination that must necessarily be made on a case-by-case basis."); <u>United States v. Sawinski</u>, No. 00 Crim. 0499 (RPP), 2000 WL 1702032, at *3 (S.D.N.Y. Nov. 14, 2000) (citing <u>In re Sealed Case</u>, 856 F.2d 268, 272 (D.C. Cir. 1988)).

<u>MacNamara v. City of N.Y.</u>, <u>supra</u>, 249 F.R.D. at 79-80.

In balancing the parties' interests,

[f]actors favoring disclosure include (1) the relevance of the requested materials to the [requesting party's] case, (2) the importance of the materials to the [requesting party's] case, including the availability of the information from alternative sources, (3) the strength of the [requesting party's] case . . . , and (4) the importance [of disclosure] to the public interest.  Factors against disclosure include (1) threats to public safety, (2) the invasion of government officials' privacy, (3) the weakening of government programs, and (4) the chilling of internal candor.

21

In re MTBE Prods. Liab. Litig., supra, 643 F. Supp. 2d at 442-43;
see also In re Delphi Corp. v. United States, 276 F.R.D. 81, 85-
86 (S.D.N.Y. 2011) (Castel, D.J.), citing Export-Import Bank of
the U.S. v. Asia Pulp & Paper Co., 232 F.R.D. 103, 109 (S.D.N.Y.
2005) (Francis, M.J.).

　　　　The importance of the evidence to the plaintiffs' case,
or the plaintiffs' need for the evidence, has consistently been
found to be "the most important of all factors." King v. Conde,
121 F.R.D. 180, 194 (E.D.N.Y. 1988); Otterson v. Nat'l R.R.
Passenger Corp., 228 F.R.D. 205, 209 (S.D.N.Y. 2005) (Kaplan,
D.J.); Export-Import Bank of the U.S. v. Asia Pulp & Paper Co.,
supra, 232 F.R.D. at 109, citing In re Franklin Nat. Bank Secs.
Litig., 478 F. Supp. 577, 580-82 (E.D.N.Y. 1979).  The critical
inquiry is ordinarily whether the government's deliberations,
motivations, or thought process themselves are genuinely in issue
in the case, and the privilege is routinely found to be inappli-
cable where the agency deliberations are central to the case.
See, e.g., In re Delphi Corp. v. United States, supra, 276 F.R.D.
at 85-86 ("Where the deliberative or decisionmaking process is
the 'central issue' in the case, the need for the deliberative
documents will outweigh the possibility that disclosure will
inhibit future candid debate among agency decision-makers.");
MacNamara v. City of New York, 04 Civ. 9612 (KMK)(JCF), 2007 WL

755401 at *10 (S.D.N.Y. Mar. 14, 2007) (Francis, M.J.) ("Accordingly, 'in a civil rights action where the deliberative process of State or local officials is itself genuinely in dispute, privileges designed to shield that process from public scrutiny must yield to the overriding public policies expressed in the civil rights laws.'" (quoting Grossman v. Schwarz, 125 F.R.D. 376, 381 (S.D.N.Y. 1989) (Wood, D.J.)); Nat. Res. Def. Council v. Fox, 94 Civ. 8424 (PKL)(HBP), 1998 WL 158671 at *5 (S.D.N.Y. Apr. 6, 1998); Dep't of Econ. Dev. v. Arthur Anderson & Co., 139 F.R.D. 295, 299 (S.D.N.Y. 1991) (Stewart, D.J.) ("Where the adjudication of fraud claims turns upon issues of [the agency's] knowledge, reliance, and causation, direct evidence of the deliberative process is irreplaceable."); Resolution Trust Corp. v. Diamond, supra, 773 F. Supp. at 605 ("[T]he considerations that RTC took into account in its deliberations are directly in issue in this case, making the contested evidence highly relevant by the very fact that it is deliberative."); Burka v. N.Y.C. Transit Auth., 110 F.R.D. 660, 667 (S.D.N.Y. 1986) (Francis, M.J.) ("Where the decision-making process itself is the subject of the litigation, the deliberative privilege may not be raised as a bar against disclosure of critical information.").

Here, AAA argues that documents in categories 17, 18, 19 and 20 should be produced because the "reasons for the toll

increases, and the deliberations and the decision of the Port
Authority Commissioners to approve the toll increases, are cental
to [its] case" (Pls.' Mem. at 12-13).

I conclude that AAA's claims under the dormant Commerce
Clause and the Highway Act do not turn on the Port Authority
Commissioners' internal deliberations or motivations and that
AAA's interests do not, therefore, outweigh the interests pro-
tected by the deliberative process privilege.

In Northwest Airlines, Inc. v. Cnty. of Kent, 510 U.S.
355, 369 (1994), the Supreme Court held that the constitutional-
ity of a fee charged for the use of state facilities is evaluated
by a three-part test, which asks whether the fee "(1) is based on
some fair approximation of use of the facilities, (2) is not
excessive in relation to the benefits conferred, and (3) does not
discriminate against interstate commerce."  Here, AAA alleges
that the 2011 toll increases fail under parts (1) and (2) of the
test.  Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.,
supra, 842 F. Supp. 2d at 677.[4]

The law of this Circuit following Northwest Airlines
demonstrates, however, that fair approximation and excessiveness

_____

[4]The parties agree that the three-part test in Northwest
Airlines applies.  Auto. Club of N.Y., Inc. v. Port Auth. of N.Y.
& N.J., supra, 842 F. Supp. 2d at 677.

