UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                  :

AUTOMOBILE CLUB OF NEW YORK, INC.,    :
d/b/a AAA New York, and AAA NORTH     :
JERSEY, INC.,                                :
                                                  :
                Plaintiffs,            :       11 Civ. 6746 (RKE)
                                                  :
            v.                         :       **MEMORANDUM**
                                                  :       **OPINION and ORDER**
THE PORT AUTHORITY OF NEW YORK     :
AND NEW JERSEY,                     :
                                                  :
                Defendant.          :
-------------------------------------------------------------x

Richard K. Eaton, Judge[*]:

       Before the court is the motion of plaintiffs Automobile Club of New York, Inc., d/b/a

AAA New York, and AAA North Jersey, Inc. (together, "AAA"), for a preliminary injunction

against defendant the Port Authority of New York and New Jersey (the "Port Authority")

pursuant to Rule 65 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 65.  AAA seeks to

enjoin the Port Authority from implementing a scheduled December 7, 2014[1] toll increase on its

bridges and tunnels, claiming that the increase is in violation of (1) the Commerce Clause of the

United States Constitution, U.S. Const. art. I, § 8, cl. 3, and (2) the Surface Transportation and

Uniform Relocation Assistance Act of 1987 (the "Highway Act"), 33 U.S.C. § 508.  Oral

---

[*]       Judge Richard K. Eaton, of the United States Court of International Trade, sitting by designation.

[1]       While AAA's papers do not always separate the December 7, 2014 toll increase from the rest of the package of toll increases contained on the schedule adopted by the Port Authority Board on August 19, 2011, three of the toll increases have previously gone into effect and are being (and have been) charged to travelers.  Thus, were it the case that AAA is trying to roll back these toll increases, it would not be trying to maintain the status quo, but to alter it.  Suffice it to say that AAA has not shown the "clear" or "substantial" likelihood of success on the merits that would require this result.  *See Beal v. Stern*, 184 F.3d 117, 122–23 (2d Cir. 1999) (citations omitted).

argument was heard on the preliminary injunction motion on November 19, 2014.  For the reasons stated below, AAA's motion is denied.

## BACKGROUND

The following facts are drawn from the parties' papers and are uncontested, unless otherwise noted.  AAA New York and AAA North Jersey are not-for-profit corporations that purport to represent the interests of nearly two million member drivers.  The Port Authority is a bi-state governmental agency, created by an interstate compact between the States of New York and New Jersey, that operates facilities in the greater New York City area, including four interstate bridges, two interstate tunnels, the interstate Port Authority Trans–Hudson railroad ("PATH"), three bus terminals, two truck terminals, seven marine terminals, four airports, two heliports, and the sixteen-acre World Trade Center site.

The Port Authority is authorized to collect tolls at its bridge and tunnel facilities.  *See* N.Y. Unconsol. Law § 6501 (McKinney); N.J. Stat. Ann. § 32:1-118 (West).  On August 19, 2011, the Port Authority Board of Commissioners met and approved a toll increase schedule. According to Michael Fabiano, Chief Financial Officer for the Port Authority, the five toll increases on the schedule were necessitated by increasing financial pressures on the Port Authority, including the economic recession, increased security costs since the attacks of September 11, 2001, an 11-billion-dollar investment to rebuild the World Trade Center site, and a need to overhaul aging facilities, including the Bayonne, Goethals, and George Washington Bridges.  *See* November 4, 2011 Aff. of Michael Fabiano ("Fabiano Aff."), Ex. F at 5–10 (ECF Dkt. No. 12-6).

The scheduled December 7, 2014 increase is the next to last of those on the schedule approved by the Port Authority Board.  Because neither of the governors of New York or New Jersey vetoed the minutes of the August 19, 2011 Board meeting, the first of the increases went into effect on September 18, 2011, and two others have followed.

