UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                   :

AUTOMOBILE CLUB OF NEW YORK, INC.   :   No. 11 Civ. 6746 (RKE) (HBP)
d/b/a AAA NEW YORK and AAA NORTH   :
JERSEY, INC.,   :
                                     :
                 Plaintiffs,   :
                                     :
         -against-   :
                                     :
THE PORT AUTHORITY OF NEW YORK   :
AND NEW JERSEY,   :
                                     :
               Defendant.   :
                                     :
-------------------------------------------------------------x

## DEFENDANT PORT AUTHORITY OF NEW YORK AND NEW JERSEY'S RESPONSE TO PLAINTIFF AAA'S LOCAL RULE 56.1 STATEMENT

Pursuant to Local Civil Rule 56.1, Defendant Port Authority of New York and New Jersey ("Port Authority") respectfully submits this response to the statement of additional material facts submitted by named Plaintiffs Automobile Club of New York, Inc. d/b/a AAA New York and AAA North Jersey, Inc. (collectively "AAA").

### General Replies and Objections to Plaintiff AAA's Rule 56.1 Statement

Plaintiff AAA submits nearly 200 assertions in its Rule 56.1 Statement, many of which are irrelevant, are propositions of law that are wrong, are not properly asserted in a statement purporting to set forth undisputed "facts," or are otherwise flawed. The Port Authority responds individually to each of AAA's statements, but also asserts objections that apply across several of AAA's asserted "facts." The Port Authority intends that each specific objection be considered with reference to these general objections.

The Port Authority disputes each of AAA's statements to the extent the following objections apply:

A.   **AAA improperly cites to prior case law as undisputed statements of fact.**  *E.g.*, D.I. 154 ("AAA SOF") ¶¶ 83–92.  The Port Authority objects to these statements as irrelevant.  AAA's assertions either refer to the particular facts (as summarized in court opinions) that are unrelated to the 2011 toll increase, or concern legal rules for the Court to determine and apply.

B.   **AAA improperly asserts argument and legal conclusions in its statements of fact.**  *E.g.*, AAA SOF ¶¶ 192–205, 207–12, 216, 231–32, 236, 238–59, 262–69, 271–73, 276.  The Port Authority objects to these statements to the extent they assert legal conclusions or legal standards which the Port Authority contends are incorrect or for this Court to determine.  *See Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 2015 WL 5729783, at *21 (S.D.N.Y. Sept. 29, 2015) (disregarding "legal conclusions or unsubstantiated opinions in a Local Rule 56.1 statement"); *Am Gen. Life Ins. Co. v. Diana Spira 2005 Irrevocable Life Ins. Trust*, 2014 WL 6694502, at *1 (S.D.N.Y. Nov. 25, 2014) (granting motion to strike "argumentative statements" and "purported factual statements which are unsupported by any citation to the record").

C.   **AAA improperly includes statements that purport to assert facts concerning the sufficiency or adequacy of an administrative record of the toll increase approval process.**  *E.g.*, AAA SOF ¶¶ 95–99, 103–11, 118, 120–21, 124, 127–31, 134–35, 138–45, 147, 161–62, 167, 172–73, 175, 177–78, 180–81.  The Port Authority objects to such statements as irrelevant as a matter of law.  *See* D.I. 143 at 17 ("In other words, Magistrate Judge Pitman found, and the court agrees, that evidence of the reasons why the Port Authority raised the tolls is not relevant to a case that rests upon how the money raised by the tolls was and is spent.").  The analysis of "fair approximation of use" and "excessiveness" with respect to toll increases does not require "a pre-enactment administrative record[] for toll amounts to be justified." *Janes v. Triborough Bridge & Tunnel Auth.*, 977 F. Supp. 2d 320, 339 (S.D.N.Y. 2013).

D.   **AAA's statements citing the declaration of Jonathan Peters as the sole source of "evidence" are impermissible attempts to create issues of fact from pure opinion.**  *E.g.*, AAA SOF ¶¶ 225–55, 257–73.  The Port Authority objects to AAA's improper attempt to cite to the Peters Declaration as creating material factual disputes.  *See Highlight Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005) (rejecting expert testimony submitted "solely for the purpose of constructing a factual narrative based upon record evidence").  Additionally, AAA's assumption that the Port Authority must employ a utility-type rate of return analysis to justify a toll increase has no basis in law, and AAA's statements of fact based on this assumption are wrong as a matter of law.

E.   **AAA's speculative statements suggesting that finances for the World Trade Center are diverted from the ITN have no evidentiary support.**  AAA SOF ¶¶ 263-65.  AAA cites to its expert's opinion as factual evidence, and AAA's expert in turn speculates without evidence that ITN funds were diverted to the World Trade

1

Center based on a flawed interpretation of a subset of the Port Authority's financial statements.

