

**Kevin P. Mulry**
Partner

Direct Dial: 516.227.0620
Direct Fax: 516.336.2262
kmulry@farrellfritz.com

1320 RXR Plaza
Uniondale, NY 11556
www.farrellfritz.com

Our File No.
20986-104

August 30, 2016

By ECF
Honorable Richard K. Eaton
United States Court of International Trade
One Federal Plaza
New York, New York 10278-0001

Re: **AAA New York Northeast and AAA North Jersey, Inc. v. Port Authority of New York and New Jersey, No. 11 Civ 6746 (RKE) (HBP)**

Dear Judge Eaton:

We represent Plaintiffs AAA Northeast and AAA North Jersey, Inc. (collectively, "AAA") in the above-captioned action. This letter is respectfully submitted to respond to the letter of Richard Mark, Esq. to the Court dated August 24, 2016 (the "Port Authority August 24 Letter"), with respect to *American Trucking Association v. New York State Thruway Authority*, No. 13-cv-8123 (S.D.N.Y.) (McMahon, J.).[1] In *American Trucking*, the Court held that tolls on the New York State Thruway violated the Commerce Clause because they were used to pay for the New York Canal System, which did not benefit truckers using the Thruway.

The *American Trucking* decision lends significant support to the arguments made by AAA in opposition to the Port Authority motion for summary judgment. In its opposition to the summary judgment motion, AAA argued, *inter alia*, that the 2011 toll increases violated the Commerce Clause because they: (1) were not based on a fair approximation of the use of ITN facilities, and (2) were excessive in relation to the benefits conferred. AAA Memorandum, DN 153, at 22-28.

First, the *American Trucking* decision confirms one of the central points of the AAA opposition to the Port Authority motion for summary judgment, that the Port Authority cannot use toll revenue for purposes outside the Interstate Transportation Network ("ITN"), including paying for the

---

[1] AAA respectfully requests that the Court accept for filing this response to the Port Authority August 24 Letter. By letter dated August 17, 2016, AAA provided the *American Trucking* decision to the Court without argument and requested guidance on whether the Court sought letter briefs from the parties. The Port Authority thereafter submitted a letter brief without prompting from the Court, and this letter responds to that submission.

Honorable Richard K. Eaton
August 30, 2015
Page 2

World Trade Center. In *American Trucking*, the Court determined that New York Thruway tolls could not be used for the Canal System, because there was no transportation or other associated value to trucking motorists. *American Trucking*, at 2-3. Similarly, the toll increases cannot be used for purposes outside the Port Authority ITN, including funding of the World Trade Center, because non-ITN expenses have no transportation or other associated value for toll-paying motorists. AAA Memorandum at 2, 23-24, 26.

With respect to the first of the two prongs of the Commerce Clause analysis, AAA argued that the toll increases were improperly based on an approximation of use of all Port Authority facilities, and not those of the ITN. AAA Memorandum at 23-24. In *America Trucking*, the Court noted that in *Bridgeport and Port Jefferson Steamboat Co. v. Bridgeport Port Authority*, 567 F.3d 79, 84 (2d Cir. 2009), the Second Circuit affirmed the ruling of then-District Judge Droney that the fee at issue was improperly calculated according to a *method* that included all of that Port Authority's operating costs. *American Trucking*, at 29-30. The *American Trucking* decision also recognized that under the "fair approximation" prong of the test, there must be a rational relationship "between the *method used* to calculate the fees and the benefits that are realistically available to those who pay them." *American Trucking* at 36 (quoting *Jorling v. U.S. Dept. of Energy*, 850 F. Supp. 132, 142-43 (N.D.N.Y. 1994), *aff'd*, 218 F.3d 96 (2d Cir. 2000)) (emphasis added). Similarly, in the case at bar, the *method* used by the Port Authority did not fairly approximate the benefits to motorists from the uses of the ITN, because it was based on expenses of the entire Port Authority, including the World Trade Center, rather than the ITN. AAA Memorandum at 23-24.