are evaluated by objective factors -- how a toll operates in
practice -- and not the internally stated reasons for its enact-
ment.  In <u>Selevan v. N.Y. Thruway Auth.</u>, 711 F.3d 253 (2d Cir.
2013) (<u>per</u> <u>curiam</u>), for example, the Second Circuit considered
whether the New York Thruway Authority's policy to give a special
toll discount to residents of Grand Island, New York was consti-
tutional under <u>Northwest Airlines</u>.  In assessing whether the toll
discount was a fair approximation of the use of the bridge, the
<u>Selevan</u> Court concluded that the relevant inquiry is whether
"each user, on the whole, pays <u>some</u> approximation of his or her
fair share of maintaining the bridge."  <u>Selevan v. N.Y. Thruway
Auth.</u>, <u>supra</u>, 711 F.3d at 259.  The Court found that the toll
discount met the fair approximation prong by comparing the use of
the bridge by Grand Island residents and non-residents with the
tolls rates residents and non-residents were required to pay.
Similarly, in finding that the toll discount was not excessive in
relation to the benefits conferred, the Court compared the
Authority's revenues from the toll with its operating and capital
expenses. <u>Selevan v. N.Y. Thruway Auth.</u>, <u>supra</u>, 711 F.3d at 260.
Significantly, the <u>Selevan</u> Court did not consider the Authority's
motivations for enacting the toll policy or its internal deliber-
ations in assessing prongs (1) and (2) of the <u>Northwest Airlines</u>
test.

Other decisions in this Circuit and elsewhere have utilized the same objective approach and have not considered either the intent of the decision makers or the process by which the decision makers made their determination.  See, e.g., Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth., 567 F.3d 79, 86-88 (2d Cir. 2009); Janes v. Triborough Bridge & Tunnel Auth., --- F. Supp. 2d ---, ---, 06 Civ. 1427 (PAE), 2013 WL 5630629 at *18-*20 (S.D.N.Y. Oct. 16, 2013) (Engelmayer, D.J.); Cohen v. R.I. Turnpike & Bridge Auth., 775 F. Supp. 2d 439, 448-50 (D.R.I. 2011); see also Northwest Airlines, Inc. v. Cnty. of Kent, supra, 510 U.S. at 369-72.

The fact that AAA has also asserted a claim under the Highway Act, 33 U.S.C. § 508, does not change the result.  The prevailing standard, whether a toll increase is "just and reasonable," turns on whether proceeds from a particular toll increase are allocated to fund projects within the Port Authority's ITN. Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J., 887 F.2d 417, 423 (2d Cir. 1989).  Since this question may be answered by a reviewing the Port Authority's revenues and expenditures, the internal deliberations of the Port Authority Commissioners are not central to AAA's Highway Act claim either.

Accordingly, because AAA's claims pursuant to the dormant Commerce Clause and the Highway Act do not turn on the

internal deliberations of the Port Authority Commissioners, I conclude that AAA's interest in disclosure is not sufficient to outweigh the interests protected by the deliberative process privilege.

C. <u>In Camera Review</u>

Finally, AAA requests that I conduct an <u>in camera</u> review of the 339 withheld documents.  AAA contends that an <u>in camera</u> review is particularly appropriate here, where the privilege log and declaration contain insufficient information to assess whether the deliberative process privilege is applicable.

"<u>In camera</u> review is considered the exception, not the rule, and the propriety of such review is a matter entrusted to the district court's discretion." <u>Local 3, Int'l Bd. of Elec. Workers v. NLRB</u>, 845 F.2d 1177, 1180 (2d Cir. 1988), <u>citing</u> <u>Donovan v. F.B.I.</u>, 806 F.2d 55, 59 (2d Cir. 1986), <u>abrogated</u> <u>on other grounds</u>, <u>U.S. Dep't of Justice v. Landano</u>, 508 U.S. 165 (1993).  I decline to conduct an <u>in camera</u> review here principally because AAA has failed to make specific challenges to individual entries in the Port Authority's privilege log.  The information in the Port Authority's privilege log provides AAA with more than enough information to make challenges to individual categories of documents, but AAA has declined to do so.  In

27

the absence of argument from the parties directed to specific documents, in camera review would require me to parse through the documents and guess what arguments AAA would or could make in support of production and what arguments the Port Authority would or could make in opposition to production.  I decline to engage in such a speculative undertaking.  Accordingly, AAA's request for in camera review is denied.  Accord In re Delphi Corp., supra, 276 F.R.D. at 87; see also Kalwasinski v. Fed. Bureau of Prisons, 08 Civ. 9593 (PAC)(MHD), 2010 WL 2541363 at *10 n.12 (S.D.N.Y. Mar. 12, 2010) (Dolinger, M.J.) (Report & Recommendation), adopted at, 2010 WL 2541159 (S.D.N.Y. June 23, 2010).

IV.  Conclusion

        Accordingly, for all the foregoing reasons, AAA's motion to compel (Docket Item 91) is denied in its entirety.

Dated:  New York, New York
        June 4, 2014

                                SO ORDERED

                                HENRY PITMAN
                                United States Magistrate Judge

28

Copies transmitted to:

Kevin P. Mulry, Esq.
Farrell Fritz, P.C.
1320 Reckson Plaza
Uniondale, New York  11556

Michael F. Fitzgerald, Esq.
Farrell Fritz, PC
Suite 800
370 Lexington Ave
New York, New York  10017

Randy M. Mastro, Esq.
Richard W. Mark, Esq.
Gibson, Dunn, & Crutcher LLP
48th Floor
200 Park Avenue
New York, New York  10166


Nancy E. Hart, Esq.
Gibson, Dunn, & Crutcher LLP
Apt. 3
144 W. Houston Street
New York, New York 10012

Kathleen G. Miller, Esq.
Arnold D. Kolikoff, Esq.
Carlene V. McIntyre, Esq.
David R. Kromm, Esq.
The Port Authority of
     New York and New Jersey
14th Floor
225 Park Avenue South
New York, New York  10003