On September 27, 2011, AAA brought an action in this Court, seeking, among other things, a declaratory judgment that the toll increases were illegal.  Also on September 27, 2011, AAA applied for a preliminary injunction seeking to enjoin the Port Authority "from continuing to collect toll increases on Port Authority bridges and tunnels."  Mem. of Law in Supp. of Pls.' Mot. for a Prelim. Inj. 2.  On February 6, 2012 this motion was denied by Judge Richard Holwell.  *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, 842 F. Supp. 2d 672, 681 (S.D.N.Y. 2012) ("*AAA v. Port Authority*").  In doing so, Judge Holwell found that AAA had not satisfied the test for the granting of a preliminary injunction because it had not demonstrated (1) irreparable injury or (2) likelihood of success on the merits.  *See id.* at 676–677, 678, 680. Following the denial of AAA's September 27, 2011 motion for a preliminary injunction, the parties engaged in discovery,[2] which is now largely complete.

In making its case for the preliminary injunction, AAA claims in essence that "[t]he post-approval rationale for the [t]oll [i]ncreases . . . includes $3.8 billion that is not authorized, not for transportation, or not connected to any transportation project," and that information it has acquired through discovery since Judge Holwell denied its first preliminary injunction motion provides new grounds for this second motion to be granted.  *See* Pls.' Mem. of Law in Supp. of Mot. for a Prelim. Inj. 5, 6 (ECF Dkt. No. 118) ("Pls.' Br.").

---

[2]     Disputes involving discovery are the subject of a motion to compel now pending before the court.

The Port Authority insists that this second AAA motion should be denied because (1) AAA did not appeal Judge Holwell's February 6, 2012 order, (2) AAA has not demonstrated irreparable harm to toll-payers, and (3) AAA has not demonstrated that the toll increases are in excess of those required for the Interstate Transportation Network (the "ITN").[3]  *See* Def.'s Opp'n to Pls.' Second Mot. for a Prelim. Inj. 10, 17, 23, 30 (ECF Dkt. No. 125) ("Def.'s Br.").


## DISCUSSION

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Sussman v. Crawford*, 488 F.3d 136, 140 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (internal quotation marks omitted).

> In general, a district court may grant a preliminary injunction where the moving party establishes: (i) that it is likely to suffer irreparable injury if the injunction is not granted, and (ii) either (a) a likelihood of success on the merits of its claim, or (b) the existence of serious questions going to the merits of its claim and a balance of the hardships tipping decidedly in its favor.  However, when "'the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme,' the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard."  Finally, when the injunction sought "will alter, rather than maintain the status quo," or will "provide the movant with . . . relief [that] cannot be undone even if the defendant prevails at a trial on the merits," the moving party must show a "clear" or "substantial" likelihood of success.

*Beal v. Stern*, 184 F.3d 117, 122–23 (2d Cir. 1999) (alterations in original) (citations omitted) (internal quotation marks omitted).

---

[3]      The Port Authority owns and operates a transportation network that "provides river crossings linking southern New York and northern New Jersey" and "consists of four bridges, the George Washington Bridge[,] . . . the Bayonne Bridge, the Goethals Bridge, and the Outerbridge Crossing; two tunnels, the Lincoln Tunnel and the Holland Tunnel; . . . the Port Authority Bus Programs; . . . the PATH railroad system[;]" and two bus terminals.  *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, 887 F.2d 417, 418 (2d Cir. 1989).  The Port Authority's Interstate Transportation Network ("ITN") is comprised of "its bridges, tunnels and terminals, PATH, and the Bus Programs," which "form an integrated[,] interdependent transportation system."  *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, 706 F. Supp. 264, 280, 283, 284 (S.D.N.Y.), *aff'd*, 887 F.2d 417 (2d Cir. 1989).

## I.      Irreparable Injury

When making its first summary judgment argument, AAA asserted that it would be

impractical for the Port Authority to return any unlawful toll increase to those who had been