F.   **AAA's statements regarding a purported absence of line-item accounting of dollar-for-dollar ITN revenue is irrelevant because, as a matter of law, such tracing is not required.** *E.g.*, AAA SOF ¶¶ 101, 149–54, 223, 230–31, 236.  In *Evansville-Vanderburgh Airport v. Delta Airlines, Inc.*, 405 U.S. 707 (1972), the Supreme Court held that it is immaterial whether funds are "expressly earmarked"— all that matters is whether the *amount* of funds from increased fees exceeds costs.  *Id.* at 717–19.  "The Commerce Clause does not require states or courts to trace individual dollars."  *N.H. Motor Transp. Ass'n v. Flynn*, 751 F.2d 43, 47 (1st Cir. 1984).

Specific responses to AAA's statements are attached hereto as Appendix A.

Dated:   October 9, 2015
         New York, New York

                              GIBSON, DUNN & CRUTCHER LLP


                              By:   /s/ Richard W. Mark
                              Richard W. Mark (RM-6884)
                              Nancy E. Hart (NH-1789)

                              200 Park Avenue
                              New York, NY  10166-0193
                              Telephone: 212.351.4000
                              Facsimile:  212.351.4035

                              *Attorneys for Defendant Port Authority*

2

# **Appendix A**

## Specific Replies and Objections to Plaintiff AAA's Rule 56.1 Statement

83.     The Port Authority does not dispute that it planned to devote the additional revenues derived from the 1975 toll increases to certain mass transit projects, including "the expansion of the midtown Port Authority Bus Terminal; the extension of PATH to Plainfield via Newark International Airport; Rail Access between Kennedy International Airport and Penn Station, Manhattan using Long Island railroad tracks and high-speed MTA cars; and direct rail service from New Jersey into Penn Station, Manhattan for certain trains on the Erie Lackawanna Railroad."

*Automobile Club of New York v. Cox*, 592 F.2d 658, 662 (2d Cir. 1979).

84.     The Port Authority does not dispute that the Second Circuit's opinion in the litigation over the 1975 toll increases does not indicate that the Port Authority planned to devote the additional revenues derived from the 1975 toll increases to anything other than certain mass transit projects.

*Cox*, 592 F.2d at 662.

85.     The Port Authority does not dispute that the Second Circuit referred to a rate base analysis in its opinion concerning the 1975 bridge and tunnel toll increase litigation.

*Cox*, 592 F.2d at 663-64, 668-69.

86.     The Port Authority does not dispute that the Second Circuit's opinion concerning the 1975 bridge and tunnel toll increase litigation does not reference the term cash flow analysis.

*Cox*, 592 F.2d at 663-64, 668-69.

87.     The Port Authority does not dispute that it planned to spend nearly $1.5 billion on a capital improvement program for the ITN from 1987-1991, and that the 1987 increase in tolls and fares helped finance this program.

*Automobile Club of New York, Inc. v. Port Authority of New York and New Jersey ("Auto Club v. Port Authority")*, 887 F.2d 417, 418-19 (2d Cir. 1989); *Automobile Club of New York, Inc. v. Port Authority of New York and New Jersey ("AAA v. Port Authority")*, 706 F. Supp. 2d 264, 267-68, 281-82 (S.D.N.Y. 1989).

88.     The Port Authority does not dispute that it planned to spend nearly $1.5 billion on a

capital improvement program for the ITN from 1987-1991, and that the 1987 increase in tolls and

fares helped finance this program.

> *Auto Club v. Port Authority*, 887 F.2d at 418-19; *AAA v. Port Authority*, 706 F. Supp. 2d at
> 267-68, 281-82.

89.     The Port Authority does not dispute that Judge Pollack heard testimony during a two-

day bench trial regarding the 1975 bridge and tunnel toll increase litigation, wherein the AAA

challenged the inclusion of investment in and operating losses of PATH in the Port Authority's

analysis.

> *Auto Club v. Port Authority*, 887 F.2d at 419; *AAA v. Port Authority*, 706 F. Supp. 2d at 266.

90.     The Port Authority does not dispute that the Second Circuit and SDNY opinions

concerning the 1975 bridge and tunnel toll increase litigation reference a rate base analysis.

> *Auto Club v. Port Authority*, 887 F.2d at 419-20; *AAA v. Port Authority*, 706 F. Supp. 2d at
> 266, 270, 274-77, 280-81, 283-84.

91.     The Port Authority does not dispute that the Second Circuit and SDNY opinions

concerning the 1975 bridge and tunnel toll increase litigation do not reference a cash flow analysis.

> *Auto Club v. Port Authority*, 887 F.2d at 419-20; *AAA v. Port Authority*, 706 F. Supp. 2d at
> 266, 270, 274-77, 280-81, 283-84.

92.     The Port Authority does not dispute that the Second Circuit stated in footnote 5 of its

opinion: "In response to an argument made by the Auto Clubs, it is immaterial that our broad

definition of 'functional relationship' might extend to other facilities outside the Port Authority's

domain—for example, the Tappen Zee Bridge.  The Port Authority does not own or operate them, so

they are not candidates for inclusion in its rate base."

> *Auto Club v. Port Authority*, 887 F.2d at 422 n.5.

93.     Undisputed.

94.     Undisputed.

95.     Undisputed, except to clarify that with respect to the applicable ten-year capital plan between 2007 and 2011, "during those times, there could be new projects that were added to the plan for purposes that they were projects that needed to get done."