Moreover, the toll increases included the cost of New Jersey State bridges and roads, including the Pulaski Skyway, which the Port Authority does not even have the statutory authority to pay for. AAA Memorandum at 16-22. The Port Authority's *ultra vires* act of diverting toll revenue to pay for New Jersey State bridges and roads makes the toll increases improper even before undertaking a Commerce Clause analysis. In *American Trucking*, the Court noted that New York State had transferred jurisdiction over canal lands and assets in order to assert that toll money could be used for assets of the "thruway system." *American Trucking*, at 3. The Port Authority in the case at bar makes no pretense of arguing that the Pulaski Skyway and other New Jersey State bridges and roads are Port Authority assets—nor could they. The Port Authority argues in its August 24 letter that "interstate vehicular toll revenues can be spent on components of the Interstate Transportation Network." Port Authority August 24 Letter at 1. Such toll revenues may not, however, be spent outside the ITN, on New Jersey State roads such as the Pulaski Skyway, or on the World Trade Center, and the toll increases were therefore not a fair approximation of use of ITN facilities. AAA Memorandum at 16-22, 24-26.

The *American Trucking* decision also supports AAA's argument that the toll increases are excessive under the second prong of the Commerce Clause test, because one sixth of the "ITN Capital Plan"—amounting to $1.8 billion dollars—goes to fund New Jersey State bridges and roads, including the Pulaski Skyway. In *American Trucking*, the Court noted that the transfer of the Canal System to the Thruway Authority "was done to remove the expense of maintaining the Canal System and its assets from the backs of New York State taxpayers. *American Trucking*, at 4. Similarly, in the current case, the use of Port Authority revenue to spend $1.8 billion on the

Honorable Richard K. Eaton
August 30, 2015
Page 3

Pulaski Skyway and New Jersey State roads was done to remove the expense of those New Jersey bridges and roads from the backs of New Jersey taxpayers.

Importantly, the Court in *American Trucking* accepted that "simple mathematics" supported its conclusion. American Trucking, at 7, 8. Similarly, simple mathematics demonstrates that one sixth—$1.8 billion—of the "ITN Capital Plan" is comprised of New Jersey State roads not owned by the Port Authority or within its ITN, another $1 billion is for a bridge being raised for navigation purposes, and another $1 billion is a budget placeholder. AAA Memorandum at 7-10. Moreover, simple mathematics demonstrates that when these amounts are taken out of the Port Authority CFO's calculations, his cash flow analysis yields a positive number in the billions. Even the Port Authority has to concede that removing just the Pulaski Skyway and New Jersey state roads from its CFO's calculations "yields a positive number." AAA Memorandum at 11-12.

With respect to the excessiveness prong, the Court in *American Trucking* determined that 9-14% of every toll dollar was diverted to the Canal System. The Court stated that "millions of toll dollars are being used each year—*over a billion dollars in the last two decades*," to fund the Canal System. *American Trucking*, at 39 (emphasis in original). Similarly, in this case, under the Port Authority's "ITN capital plan," millions of dollars are to be used each year—*1.8 billion dollars in a ten year period*, to fund the Pulaski Skyway and New Jersey roads, which are outside the ITN and for which the Port Authority does not have the statutory authority to pay. The toll increases are therefore excessive in relation to the benefits conferred under the second prong of the Commerce Clause test. AAA Memorandum at 26-28.

For the reasons stated above, AAA respectfully submits that the *American Trucking* decision lends significant supports to the arguments it made in opposition to the Port Authority's summary judgment motion.

Respectfully submitted,

*Kevin P. Mulry*

Kevin P. Mulry

cc: (by ECF and e-mail)
Richard W. Mark, Esq.
Nancy Hart, Esq.
Kathleen Miller, Esq.
Michael F. Fitzgerald, Esq.

Interwoven\5832917.1