overcharged.  In denying AAA's first motion, Judge Holwell found that

> the Port Authority has persuasively argued that any harm alleged by AAA can be
> adequately remedied through a monetary refund.  According to the Port Authority's
> filings, 78.9% of drivers traveling the affected bridges and tunnels use E–Z Pass.
> Since E–Z Pass presumably maintains an electronic record of toll charges, drivers
> could have their E–Z Pass accounts or associated credit cards refunded if this Court
> were to reverse the tolls.  AAA has not demonstrated how such a refund fails to
> remedy the alleged damage as to these drivers, and its cursory statement that the
> Port Authority "does not explain how any refund could be accomplished
> practically" improperly places AAA's burden as movant on the Port Authority.
> While the Port Authority's proposal to offer a discount to the remaining 21.1% of
> cash-paying drivers would not be perfect—as to, for example, cash drivers who
> never return to New York, or E–Z Pass drivers who might "double dip" by
> subsequently utilizing the discounted cash lanes—AAA has not shown that a
> substantial number of drivers would go unreimbursed.
>
> In view of the relief proposed by the Port Authority, AAA's claims of
> impracticality are too weak to support a finding of irreparable injury, as required
> for its initial request for preliminary relief, or for its three later proposals.

*AAA v. Port Authority*, 842 F. Supp. 2d at 676–77 (citation omitted).

AAA did not appeal Judge Holwell's order, but now claims that this second motion "is

based on facts developed in discovery and in depositions after Judge Holwell's decision."  Pls.'

Reply Mem. of Law in Supp. of Mot. for a Prelim. Inj. 10 (ECF Dkt. No. 128).  With respect to

irreparable injury, the argument is difficult to credit.  AAA primarily relies on records showing

the number of bridge and tunnel crossings for the years 2011–2013, the amount collected in tolls

for the years 2010–2013, and the number of cash tolls paid since the first toll increase went into

effect in 2011.  *See* Pls.' Br. 13–16.

This second motion, however, deals with the toll increase scheduled to go into effect on

December 7, 2014.  While the toll will be greater after the toll increase goes into effect, the

number of crossings affected by the increase will not materially change.  Therefore, the facts on which AAA's argument is based were known at the time Judge Holwell made his decision, albeit in the form of percentages rather than actual numbers.  With respect to this argument, AAA has presented no new facts tending to prove that the cash-paying toll-payers will go uncompensated should AAA prevail.  Thus, Judge Holwell's conclusion that, with respect to the cash-paying customers the provision of a discount to compensate them may not be "perfect," but that "AAA has not shown that a substantial number of drivers would go unreimbursed," remains both in accordance with the facts now on the record, as well as those known when AAA made its first, un-appealed preliminary injunction motion.  Therefore, AAA has made no showing that the remedy proposed by the Port Authority (i.e., cash discounts for those who pay by cash) would leave large numbers unreimbursed and so has not demonstrated that the December 7 toll increase will result in irreparable injury.

Second, this conclusion, as Judge Holwell noted, comports with the holding in *Bridgeport*.  *See Bridgeport, Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, No. Civ.A. 3:03CV599CFD, 2004 WL 840140, at *4 (D. Conn. Apr. 15, 2004) ("*Bridgeport I*") (denying motion for preliminary injunction enjoining Bridgeport Port Authority from collecting a ticket surcharge on ferry passengers, and noting that "[a]s to whether all the passengers could be located to receive their portion of any repayment, the plaintiffs have not shown that it would be unlikely or that another method of relief is unavailable").  Here, as in *Bridgeport*, the burden is on AAA to demonstrate not just that many travelers pay cash, but that it is unlikely that these travelers could be located to be reimbursed or that another remedy is unavailable.  In other words, AAA has not carried its burden of showing that those travelers who pay cash, no matter how large the number, will not be compensated should it win.  Therefore, AAA has not met its

burden of demonstrating irreparable injury "by a clear showing." *See Sussman*, 488 F.3d at 139–40 (2d Cir. 2007) (quoting *Mazurek*, 520 U.S. at 972) (internal quotation marks omitted).

## II.    Likelihood of Success on the Merits

### A. Commerce Clause

The Commerce Clause provides Congress with the power "[t]o regulate Commerce with foreign Nations, and among the several States." U.S. Const. art. I, § 8, cl. 3. From this federal grant of regulatory power flows "[t]he negative or dormant implication of the Commerce Clause [(the 'dormant Commerce Clause') that] prohibits state taxation or regulation that discriminates against or unduly burdens interstate commerce and thereby impedes free private trade in the national marketplace." *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 90 (2d Cir. 2009) (alteration in original) (quoting *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997)) (internal quotation marks omitted).