D.I. 151 ("Mulry Decl."), Ex. B at 17:18-18:5.

96.     The Port Authority does not dispute that in 2011, the last time a ten-year capital plan had been approved by the Board of Commissioners was in 2007.

Mulry Decl., Ex. B at 20:2-14.

97.     Undisputed.

98.     The Port Authority does not dispute that the 2011 preliminary capital plan covered the period from 2011 through 2020, and that as of 2011, the plan had not been formally approved by the Board of Commissioners, although the annual expenditures reflected in that plan were approved.

Mulry Decl., Ex. B at 21:20-22:5.

99.     The Port Authority does not dispute that former CFO Michael Fabiano stated that as of August 2011, there was not an officially adopted $25.1 billion capital plan for the Port Authority.

Mulry Decl., Ex. A at 137:23-138:21.

100.    Undisputed.

101.    The Port Authority does not dispute that former CFO Michael Fabiano, in looking at capital capacity for the Port Authority, did not look at capital capacity for each of the separate line departments; however, the revenues, operating expenses, allocated expenses, and capital expenses are accounted for by facility and by line department and then rolled up for standard accounting purposes.

Mulry Decl., Ex. A at 12:4-9, 21:24-23:3, 261:6-11.

102.     The Port Authority does not dispute that, in looking at capital capacity for the Port
Authority, former CFO Michael Fabiano did not look at capital capacity for each of the line
departments; however, the components underlying the Port Authority's overall capital capacity were
the various detailed revenues, expenses, and capital projects across all line departments.

Mulry Decl., Ex. A at 12:10-14, 19:13-17, 152:7-153:8; Suppl. Mark Decl., Ex. B at 154:14-
155:2, 267:19-271:4.

103.     The Port Authority does not dispute that with respect to the 2011 toll increase, a
financial analysis performed by the Port Authority looked at what additional revenues provide
additional capacity for the entire Port Authority across all business.

Mulry Decl., Ex. A at 19:24-20:22.

104.     The Port Authority does not dispute that in determining whether a toll increase was
needed, former CFO Michael Fabiano stated in part that he considered the financial projections and
data for the entire Port Authority, and not the line departments that comprise the ITN in isolation, but
"recognize[ed] that the ITN, from our perspective, has always been a drag on the Port Authority, has
always lagged behind the revenues generated versus the needs of the ITN.  So that is always in our
forefront of thoughts, of, okay, is this toll appropriate for the level of investment we're making in
those facilities. . . . It's a deficit business."

Suppl. Mark Decl., Ex. B at 40:15-43:20.

105.     The Port Authority does not dispute that when Rosemary Chiricolo and her staff
performed analyses on various scenarios that took into account a potential toll increase, they looked
at the financial projections of all revenues of the Port Authority.

Mulry Decl., Ex. B at 53:2-25.

106.    The Port Authority does not dispute that it prepares its financial forecasts for the entire agency.

Mulry Decl., Ex. B at 157:20-158:3.

107.    The Port Authority does not dispute that the analysis of the need for revenue enhancement included the cost of the World Trade Center, as well as all the other line departments, and that according to former CFO Michael Fabiano, this was at least in part because the coverage ratios (*i.e.*, the amount of net revenues to future maximum debt service) and various rating agency ratios are built on the entire Port Authority and not just on individual facilities or departments.

Suppl. Mark Decl., Ex. B at 82:25-85:11.

108.    Undisputed.

109.    Undisputed.

110.    Undisputed.

111.    Undisputed.

112.    Undisputed.

113.    The Port Authority does not dispute that a press release on August 5, 2011 stated that the toll increases were proposed "to fully fund a new $33 billion ten-year capital plan, which will generate 167,000 jobs."

Mulry Decl., Ex. D.

114.    The Port Authority does not dispute that, according to former CFO Michael Fabiano, "the $33 billion capital plan" referred to in the August 5, 2011 press release was "not an actual plan put together with projects listed in it," but rather an assessment of capacity based on projected numbers "if the toll increase went in," including also "the existing revenues of the rest of the Port Authority from all sources that would then be able to flow down to be able to finance capital."

Mulry Decl., Ex. A at 100:8-101:2; Suppl. Mark Decl., Ex. B at 267:19-268:19.

115.    The Port Authority does not dispute that former CFO Michael Fabiano stated that in August 2011 that there was "no official listing of projects to comprise a ten-year plan" other than the one approved in 2007, although "management and budget always have to list the projects and the department spending and when they think it's going to be spent."

Mulry Decl., Ex. A at 101:3-18.

116.    The Port Authority does not dispute that the capacity of the ten-year window of the "capital plan" referred to in the August 5, 2011 press release was $33 billion.

Mulry Decl., Ex. A at 102:4-24.

117.    The Port Authority does not dispute that Rosemary Chiricolo stated that a "$33 billion capital plan would have taken into account the full cost to complete projects, which could have been beyond the ten-year period."

Mulry Decl., Ex. B at 70:18-25.

118.    The Port Authority does not dispute that when the proposed toll increase was announced in a press release on August 5, 2011, the Port Authority also announced a proposed $33 billion capital plan for the next ten years.