The reasonableness of fees for the use of state-provided facilities by those engaged in interstate commerce is governed by the three-prong test found in *Northwest Airlines, Inc. v. County of Kent*, 510 U.S. 355 (1994). Under this test, a fee is reasonable, and thus constitutionally permissible, "if it (1) is based on some fair approximation of use of the facilities, (2) is not excessive in relation to the benefits conferred, and (3) does not discriminate against interstate commerce." *Id.* at 369 (citing *Evansville–Vanderburgh Airport Auth. Dist. v. Delta Airlines, Inc.*, 405 U.S. 707, 716–17 (1972)). AAA alleges that the December 7, 2014 toll increase violates prongs (1) and (2). *See* Pls.' Br. 19–21.

AAA relies on the Second Circuit's opinion, *Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Authority*, 567 F.3d 79 (2d Cir. 2009) ("*Bridgeport II*"), which found that a

user fee imposed on ferry passengers between Bridgeport, Connecticut and Port Jefferson, New

York violated the dormant Commerce Clause.  In reaching its decision, the Court found that,

while part of the fee appropriately subsidized operation of the ferry itself, another part subsidized

services with no actual or potential benefit for the ferry passengers, such as efforts to establish an

additional high-speed ferry from Bridgeport, Connecticut to New York City (far from Port

Jefferson).  *Bridgeport II*, 567 F.3d at 87.  The Second Circuit affirmed the district court's

finding that this part of the fee failed both the "excessive" and "fair approximation" prongs of

*Northwest Airlines*.  *Id.*

As to the portion of the fee designed to subsidize port operations such as a pump-out

service for pleasure boats, the Second Circuit held that even if this part of the fee indirectly

benefitted ferry passengers by reducing pollution, and was therefore not "excessive," it still

failed the "fair approximation" test because these services were not being proportionally or even

partially billed to the services' direct beneficiaries, i.e., the pleasure boat operators themselves.

*Id.* at 88.


   *B. Highway Act*

Pursuant to the Highway Act, a toll increase must be "just and reasonable."  *See Auto.*

*Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, 887 F.2d 417, 418 (2d Cir. 1989) ("Tolls on the

Port Authority's bridges must be 'just and reasonable.'  This requirement originated in section 4

of the Bridge Act of 1906, 33 U.S.C. § 494 (1982).  In 1987, Congress repealed the statutory

provision that gave the Secretary of Transportation the power to prescribe 'just and reasonable'

tolls.  At the same time, Congress retained the requirement that tolls be 'just and reasonable.'

The House Conference Report accompanying the Highway Act explained that the 'just and

reasonable' requirement 'is not intended to interfere with or in any way restrict existing authority

granted to multi-modal transportation agencies, such as the Port Authority of New York and

New Jersey, that operate bridges along with other facilities to use bridge toll revenues for

nonbridge purposes or the pooling or combination of the revenues from all of their facilities.'");

*see also Auto. Club of N.Y., Inc. v. Cox*, 592 F.2d 658, 661 (2d Cir. 1979).


     *C.  AAA Has Not Shown That It Is "Likely" to Succeed on the Merits*

     In finding that AAA had not shown that it had satisfied the "likelihood of success on the

merits test," Judge Holwell found the following:

> Although AAA[4] was given the opportunity by this Court in connection
> with its motion to take discovery and present an alternative financial picture for the
> Port Authority, AAA has failed to do so.  Even at oral argument, AAA continued
> to rely on a few comments made in Port Authority press statements and at the
> August 19, 2011 Board of Commissioners meeting to counter the statements
> presented by the Port Authority in its affidavits.  While the comments identified by
> AAA mention the World Trade Center site and its escalating costs, they frequently
> also mention repairs within the ITN, and nowhere state affirmatively that the toll
> increases will subsidize non-ITN activity. . . . Even if such misrepresentations [to
> the Board of Commissioners] occurred, their content falls far short of refuting the
> *detailed financial picture provided by the Port Authority*, which suggests that the
> toll increases fund only ITN structures in a functional relationship with the bridge
> users.