Mulry Decl., Ex. B at 110:21-111:5.

119.    The Port Authority does not dispute that the $33 billion capacity referenced in the August 5, 2011 press release "was the total of the projects in the ten-year plan, as well as the cost to complete those projects if any of those projects extended beyond the ten year[s.]"

Mulry Decl., Ex. B at 111:12-18, 114:6-17.

120.     Although AAA's statement is unsupported by any citation to evidence, the Port Authority does not dispute that ten public meetings were held with respect to the 2011 toll increases. The balance of AAA's statement cannot be supported by evidence.

121.     Undisputed.

122.     Undisputed.

123.     Undisputed.

124.     The Port Authority does not dispute that Rosemary Chiricolo understood that between the August 5, 2011 press release and the August 19, 2011 vote on the proposed toll increase, the size of the ten-year capital plan went from $33 billion to $25 billion because the $33 billion went beyond the ten-year period.

Mulry Decl., Ex. B at 111:12-18.

125.     The Port Authority does not dispute that it was Rosemary Chiricolo's understanding that the $33 billion was the cost to complete the projects that were in the ten-year plan, and the $25 billion was the spending during the ten-year period.

Mulry Decl., Ex. B at 111:19-112:8.

126.     Undisputed.

127.     Although AAA's statement is unsupported by any citation to evidence, the Port Authority does not dispute that the proposed toll increases were presented to and approved by the Port Authority's Board of Commissioners on August 19, 2011.

128.     The Port Authority does not dispute that former CFO Michael Fabiano made a presentation to the Board of Commissioners at their executive session and public session meetings on August 19, 2011.

Suppl. Mark Decl., Ex. B at 115:25-116:6.

129.    The Port Authority does not dispute that at the August 19, 2011 meetings, former CFO Michael Fabiano presented to the Commissioners a financial justification for the toll and fare increase.

Mulry Decl., Ex. A at 123:6-9.

130.    The Port Authority does not dispute that former CFO Michael Fabiano presented a financial justification for the toll and fare increase at the public session in part so that the public would be aware of it.

Mulry Decl., Ex. A at 123:10-15.

131.    The Port Authority does not dispute that former CFO Michael Fabiano believed the August 19, 2011 presentation was "important," and that he believed he gave the Commissioners the "full story" based on his perception of the necessity and the need for the toll and fare increase.

Mulry Decl., Ex. A at 123:16-124:14.

132.    The Port Authority does not dispute that the presentation given on August 19, 2011 listed the cost of rebuilding the World Trade Center at approximately $11 billion.

Mulry Decl., Ex. A at 126:5-10; Ex. I at AAA206; Ex. J at AAA218.

133.    The Port Authority does not dispute that in Plaintiff's Exhibits 11 and 12, the writing below the box on each page is former CFO Michael Fabiano's talking points for the slide.

Mulry Decl., Ex. A at 128:19-129:17; Ex I; Ex. J.

134.    The Port Authority does not dispute that former CFO Michael Fabiano's talking points for presentations given on August 19, 2011 suggest he discussed that the Port Authority was investing over $11 billion to rebuild the World Trade Center site.

Mulry Decl., Ex. I at AAA206; Ex. J at AAA218.

135.    The Port Authority does not dispute that former CFO Michael Fabiano's talking points on presentations given on August 19, 2011 suggest he discussed that the Port Authority had re-prioritized and deferred millions of dollars in program capital spending.

Mulry Decl., Ex. I; Ex. J.

136.    Undisputed except to clarify that the referenced funding consisted of "FTA grants and insurance proceeds."

Mulry Decl., Ex. A at 52:14-17, 52:23-53:3.

137.    The Port Authority does not dispute that during the August 19, 2011 presentations, former CFO Michael Fabiano was asked how the Port Authority would handle funding for the World Trade Center site above the $11.3 billion budget if it became necessary, and notes from the meeting indicate he responded that the Port Authority "would need to push out other projects in the capital plan to accommodate any additional increases to the World Trade Center budget."

Mulry Decl., Ex. A at 145:19-147:14; Ex. H at AAA202.

138.    The Port Authority does not dispute that former CFO Michael Fabiano told the Commissioners in the executive and public sessions that the capital plan would allow the Port Authority to invest $25.1 billion in critical infrastructure projects.

Mulry Decl., Ex. H at AAA201; Ex. I at AAA210; Ex. J at AAA224.

139.    The Port Authority does not dispute that former CFO Michael Fabiano's talking points on presentations given on August 19, 2011 suggest he told the Commissioners that the Port Authority would complete the rebuilding of the World Trade Center.

Mulry Decl., Ex. I at AAA215; Ex. J at AAA230.

140.    The Port Authority does not dispute that the reference in the August 19, 2011 presentations to $25.1 billion of capital investment refers to "total agency capacity to spend approximately $25.1 billion over a ten-year window."

Mulry Decl., Ex. A at 129:18-130:13; Ex. I at AAA210; Ex. J at AAA224.