---

    4      The parties disagree on whether AAA has a private right of action under 33 U.S.C.
§ 508.  AAA asks the Court not to follow the Third Circuit Court of Appeals' decision in
*American Trucking Association v. Delaware River Joint Toll Bridge Commission,* 458 F.3d
291, 304 (3d Cir. 2006), which found no private right of action under Section 508 for truck
drivers challenging the reasonableness of tolls on bi-state bridges operated by the
Commission.  Instead, AAA points to *Automobile Club*, where the Second Circuit held that
it was "just and reasonable" under Section 508 for the Port Authority to direct bridge and
tunnel tolls to other portions of its ITN.  AAA argues that this case "impliedly recognized
a private right of action under section 508" when it entertained AAA's challenge to the
Port Authority's tolls over twenty years ago.  Not surprisingly, defendant sides with the
Third Circuit and a more recent decision in this circuit, arguing that the Highway Act need
not be read to create a private right of action.

*AAA v. Port Authority*, 842 F. Supp. 2d 672, 678–79 (footnote omitted) (citations omitted) (citing *Am. Trucking*, 458
F.3d at 297; *Molinari v. N.Y. Triborough Bridge & Tunnel Auth.*, 838 F. Supp. 718, 724 (E.D.N.Y. 1993)).

For these reasons, AAA has failed to demonstrate a likelihood of success on the merits on its Commerce Clause claim, let alone a clear or substantial likelihood of success.

*AAA v. Port Authority*, 842 F. Supp. 2d at 678 (emphasis added).

As noted, there has now been a great deal of discovery in this case. Nonetheless, it is not clear how the facts, to which AAA directs the court's attention, alter the outcome of the February 6, 2012 order. This is the case even though AAA now focuses its arguments, not so much on the costs related to the World Trade Center, as it did in its first preliminary injunction motion, as on other capital projects and bridge improvements. *See* Pls.' Br. 7 ("On this injunction application, however, AAA focuses on the post-approval, post-lawsuit rationale given by the Port Authority to the Court, the $10.786 billion 'ITN capital plan.'").

According to AAA, the ITN capital plan contains three large items, the removal of any one of which would put the plan into surplus if all of the toll increases go into place. For AAA, the inclusion of these items demonstrates that "the [t]oll [i]ncreases are not a fair approximation of the use of ITN facilities" and "are excessive in relation to the benefit conferred" because $3.8 billion of that amount comprises . . . [(1)] funding of projects benefitting navigation and Port Commerce rather than transportation, and [(2)] funding of a massive 'placeholder' that is unconnected to any transportation project," and thus violates the dormant Commerce Clause. *See* Pls.' Br. 19–21.

In addition, AAA asserts that the inclusion of these items prevents the scheduled December 7, 2014 toll increase from being "just and reasonable" and that, thus, it violates the Highway Act. *See* Pls.' Br. 23–24.

AAA has not shown that it is likely to succeed on the merits of its case. As an initial matter, it is worth noting that this argument appears to be aimed at the toll increases in their

entirely and not at the December 7, 2014 toll increase.  No matter how viewed, however, this argument fails to meet the likelihood of success on the merits test for a preliminary injunction.

First, AAA points to the $1.8 billion included in the $10.786 billion ITN capital plan for the "Lincoln Tunnel access roadway infrastructure projects," arguing that "[t]he connection to the Lincoln Tunnel . . . is illusory" because the money is actually being spent on New Jersey bridges and roads, including the Pulaski Skyway, which "is more than eight miles from the Lincoln Tunnel and cannot in any way be considered an access roadway to the Lincoln Tunnel." Pls.' Br. 7–8 (citations omitted) (internal quotation marks omitted).

Second, AAA asserts that the capital plan also includes an amount of close to $1 billion that has not yet been allocated and "is simply a line item in the capital plan that is not attributable to any transportation project," i.e., is a "placeholder."  Pls.' Br. 9 (citations omitted).

Third, AAA argues that the $1 billion included in the capital plan for the raising of the Bayonne Bridge roadway is being used "for navigation and the Port Commerce line of business," rather than transportation, so that larger container ships can pass under the bridge.  Pls.' Br. 8.