141.    The Port Authority does not dispute that at the August 19, 2011 presentations, former CFO Michael Fabiano did not present to the Commissioners specific amounts of capital investment that would be expended within the ITN, except to clarify that Fabiano's presentation included descriptions of ITN projects.

Mulry Decl., Ex. A at 136:13-137:2; Ex. I at AAA211-15; Ex. J at AAA226-30.

142.    The Port Authority does not dispute that former CFO Michael Fabiano's talking points suggest he stated in the August 19, 2011 presentations that the "capital plan will also benefit the region by generating 131,000 jobs," and that Fabiano has indicated this number refers to jobs generated in the region by projects for the entire Port Authority.

Mulry Decl., Ex. A at 142:3-22; Ex. I at AAA210; Ex. J at AAA224.

143.    The Port Authority does not dispute that in the August 19, 2011 presentations, former CFO Michael Fabiano presented job creation numbers for the entire Port Authority.

Mulry Decl., Ex. A at 142:23-143:15.

144.    The Port Authority does not dispute that former CFO Michael Fabiano's talking points suggest he stated in the August 19, 2011 presentation that the "capital plan will also benefit the region by generating . . . $7.6 billion in wages and $30 billion in sales," and that Fabiano has indicated these numbers were with respect to projects for the entire Port Authority.

Mulry Decl., Ex. A at 143:3-15; Ex. I at AAA210; Ex. J at AAA224.

145.    The Port Authority does not dispute that during the August 19, 2011 presentations, former CFO Michael Fabiano was asked how the Port Authority would handle funding for the World Trade Center site above the $11.3 billion budget if it became necessary, and notes from the meeting indicate he responded that the Port Authority "would need to push out other projects in the capital plan to accommodate any additional increases to the World Trade Center budget."

Mulry Decl., Ex. A at 145:19-147:14; Ex. H at AAA202.

146.    Undisputed.

147.    Undisputed except to the extent AAA's statement mischaracterizes former CFO Michael Fabiano's testimony.  As Fabiano testified, the "potential" for a CPI increase provision in 2018 or 2019 did not come up specifically with the Commissioners in August 2011, and that no toll increase using the CPI formula has ever gone into effect.

Mulry Decl., Ex. A at 245:20-22, 247:2-14.

148.    Undisputed.

149.    Undisputed for the purposes of this lawsuit, except to the extent AAA's statement mischaracterizes the Port Authority's recordkeeping and former CFO Michael Fabiano's deposition transcript to imply that the Port Authority cannot prepare a report or analysis regarding ITN revenues.

150.    Undisputed for the purposes of this lawsuit, except to the extent AAA's statement mischaracterizes the Port Authority's actual recordkeeping and former CFO Michael Fabiano's deposition transcript to imply that the Port Authority cannot prepare a report or analysis regarding ITN revenues.

151.    Undisputed for the purposes of this lawsuit, except to the extent AAA's statement mischaracterizes the Port Authority's actual recordkeeping and former CFO Michael Fabiano's

deposition transcript to imply that the Port Authority cannot prepare a report or analysis regarding ITN revenues.

152.    Undisputed for the purposes of this lawsuit, except to the extent AAA's statement mischaracterizes the Port Authority's business practices and implies all funds are swept into one account without careful recordkeeping and monitoring.

153.    Undisputed except to the extent AAA's statement mischaracterizes former CFO Michael Fabiano's deposition transcript to imply that PATH revenues did not benefit the PATH program.  To the contrary, Fabiano testifies that, because PATH is "a heavily subsidized system," "in essence, every dollar from raising that PATH fare could be said to be going back into a PATH system."

Mulry Decl., Ex. A at 31:4-6, 104:2-17.

154.    Undisputed.

155.    Undisputed.

156.    Undisputed.

157.    Undisputed.

158.    The Port Authority does not dispute that Rosemary Chiricolo and her staff were "involved in the preparation of parts of" Exhibits A through E to the Fabiano Affidavit.

Mulry Decl., Ex. B at 129:21-130:19.

159.    Undisputed, except to clarify that paragraph 5 of the Fabiano Affidavit refers to a "$10.786 billion Preliminary Capital Plan for the ITN for 2011-2020 which is based on projected needs for capital expenditures over the next ten years."

Mulry Decl., Ex. E at 5.

160.    Undisputed.

161.    The Port Authority does not dispute that Exhibits A, B, C, D, and E to the Fabiano Affidavit were not specifically presented to the Board of Commissioners in August of 2011.

Mulry Decl., Ex. A at 151:24-152:3.

162.    The Port Authority does not dispute that Exhibits A, B, C, D, and E to the Fabiano Affidavit were created in response to the current AAA litigation.

Mulry Decl., Ex. A at 152:4-6.

163.    Undisputed, except to clarify that paragraph 5 of the Fabiano Affidavit refers to a "$10.786 billion Preliminary Capital Plan for the ITN for 2011-2020 which is based on projected needs for capital expenditures over the next ten years.".

164.    Mulry Decl., Ex. E at 5.Undisputed except to clarify that the $10.786 billion "is a component of the entire $25 billion capital program that we said was the capacity window.