Therefore, according to AAA,

[i]f $3.8 billion is deducted from the "ITN capital plan," the cash flow analysis yields a positive number in the billions.  The Commissioners were certainly never told this when they were asked to approve the Toll Increases.  The CFO Fabiano cash flow analysis, and its conclusion that the ITN would lose $55 million over a ten-year period, are completely undercut when the billions of dollars for the Pulaski Skyway and New Jersey roads project, the Bayonne Bridge projects and the billion dollar "placeholder" are deducted from the "ITN capital plan."

The argument that the inclusion of these three items in the capital plan makes it *likely* that AAA will prevail on the merits fails for two reasons.  First, all of the information it now claims was unknown to it when it made its first motion was, in fact, available in 2011.  *See* Fabiano Aff. ¶ 7(b), (d), Ex. A (ECF Dkt. Nos. 12, 12-1).  Although it may have been difficult to ferret out,

11

and was made available after AAA had filed its initial motion papers, by the time it filed its reply brief AAA could have made the same claims it makes now, but did not do so.  Because AAA failed to appeal Judge Holwell's ruling, it may not make the arguments in this second motion for a preliminary injunction.  *See Int'l Bus. Machines Corp. v. Johnson*, No. 09 CIV. 4826 (SCR), 2009 WL 2356430, at *3 (S.D.N.Y. July 30, 2009) (denying request for leave to file a second motion for a preliminary injunction seeking the same relief as the first in part because "the information that [was] the basis for the successive motion was in [the requesting party]'s possession at the time of the filing of its first motion for preliminary injunction").

Second, there is not on the record before the court any evidence other than AAA's assertions that these items are not part of the ITN.  That is, as to the inclusion of the Pulaski Skyway, the "placeholder" amount, and the reconstruction of the Bayonne Bridge, AAA presents nothing but conjecture to bolster its claim that it has found new evidence, as a result of discovery, proving that a preliminary injunction should issue.  Rather, AAA cites to nothing on the record other than that these three items are included in the Port Authority's compilations of the ITN.  By way of contrast, the plaintiffs in *Bridgeport II* demonstrated that the passenger fees were supporting all of the Bridgeport Port Authority's operating budget, including those of no benefit to the ferry passengers.  In doing so, the *Bridgeport* plaintiffs made particularized showings, not just allegations.  *See Bridgeport II*, 567 F.3d at 87.

As to the Pulaski Skyway and associated roads, AAA places great store in the idea that funding of these projects is not statutorily authorized.  *See* Pls.' Br. 16–19 (citing N.Y. Unconsol. Law §§ 6502, 6503, 6511 (McKinney); N.J. Stat. Ann. § 32:1-119, 32:1-120 (West)).  "The authorization for the Port Authority to spend money comes from New York and New Jersey statutes, and those statutes do not authorize payment for the Pulaski Skyway and the New Jersey

roads," which AAA argues are "unquestionably not Port Authority facilities."  Pls.' Br. 19.
However, AAA cites no law indicating that these projects do not fall within the definitions of the
statutes to which it cites.

Because AAA has failed to demonstrate that the three projects are not part of the ITN, it
has not shown that the scheduled December 7, 2014 toll increase violates either the dormant
Commerce Clause or the Highway Act.


**CONCLUSION**

AAA has not shown that, should the December 7, 2014 toll increase go forward,
irreparable injury will result.  Moreover, AAA has not met the heavy burden of showing it is
"likely" to prevail on the merits.  *See Sussman*, 488 F.3d at 140 (citing *Mazurek*, 520 U.S. at
972); *see also Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 47 F. Supp. 2d 451, 460 (S.D.N.Y.
1999) ("The movant carries the heavy burden of showing . . . [a] likelihood of success on the
merits.").  While it may be that a second motion for a preliminary injunction may be granted
when there are new facts on the record, here, there are few new facts and those that have been
presented to the court do not serve as the basis for a preliminary injunction.

Based on the foregoing this second motion for a preliminary injunction is DENIED.

SO ORDERED.


Dated:          December 2, 2014
                New York, New York


                                          /s   Richard K. Eaton
                                          Richard K. Eaton, Judge

13