Mulry Decl., Ex. A at 152:7-153:2; Ex. E ¶ 5.

165.    The Port Authority does not dispute that Exhibit A to the Fabiano Affidavit "represents the facilities at a facility level and the dollars spending by year for the ITN during the period 2011 to 2020."

Mulry Decl., Ex. A at 153:3-11.

166.    Disputed.  Rosemary Chiricolo testified that AAA counsel's question did not make sense to her, explaining that the Port Authority prepares the capital plan for the entire agency and all the facilities within that agency, including the facilities that make up the ITN.

Mulry Decl., Ex. B at 94:21-24.

167.    The Port Authority does not dispute that Exhibit A to the Fabiano Affidavit was not specifically presented to the Commissioners in August of 2011 and was developed in response to the

16

current AAA litigation.  Exhibit A was prepared using business records as a foundation for the statement.

Mulry Decl., Ex. A at 153:12-21.

168.    Undisputed, except to clarify that former CFO Michael Fabiano said regarding Exhibit A that it "is an extraction of the ITN facilities that make up and comprise, during the same period, what we call the preliminary $25 billion plan.  So these are the elements that represent the ITN's components of that program, or those amounts."

Suppl. Mark Decl., Ex. B at 153:22-154:21.

169.    Undisputed.

170.    The Port Authority does not dispute that former CFO Michael Fabiano stated he had not seen a cash flow analysis of the ITN "at that level" illustrated in Exhibit A of the Fabiano Declaration.

Mulry Decl., Ex. A at 44:19-46:12.

171.    The Port Authority does not dispute that depreciation is typically included in income statements.  Nor does the Port Authority dispute that former CFO Michael Fabiano did not include any depreciation in a cash flow statement he prepared, as he explained the cash flow analysis was "more realistic as to when the dollars are going out to actually pay for th[e] investment."

Mulry Decl., Ex. A at 45:7-46:3, 47:23-48:12.

172.    The Port Authority does not dispute that Exhibit B to the Fabiano Affidavit was not specifically presented to the Board of Commissioners in August of 2011, but disputes AAA's language "in some way presented" for vagueness.

Mulry Decl., Ex. A at 159:5-12.

173.     The Port Authority does not dispute that Exhibit B was prepared in response to the AAA litigation.  Exhibit C was prepared using business records as a foundation for the statement.

174.     Undisputed.

175.     The Port Authority does not dispute that Exhibit C to the Fabiano Affidavit was prepared in response to the AAA litigation and not in the ordinary course of business.  Exhibit C was prepared using business records as a foundation for the statement.

176.     The Port Authority does not dispute that Exhibit D to the Fabiano Affidavit shows cash flows for the projected period 2011-2020.

Mulry Decl., Ex. A at 195:4-16.

177.     Undisputed.

178.     The Port Authority does not dispute that Exhibit D to the Fabiano Affidavit was prepared in response to the AAA litigation and not in the ordinary course of business.  Exhibit D was prepared using business records as a foundation for the statement.

179.     Undisputed.

180.     Undisputed.

181.     The Port Authority does not dispute that Exhibit E to the Fabiano Affidavit had not been previously prepared in the ordinary course of the Port Authority's business, except to clarify that the information was extracted from the preliminary capital plan for the entire Port Authority. Exhibit E was prepared using business records as a foundation for the statement.

Mulry Decl., Ex. A at 177:2-8, 196:3-17.

182.     Undisputed.

183.     Undisputed.

184.     Undisputed.

185.     Undisputed.

186.     Undisputed.

187.     Although the statement is unsupported by citation to evidence, the Port Authority does not dispute that the $10.786 billion "ITN capital plan" includes $1.8 billion for improvements to the Lincoln Tunnel Access Roadway Infrastructure Project.

188.     The Port Authority does not dispute that when the CIF was authorized, the balance remaining was $2.7 billion, and $1.8 billion of that amount was authorized in conjunction with three listed projects.

Mulry Decl., Ex. B at 103:22-104:12.

189.     Undisputed.

190.     The Port Authority does not dispute that the three projects to which the $1.8 billion was allocated were the capital infrastructure improvements to the Lincoln Tunnel Access Roadway Infrastructure Project.

Mulry Decl., Ex. B at 108:12-21; Ex. A at 188:17-189:20.

191.     Undisputed.

192.     Disputed.  AAA's legal conclusion and argument are inappropriate.

193.     AAA's argument and legal conclusion are improper and do not rely on evidentiary support.  AAA's citation is a mischaracterization of PA SOF 24.

194.     AAA's argument and legal conclusion are improper and do not rely on evidentiary support.  AAA's citation is a mischaracterization of PA SOF 24.

195.     AAA's argument and legal conclusion are improper and do not rely on evidentiary support.  AAA's citation is a mischaracterization of PA SOF 24.

196.     AAA's argument and legal conclusion are improper and do not rely on evidentiary support.  AAA's citation is a mischaracterization of PA SOF 24.

197.     AAA's argument and legal conclusion are improper and do not rely on evidentiary support.  AAA's citation is a mischaracterization of PA SOF 24.

198.     AAA's argument and legal conclusion are improper and do not rely on evidentiary support.  AAA's citation is a mischaracterization of PA SOF 24.

199.     AAA's argument and legal conclusion are improper and do not rely on evidentiary support.  AAA's citation is a mischaracterization of PA SOF 24.

200.     AAA's argument and legal conclusion are improper and do not rely on evidentiary support.  AAA's citation is a mischaracterization of PA SOF 24.

201.     Undisputed.

202.     Although AAA's statement is unsupported by citation to evidence, the Port Authority does not dispute that the New York and New Jersey statutes were passed in 1931.

203.     The Port Authority does not dispute that the New York and New Jersey statutes confer authority to "construct, own, maintain and operate" the Lincoln Tunnel, "together with such approaches thereto, connections with highways as the Port Authority may deem necessary or desirable."

NY Unconsol. Laws § 6502; NJSA 32:1-119.

204.     The Port Authority does not dispute that the cited New York and New Jersey statutes define the approaches to the Lincoln Tunnel.

NY Unconsol. Laws § 6503; NJSA 32:1-120

205.     The Port Authority disputes this statement of fact to the extent it is argumentative and thus inappropriate, but the Port Authority does not dispute the quoted language of the statute.

NY Unconsol. Law § 6511.

206.    Undisputed.

207.    AAA's argument and legal conclusion are improper and do not rely on evidentiary support.

208.    AAA's argument and legal conclusion are improper and do not rely on evidentiary support.

209.    AAA's argument and legal conclusion are improper and do not rely on evidentiary support.

210.    AAA's argument and legal conclusion are improper and do not rely on evidentiary support.

211.    Although the evidence cited does not support the statement, the Port Authority does not dispute that the "ITN capital plan" includes $1 billion for raising the Bayonne Bridge roadway. The Port Authority disputes the rest of the statement to the extent it constitutes inappropriate argument and legal conclusion.

212.    The Port Authority does not dispute that an analysis was done as part of the capital planning process that examined options for dealing with a "navigational clearance issue" and that raising the roadway deck was one way to address this.  The Port Authority disputes the rest of the statement.

Mulry Decl., Ex. B at 152:23-153:12.

213.    The Port Authority does not dispute that Port Commerce will benefit from the raising of the Bayonne Bridge.

Mark Decl., Ex. 11 at 43.

214.    Undisputed.

215.    The Port Authority does not dispute that former CFO Michael Fabiano's talking points suggest that at the August 19, 2011 presentations he stated to the Commissioners something along the lines of:  "[O]ne of the key projects supported by the tolls increase is the raising of the roadway at the Bayonne Bridge, which will accommodate the larger ships expected to call on the port with the opening of the expanded Panama Canal.  It is an investment in the competitiveness of our ports[.]"

Mulry Decl., Ex. A at 143:21-145:4; Ex. B at 152:23-153:12; Ex. I at AAA211.

216.    Disputed to the extent the statement is inappropriately argumentative and states a legal conclusion.

217.    The Port Authority does not dispute that the Bayonne Bridge project will "provide navigational clearance for larger containerships as a result of the Panama Canal Expansion."

Mulry Decl., Ex. M at 13.

218.    The Port Authority does not dispute that the Capital Plan Summary for 2014-2023 includes the quoted language.

Mulry Decl., Ex. N at 9.

219.    The Port Authority does not dispute that the "2011-2020 Spending Schedule" for the ITN as of August 27, 2011 includes a line allocating just under $1 billion to a "capital infrastructure fund."

Mulry Decl., Ex. E at Ex. A, p 10.

220.    Undisputed.

221.    Undisputed.

222.    The Port Authority does not dispute that the balance of what would have been spent on ARC is now a balance "for future capital infrastructure projects as a reserve," and is "close to a billion" dollars.

Mulry Decl., Ex. A at 189:2-190:12.

223.    The Port Authority does not dispute that the $995 billion line entry associated with the capital infrastructure fund is a "line item of dollars that are in the capital plan to be expended in the future" that was not then attributable to any project, but as former CFO Michael Fabiano testified, was designated for ITN projects.

Mulry Decl., Ex. A at 189:24-190:25.

224.    Although the evidence cited does not support the statement, the Port Authority does not dispute that former CEO Michael Fabiano stated in his deposition that he "did not set up a capital plan" and that the $975 million is "a place holder, once again," for ITN capital projects.

*See* Mulry Decl., Ex. A at 193:10-12.

225.    The Port Authority does not dispute that AAA's expert, Jonathan Peters, defines "rate of return analysis" in his expert report as a "long standing process that is used to establish reasonable rate changes for organizations that have no or minimal competition in a particular market and would thus be able to exert monopoly power and be open to charging excessive rates."

Peters Decl. ¶ 4.

226.    The Port Authority does not dispute that AAA's expert, Jonathan Peters, states in his expert report that the rate of return analysis "is extensively used by the Public Utility Commissions across the United States to establish appropriate revenue levels and utility rates for the regulated public utility industry – including water, natural gas, sewer and power. In addition to being used in prior Court cases involving the PANYNJ, these methods have long standing acceptance in

establishing fair and reasonable rates of return for utility firms as well as protecting consumers from excessive charges due to monopoly power."

Peters Decl. ¶ 7.

227.    Disputed.  AAA's legal conclusion and argument are inappropriate.

228.    The Port Authority does not dispute that AAA's expert, Jonathan Peters, states in his expert report that "the formula for revenue requirement" is "Revenue Requirement = (Rate Base * Allowable Rate of Return) + Operating Expenses + Depreciation Expense + Taxes."

Peters Decl. ¶ 9.

229.    The Port Authority does not dispute that AAA's expert, Jonathan Peters, states in his expert report that "[t]he rate base is the invested capital that is engaged in the production of revenue and income from the regulated entity."

Peters Decl. ¶ 10.

230.    Undisputed.

231.    Disputed.  AAA's legal conclusion and argument are inappropriate.

232.    Disputed.  AAA's legal conclusion and argument are inappropriate.

233.    Undisputed.

234.    Disputed to the extent that this "proper rate of return" is merely a belief and assumption made by one expert for use in his analysis.

235.    Undisputed.

236.    Disputed.  AAA's legal conclusion and argument are inappropriate.

237.    Undisputed.

238.    Disputed.  AAA's legal conclusion and argument are inappropriate.

239.    Disputed.  AAA's legal conclusion and argument are inappropriate.

240.    Disputed.  AAA's legal conclusion and argument are inappropriate.

241.    Disputed.  AAA's legal conclusion and argument are inappropriate.

242.    Disputed.  AAA's legal conclusion and argument are inappropriate.

243.    Disputed.  AAA's legal conclusion and argument are inappropriate.

244.    Disputed.  AAA's legal conclusion and argument are inappropriate.

245.    Disputed.  AAA's legal conclusion and argument are inappropriate.

246.    Disputed.  AAA's legal conclusion and argument are inappropriate.

247.    Disputed.  AAA's legal conclusion and argument are inappropriate.

248.    Disputed.  AAA's legal conclusion and argument are inappropriate.

249.    Disputed.  AAA's legal conclusion and argument are inappropriate.

250.    Disputed.  AAA's legal conclusion and argument are inappropriate.

251.    Disputed.  AAA's legal conclusion and argument are inappropriate.

252.    Disputed.  AAA's legal conclusion and argument are inappropriate.

253.    Disputed.  AAA's legal conclusion and argument are inappropriate.

254.    Disputed.  AAA's legal conclusion and argument are inappropriate.

255.    Disputed.  AAA's legal conclusion and argument are inappropriate.

256.    Disputed.  AAA's legal conclusion and argument are inappropriate.

257.    Disputed.  AAA's legal conclusion and argument are inappropriate.

258.    Disputed.  AAA's legal conclusion and argument are inappropriate.

259.    Disputed.  AAA's legal conclusion and argument are inappropriate.

260.    Although the evidence cited does not support the statement, the Port Authority does

not dispute that former CFO Michael Fabiano included in his cash flow analysis both the allocated

expenses that are assigned to the ITN by Port Authority Management as well as "debt service allocated to the Port Authority's Consolidated Bonds."

Peters Decl. ¶ 36.

261.    Although the evidence cited does not support the statement, the Port Authority does not dispute that former CFO Michael Fabiano included in his cash flow analysis "allocated costs that represent the cost of providing general and administrative services for the benefit of the entire agency."

Peters Decl. ¶ 36.

262.    Disputed.  AAA's legal conclusion and argument are inappropriate.

263.    Disputed to the extent that the statement contains inappropriate argument and is unsupported by any citation to Port Authority documents.

264.    Disputed to the extent that the statement contains inappropriate argument and is unsupported by any citation to Port Authority documents.

265.    Disputed to the extent that the statement contains inappropriate argument and is unsupported by any citation to Port Authority documents.

266.    Undisputed.

267.    Disputed to the extent that the statement contains inappropriate argument and is unsupported by any citation to Port Authority documents.

268.    Disputed to the extent that the statement contains inappropriate argument and is unsupported by any citation to Port Authority documents.

269.    Disputed to the extent that the statement contains inappropriate argument and is unsupported by any citation to Port Authority documents.

270.    The Port Authority does not dispute that AAA's expert Jonathan Peters states that "[a] commonly applied method of financing term is to consider the useful lifespan of the asset and utilize a funding method that reflects that lifespan."

Peters Decl. ¶ 40.

271.    Disputed.  AAA's legal conclusion and argument are inappropriate.

272.    Disputed.  AAA's legal conclusion and argument are inappropriate.

273.    Disputed.  AAA's legal conclusion and argument are inappropriate.

274.    Undisputed.

275.    Undisputed.

276.    The Port Authority does not dispute that spending on the World Trade Center from 2007 to 2012 has been $9.1 billion, nor does it dispute that spending on the ITN from 2007 to 2012 has been $2.9 billion, but the Port Authority disputes this statement to the extent it is argumentative.

Mulry Decl., Ex. Q.

277.    Undisputed.

278.    Undisputed.

279.    Undisputed.

280.    Undisputed.